Stephanie Sheridan (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL PEMBERTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESTAURANT BRANDS INTERNATIONAL INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC,<br><br>Defendants. | Case No. 3:25-cv-03647-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, AND IN THE ALTERNATIVE, FOR LIMITED DISCOVERY PRIOR TO RESOLVING THE MOTION TO COMPEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 6, 2025<br>Time: 9:30 a.m.<br>Location: San Francisco Courthouse, Courtroom D<br><br>Complaint Filed: April 25, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 6, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Judge Joseph C. Spero, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom D, 15th Floor, Defendants Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (collectively "RBI") will and hereby do move the Court for an order to compel arbitration, or in the alternative, for limited discovery resolving the motion to compel arbitration.

Defendant seeks to compel arbitration because:

1) Plaintiff has already initiated arbitration proceedings, and the arbitration has been stayed solely pending a determination by this Court of whether an enforceable arbitration agreement was formed;
2) By invoking the arbitration agreement to initiate arbitration, Plaintiff consented to arbitration under the agreement;
3) The Court has the authority to decide whether there is an agreement to arbitrate, and this issue cannot be delegated to an arbitrator; and
4) Plaintiff knowingly exploited the arbitration agreement by seeking to enforce the terms of the agreement when he chose to initiate arbitration and is therefore estopped from denying the existence of an agreement to arbitrate.

Thus, this motion to compel arbitration should be granted, or in the alternative, the Court should permit discovery limited to the formation an agreement to arbitrate.

This Motion is based on this Notice; the Memorandum of Points and Authorities; the Declaration of Stephanie Sheridan; the Request for Judicial Notice and other matters of which the Court takes judicial notice; the records and files in this case; and such other written or oral argument as may be presented at or before the time the Court takes this Motion under submission.

Dated: June 6, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*

STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

# TABLE OF CONTENTS


I. INTRODUCTION .......... 3

A. FACTS .......... 5

1. Plaintiff's Counsel's Representation of Seth Weingartner .......... 5

2. Plaintiff's (Supposed) Visit to the Website, and The Arbitration .......... 5

3. Plaintiff's Complaint .......... 7

4. Plaintiff's Counsel's Business Model & Non-Arbitration Arbitration Tactics .......... 7

B. PLAINTIFF'S UNDERLYING CLAIM SHOULD BE STAYED PENDING A DETERMINATION OF THIS MOTION TO COMPEL ARBITRATION .......... 10

C. BY INVOKING THE AGREMENT TO INITIATE ARBITRATION, PLAINTIFF INHERENTLY AGREED TO ARBITRATION .......... 10

1. This Court Is Not Obligated to Follow the Arbitrator's Decision and May Evaluate Waiver Anew. .......... 11

2. By Invoking the Agreement to Initiate Arbitration, Plaintiff Consented to Arbitration Under the Agreement. .......... 11

3. The Delegation Provision Does Not Save Plaintiff .......... 13

4. Plaintiff is Estopped From Denying the Existence of an Agreement to Arbitrate .......... 14

D. IN THE ALTERNATIVE, RBI REQUESTS LIMITED DISCOVERY ON CONTRACT FORMATION PRIOR TO A DETERMINATION OF THE MOTION TO COMPEL .......... 15

II. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahlstrom v. DHI Mortg. Co.*,
21 F.4th 631, 635 (9th Cir. 2021) .......... 13

*Arviso v. Smartpay Leasing, Inc.*
.......... 17

*Ayora v. Inspire Brands, Inc., et al.*,
3:25-cv-03645-AGT (April 25, 2025) .......... 6, 8

*BCI Coca-Cola Bottling Co.*,
2011 U.S. Dist. LEXIS 103707 at *4 .......... 17

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68, 77 (2d Cir. 2022) .......... 19

*Coinbase, Inc. v. Suski*,
602 U.S. 143, 150 (2024) .......... 13

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006). .......... 14

*Constellation Brands, Inc.*, .......... 7

*D'Antonio v. Smith & Wesson Inc.*,
(N.D. Cal. April 4, 2025) .......... 6

*Davis v. County of Riverside*,
2016 U.S. Dist. LEXIS 202025, *13 (C.D. Cal. Aug. 18, 2016); .......... 16

*Eclipse Consulting, Inc. v. BDO USA, LLP*,
2018 U.S. Dist. LEXIS 220263, *18 (D. Or. Nov. 13, 2018) .......... 14

*Eiess v. USAA Federal Savings Bank*,
404 F.Supp.3d 1240, 1248 (N.D. Cal. 2019) .......... 14

*Erwin v. Citibank, N.A.* .......... 16, 17

*Franchise World Headquarters, LLC*, .......... 7

*Gabrielli et al v. Upbound Group, Inc. et al.*,
(N.D. Cal. Jan. 17, 2025) .......... 6

*Gabrielli v. Haleon US Inc.*,
(N.D. Cal. March 14, 2025) .......... 6

*Gabrielli v. Insider, Inc.*,
(S.D.N.Y. Feb. 29, 2024) .......... 6

*Gabrielli v. Motorola Mobility LLC*,
(N.D. Cal. Dec. 21, 2024) .......... 6

*Gabrielli v. U.S. News & World Rep., L.P.*,
(S.D.N.Y. Mar. 05, 2024) .......... 6

*Garcia v. Amazon*,
2021 U.S. Dist. LEXIS 134403 at *10 (C.D. Cal. May 25, 2021) .......... 12

*Ghazizadeh v. Coursera, Inc.*,
737 F.Supp.3d 911, 921 (N.D. Cal. 2024) .......... 14

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733, 742 (9th Cir. 2014) .......... 13

*Guess?, Inc. v. Superior Court*,
79 Cal. App. 4th 553, 550 (2000) .......... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63, 69 (2019) .......... 13

*Hibler v. BCI Coca-Cola Bottling Co.*,
2011 U.S. Dist. LEXIS 103707, *3–4 (S.D. Cal. Sept. 14, 2011) .......... 16

*In re Uehling*,
2013 U.S. Dist. LEXIS 90867, 2013 WL 3283212, at *8 (E.D. Cal. June 27, 2013) .......... 19

*John Sligh et al. vs. Google LLC*,
(Cal. Super. Ct. Aug. 16, 2024) .......... 7

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005, 1018 (9th Cir. 2024) .......... 16

*Knapke v. PeopleConnect, Inc.*
38 F.4th 824 (9th Cir. 2022) .......... 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 626 (1985) .......... 9

*Moeser, et al. v. Google LLC*,
(Santa Clara Super. Oct. 10, 2024) .......... 7

*Moore v. Rohm & Haas Co.*,
446 F.3d 643, 645-46 (6th Cir. 2006) .......... 12

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042, 1045–46 (9th Cir. 2009) .......... 14

*Natural-Immunogenics Corp. v. Newport Trial Group*,
2019 U.S. Dist. LEXIS 236809, *6 (C.D. Cal. June 27, 2019) .......... 19

*Navient Sols., LLC v. Law Offices of Jeffrey Lohman*,
2020 U.S. Dist. LEXIS 69846, *13–21 (E.D. Va. April 20, 2020) .......... 20

*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437, 1440 (9th Cir. 1994) .......... 11

*Penate v. Wyndham Worldwide Operations, Inc.*,
2016 U.S. Dist. LEXIS 89629, *8 (C.D. Cal. July 11, 2016) .......... 16

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
937 F.3d 692, 697 (6th Cir. 2019) .......... 10

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63, 68–70 (2010) .......... 13

*Roderick v. Mazzetti & Assocs.*,
2004 U.S. Dist. LEXIS 22911, *14–15 (N.D. Cal. Nov. 9, 2004) .......... 11

*Saeedy, et al. v. Microsoft Corp.*,
(W.D. Wash. Feb. 16, 2024) .......... 7

*Smith v. Spizzirri*,
601 U.S. 472, 478 (2024); .......... 9

*Shah et al v. Hilton Worldwide Holdings Inc.*,
(N.D. Cal. Jan. 31, 2025) .......... 6

*Shah v. Constellation Brands, Inc.*,
(N.D. Cal. Feb. 7, 2025) .......... 6

*Shah v. MyFitnessPal, Inc.*,
(N.D. Cal. May 23, 2025) .......... 6

*Shah v. Politico LLC*,
(N.D. Cal. Feb. 7, 2025) .......... 6

*Shah v. Universal Music Group, Inc.*,
(N.D. Cal. April 4, 2025) .......... 6

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716, 726 (9th Cir. 1999) .......... 16

*Stewart v. Blue Cross/Blue Shield*,
381 Fed. Appx. 904, 905 (9th Cir. 2003) .......... 11

*Teleport Mobility, Inc. v. Sywula*,
2021 U.S. Dist. LEXIS 105678, *7 (N.D. Cal. June 4, 2021) .......... 15

*Ussery v. Franchise World Headquarters, LLC*,
(N.D. Cal. Feb. 7, 2025) .......... 6

*Walsh v. Dollar Tree Stores, Inc.*,
(N.D. Cal. April 29, 2025) .......... 8

*Walsh v. Dollar Tree Stores, Inc.*,
(N.D. Cal. Feb. 14, 2025) .......... 6, 9

*Weingartner, et al. v. Colgate-Palmolive Co.*,
(N.D. Cal. Oct. 24, 2023) .......... 3, 18

*Ziober v. BLB Resources, Inc.*,
839 F.3d 814, 817 (9th Cir. 2016) .......... 9

**Statutes**

9 U.S.C. § 4 .......... 14

**Other Authorities**

AAA Consumer Arbitration Rules, Rule 2 .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants, Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (collectively "RBI"), are affiliates of Burger King Company LLC ("Burger King"), which is the owner of the Burger King brand and the franchisor of the Burger King restaurant format and operating system in the United States. Plaintiff's underlying dispute arises from his alleged visit to the Burger King website, located at www.bk.com (the "Website"), for which he contends that the Website unlawfully used third-party advertising technology after he opted out of third-party advertising.

The Website's Terms of Service ("TOS") contain an arbitration agreement. Pursuant to the arbitration agreement, on November 13, 2023, Plaintiff filed a demand for arbitration with the American Arbitration Association ("AAA"). Oddly, despite *invoking* the arbitration agreement in the first place as the basis of filing his demand for arbitration, Plaintiff then took the position that there was *no* arbitration agreement, and asked the arbitrator to dismiss the arbitration on that basis.

Nearly a year ago, the arbitrator correctly held that he did not have the authority to decide the issue of whether an agreement to arbitrate exists. The arbitrator stayed arbitration pending a referral to court to decide the issue of contract formation, and the arbitration remains pending. Now, Plaintiff files his Complaint only briefly touching on the pending arbitration, and he instead seeks to barrel full steam ahead with his underlying claims. As Plaintiff's underlying claim is already pending in arbitration, the Court should stay litigation of Plaintiff's underlying claim and resolve the only issue presently referred by the arbitrator to this Court: whether an agreement to arbitrate exists between the parties.

The Court should find that there is an agreement to arbitrate based on the principles of waiver and estoppel. Plaintiff intentionally invoked the arbitration agreement and represented to the AAA that there was an agreement to arbitrate between the parties when he invoked arbitration and sought a substantive ruling from the arbitrator. While Plaintiff may raise other challenges to arbitrability—e.g., whether the underlying dispute is within the scope of the arbitration agreement—he can no longer claim that there is no agreement to arbitrate.

If the Court finds that Plaintiff has not waived and/or is not estopped from denying the existence of

an agreement to arbitrate, the arbitration agreement is still enforceable if Plaintiff had actual knowledge of the terms when he visited the Website. On this issue, RBI requests discovery on Plaintiff's actual knowledge before the Court makes any determination on the issue of whether there is an agreement to arbitrate. Such discovery would include not only information regarding Plaintiff's alleged visit to the Website, actions taken on the Website, and pages visited on the Website (such as the TOS), but also his general alleged lack of ignorance of the TOS based on the suspicious timing of his claims.

In at least one other recent matter, Plaintiff's Counsel and his client were found to have engaged in "egregious" misconduct by improperly denying the existence of an agreement to arbitrate and trying to use arbitration for an "improper" purpose to prosecute their denials of arbitrability, which culminated in the impositions of sanctions. This conduct, by itself, merits discovery in this case as it fits in with Plaintiff's Counsel's pattern and practice of trying to weaponize the arbitration process against defendants.

As importantly, Plaintiff's alleged timeline of events facially casts suspicion not only on the legitimacy of Plaintiff's claims, but any denial that he lacked actual knowledge of an agreement to arbitrate. As detailed below, Plaintiff's Counsel formerly represented another client, Roman Weingartner, with respect to an identical claim against RBI. During this time, Plaintiff's Counsel and Defense counsel discussed, among other things, the Website's arbitration agreement and its enforceability.

Seven (7) months after Plaintiff's Counsel sent his initial demand letter on behalf of Mr. Weingartner, Plaintiff's Counsel suddenly stopped representing Mr. Weingartner and, at the same time, miraculously found a replacement client for his pursuit of RBI in Plaintiff. Amazingly, Plaintiff and Mr. Weingartner have essentially *identical* claims, including when they claim to have visited the Website and what precise actions they claim to have taken on the Website. Further, Plaintiff's claim that he visited the Website in March of 2023, but supposedly did not "discover" RBI's alleged privacy violations until October 2023 "from his counsel" belies common sense in that Plaintiff claims to have had counsel regarding his current claim *before* he even supposedly knew it. These facts not only suggest potential "egregious" misconduct as in Plaintiff's Counsel's other recent arbitration not only with respect to the underlying claims, but also as to Plaintiff's actual knowledge of the arbitration agreement at issue.

# I. FACTS

## A. Plaintiff's Counsel's Representation of Seth Weingartner

On April 7, 2023, Plaintiff's counsel, Seth Safier ("Plaintiff's Counsel"), sent RBI a pre-suit demand letter on behalf of an individual named Roman Weingartner. (*See* Sheridan Decl., ¶ 2, "Exhibit A.")[1] Plaintiff's Counsel alleged that Mr. Weingartner had visited the Website sometime before April of 2023 and tried to opt out of third-party advertising cookies, but that the Website's cookie banner did not function properly and did not honor his request, in alleged violation of the California Invasion of Privacy Act, Cal. Pen. Code. § 630, *et seq.* ("CIPA") and various other laws. (*See generally* Exhibit A.)

Conspicuously, these are the same underlying facts Plaintiff alleges now. (*Compare* Compl., Dkt. 1, *with* Exhibit A.) Indeed, even more conspicuously, Plaintiff's Counsel's letter of April 2023 ***uses the exact same images as in Plaintiff's Complaint***, including the exact same screenshot allegedly showing third-party cookie transmission after the Website user opted out of third-party cookies. (*Compare* Compl. ¶ 41, pg. 18, *with* Exhibit A, pg. 3.)

Defense counsel contacted Plaintiff's Counsel and advised that Mr. Weingartner's claim was subject to arbitration under the TOS, and the parties spent several months discussing the issue. (*See* exemplar communications, attached as "Exhibit B") On September 25, 2023, RBI sent a letter to Plaintiff's Counsel regarding the arbitrability of Mr. Weingartner's claims. (Exhibit B, pg. 4.)

Defendants never heard back about Mr. Weingartner again. Presumedly, the attorney-client relationship between Plaintiff's Counsel and Mr. Weingartner terminated for some reason, as Plaintiff's Counsel also dropped Mr. Weingartner as a named plaintiff in a putative class action around this same time. *See Weingartner, et al. v. Colgate-Palmolive Co.*, No. 3:23-cv-04086, Dkt. No. 17 (N.D. Cal. Oct. 24, 2023) (dismissing Mr. Weingartner as named plaintiff in a putative class action).

///

///

///

[1] Unless otherwise indicated, exhibits referenced herein are those appended to the Declaration of Stephanie Sheridan in Support of Defendants' Motion to Compel Arbitration

**B. Plaintiff's (Supposed) Visit to the Website, and The Arbitration**

A few weeks after dropping Mr. Weingartner as a client, on November 13, 2023, Plaintiff's Counsel filed a demand for arbitration on behalf of Plaintiff against RBI, and non-party Burger King, with the AAA. (*See* Demand for Arb., attached as "Exhibit C.")

Conspicuously, Plaintiff alleges that he visited the Website in March of 2023, weeks before Plaintiff's Counsel sent his original letter to RBI on behalf of Mr. Weingartner. (*Compare* Compl. ¶ 84, with Exhibit A.) Plaintiff does not allege that he purchased anything from the Website or did anything of substance, and that he instead went to the Website "to browse information about Burger King products and locations." (Compl. ¶ 84.) Interestingly, Plaintiff claims he did not discover his alleged opt-out was not honored until seven (7) months later, "on or around October 20, 2023 when he learned of Defendants' privacy violations *from his counsel*." (Compl. ¶ 92 (emphasis added).) In other words, Plaintiff *already* had counsel *before* he learned of the supposed "privacy violations," coincidentally just happened to be discussing the Website with Plaintiff's Counsel seven months after his brief visit to the Website, and this also coincidentally all occurred *at the same time* that Plaintiff's Counsel terminated his relationship with Mr. Weingartner and could no longer use Mr. Weingartner to pursue a claim against RBI.

Regardless, on November 13, 2023, Plaintiff initiated arbitration with the AAA. To do so, Plaintiff was required to provide a "clear, legible copy of the contract containing the parties' agreement to arbitrate disputes." (*See* Exhibit C § 7.) Indeed, the AAA Rules repeatedly provide that a claimant cannot initiate arbitration unless and until the written agreement to arbitrate is provided. *See* AAA Consumer Arbitration Rules, Rule 2 (establishing requirements to start arbitration under an arbitration agreement) and Rule 3 (establishing requirement for a written agreement to arbitrate absent an arbitration agreement). Consistent with this requirement, Plaintiff submitted the arbitration agreement to start arbitration proceedings. (*See* arbitration agreement submitted by Plaintiff to AAA, attached as "Exhibit D," the "Agreement.")

Bizarrely, despite *invoking* the Agreement as "the parties' agreement to arbitrate disputes" to initiate arbitration, (Exhibit C § 7), Plaintiff then immediately sought a determination that there was *no* arbitration agreement. (Compl. ¶¶ 95–96.) This bears emphasizing again: Plaintiff's position was ***not*** that the dispute was not subject to the Agreement, or any other challenge typically reserved for an arbitrator

under a delegation clause. Instead, he took the position that there was ***no*** agreement to arbitrate, even though he represented to AAA that there was such an agreement as a condition to starting the arbitration.

Plaintiff asked the arbitrator to find that there was no agreement to arbitrate and dismiss the arbitration so that Plaintiff could proceed in this Court. (*Id.*) RBI opposed, arguing in relevant part that Claimant consented to arbitration by virtue of voluntarily initiating arbitration in the first place, and absent a finding of waiver, the arbitrator did not have authority to decide the issue of whether an agreement to arbitrate existed.

On July 9, 2024, the arbitrator issued his order. (*See* Order, attached as "Exhibit E.") The arbitrator did not agree that Plaintiff waived the right to challenge the existence of an arbitration agreement by voluntarily initiating arbitration. (*Id.*) However, the arbitrator concluded he did not have authority to decide whether an arbitration agreement existed. (*Id.*) The arbitrator placed the arbitration "on administrative hold, pending a court determination of whether an enforceable arbitration agreement was formed." (*Id.*)

**C. Plaintiff's Complaint**

On April 25, 2025, nearly ten (10) months later, Plaintiff filed his Complaint. (*See* Compl., Dkt. 1.) As noted, the arbitrator stayed the arbitration pending a referral to this Court for the limited purpose of "a court determination of whether an enforceable arbitration agreement was formed." (Exhibit E.)

However, Plaintiff's Complaint is not limited to seeking a determination of whether an arbitration agreement was formed. (*See generally* Compl.) Indeed, out of his 57 page and nearly 200 paragraph complaint, only five (5) paragraphs (3% of all allegations) talk about the underlying arbitration, and Plaintiff simply seeks a declaration that this dispute "is not subject to" the Website's TOS in the Prayer for Relief. (Compl. ¶¶ 94-98, Prayer for Relief ¶ A.) Instead, Plaintiff's Complaint spends 97% of its time discussing and seeking relief for the underlying allegations and claims, even though an arbitration of this very dispute remains pending before the AAA. (*See* Compl. ¶ 97; *see also* Exhibit E.)

**D. Plaintiff's Counsel's Business Model & Non-Arbitration Arbitration Tactics**

Plaintiff's Counsel has threatened and pursued virtually identical claims against dozens of different companies, having filed at least a dozen similar cases ***in this District alone*** in the past six months.[2] All the

[2] *Shah v. MyFitnessPal, Inc.*, No. 5:25-cv-04430-SVK (N.D. Cal. May 23, 2025); *Ayora v. Inspire Brands,*

cases are premised on the same basic fact pattern: that a plaintiff visited the defendant's website, opted out of third-party advertising cookies, but that the defendant failed to honor the opt-out request.

The manufactured nature of these claims can, to an extent, be inferred from the public docket. For example, Jonathan Gabrielli is a named plaintiff in four of the actions recently filed in this District,[3] Vishal Shah is a named plaintiff in at least five of the actions,[4] and Christine Wiley also serves as a named representative in at least two of the actions. *See* n.2, supra. It appears that Plaintiff Daniel Pemberton may also be a named plaintiff in yet another similar privacy class action pending in California state court. *See Moeser, et al. v. Google LLC*, No. 24CV449278 (Santa Clara Super. Oct. 10, 2024).[5]

However, there is much more going on under the surface beyond Plaintiff's Counsel's publicly filed cases, evidencing their efforts to avoid the public eye and judicial scrutiny of their tactics and use of serial-litigants for their contrived claims. Specifically, a lynchpin of Plaintiff's Counsel's business model—at least until a few months ago when they were sanctioned—is to initiate arbitration by invoking a defendant's arbitration agreement, only to then immediately seek a ruling from the arbitrators that no such arbitration agreements exist, based on their clients' supposed ignorance of the defendants' arbitration agreements.

---

*Inc., et al.*, 3:25-cv-03645-AGT (April 25, 2025); *Shah v. Universal Music Group, Inc.*, No. 5:25-cv-03095 (N.D. Cal. April 4, 2025); *D'Antonio v. Smith & Wesson Inc.*, 5:25-cv-03085-PCP (N.D. Cal. April 4, 2025); *Gabrielli v. Haleon US Inc.*, No. 3:25-cv-02555-WHO (N.D. Cal. March 14, 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 5:25-cv-01601-SVK (N.D. Cal. Feb. 14, 2025); *Shah v. Politico LLC*, No. 4:25-cv-01338-DMR (N.D. Cal. Feb. 7, 2025); *Shah v. Constellation Brands, Inc.*, No. 3:25-cv-01325-WHO (N.D. Cal. Feb. 7, 2025); *Ussery v. Franchise World Headquarters, LLC*, No. 3:25-cv-01337-JD (N.D. Cal. Feb. 7, 2025); *Shah et al v. Hilton Worldwide Holdings Inc.*, No. 5:25-cv-01018-EKL (N.D. Cal. Jan. 31, 2025); *Gabrielli et al v. Upbound Group, Inc. et al.*, No. 4:25-cv-00631-HSG (N.D. Cal. Jan. 17, 2025); *Gabrielli v. Motorola Mobility LLC*, 4:24-cv-09533-JST (N.D. Cal. Dec. 21, 2024).

[3] Mr. Gabrielli has also been a named plaintiff in at least three similar putative class actions in the past year alone: *Gabrielli v. Insider, Inc.*, No. 1:24-cv-01566 (S.D.N.Y. Feb. 29, 2024); *Gabrielli v. U.S. News & World Rep., L.P.*, No. 1:24-cv-01685 (S.D.N.Y. Mar. 05, 2024); *John Sligh et al. vs. Google LLC*, No. 24CV445330 (Cal. Super. Ct. Aug. 16, 2024).

[4] And that is without addressing numerous similar privacy related claims across the country in which he served as a named plaintiff in the past year. *See, e.g.*, *Saeedy, et al. v. Microsoft Corp.*, No. 2:24-cv-00219 (W.D. Wash. Feb. 16, 2024).

[5] In full candor, RBI has not yet been able to verify whether the Daniel Pemberton in the *Moeser* case is the same named plaintiff as Plaintiff here. However, the relatively unusual name, combined with the pursuit of substantially similar privacy claims filed in relative temporal proximity to each other in the same State, creates a reasonable inference based on the time RBI has had to prepare this motion that they may be the same person.

This tactic allows Plaintiff's Counsel to try and extract settlements from defendants without any public filings and minimize the disclosure of their rotating cast of litigants. If the arbitrators find that there is no arbitration agreement, and the defendants refuse to capitulate and settle, Plaintiff's Counsel turns around and petitions to pursue a class action against the defendant. Unfortunately, this tactic has met with some success in a few claims to date. *Inspire Brands, Inc.,* supra.; *Constellation Brands, Inc.,* supra.; *Franchise World Headquarters, LLC,* supra.; *Politico LLC*, supra.

An equally important strategic benefit to Plaintiff's Counsel's tactic is that arbitrators are often reluctant to permit pre-arbitration discovery, meaning that these plaintiffs can simply prevail by submitting a self-serving declaration attesting to their supposed ignorance of the defendants' terms of service and arbitration agreements. *See Ayora*, Dkt. 1, pp. 16–17 (refusing to permit limited discovery before ruling on whether an agreement to arbitrate existed).

This backdrop is relevant to RBI's Motion because the outcome has been drastically different when arbitrators have permitted discovery on the issue of contract formation and have even gone so far as to sanction Plaintiff's Counsel. For example, in one of Plaintiff's Counsel's matters against Dollar Tree Stores, Inc. ("Dollar Tree"), Plaintiff's Counsel followed the same tactic case by filing a dispute with the AAA and then seeking an immediate determination that there was no agreement to arbitrate. *See Walsh v. Dollar Tree Stores, Inc.*, No. 5:25-cv-01601-SVK, Dkt. 20, pp. 83-89 (N.D. Cal. April 29, 2025), attached to Defendants' Request for Judicial Notice ("RJN") as "Exhibit A," pg. 1.) However, rather than simply relying on the claimant's self-serving denials, the arbitrator permitted Dollar Tree to obtain discovery and take the deposition of the claimant. (*Id.*, pp. 1–2.)

Dollar Tree then discovered that the claimant had made a purchase on Dollar Tree's website. (*Id.*) The claimant alleged that the purchase had been made by a family member and maintained that her initial declaration was "still accurate." (*Id.*, pp. 2–3.) But despite protesting her innocence, she still then conspicuously withdrew her motion seeking a finding that the arbitration agreement was not enforceable.

Ultimately, the arbitrator not only ruled in Dollar Tree's favor, but awarded Dollar Tree its attorney's fees as a sanction, finding that Plaintiff's Counsel's "use of arbitration has been improper," part of a "pattern of behavior designed to harass and increase costs unjustifiably," and "patently frivolous," and

that the claimant's "inconsistent assertions and actions" in the arbitration and her deposition on arbitrability were "egregious," warranting an award of attorneys' fees in favor of Dollar Tree (*Id.*, pg. 6.)

## II. PLAINTIFF'S UNDERLYING CLAIM SHOULD BE STAYED PENDING A DETERMINATION OF THIS MOTION TO COMPEL ARBITRATION

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. (emphasis added).

Thus, district courts are required to stay proceedings after determining that a lawsuit involves an arbitrable dispute. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 817 (9th Cir. 2016). In doing so, the "first task" of the Court is to "is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Here, this matter stands in an atypical posture in that Plaintiff has already initiated arbitration proceedings. However, as detailed above, the arbitration has been stayed solely pending a determination by this Court "of whether an enforceable arbitration agreement was formed." (Exhibit E.) Thus, the Court should stay Plaintiff's underlying claim, for which the dispute is already in arbitration, pending determination of the threshold issue of whether there is an agreement to arbitrate between the parties.

## III. BY INVOKING THE AGREMENT TO INITIATE ARBITRATION, PLAINTIFF INHERENTLY AGREED TO ARBITRATION

"[I]n litigation as in life, you can't have your cake and eat it too." *Guess?, Inc. v. Superior Court*, 79 Cal. App. 4th 553, 550 (2000). Here, Plaintiff tried to have his cake and eat it too by using the Agreement to invoke arbitration, yet seeking an order finding that the Agreement was no agreement at all. He can't have it both ways.

To be clear, RBI is ***not*** contending that by initiating arbitration, Plaintiff waived any challenges to arbitrability, such as whether the dispute is within the scope of the agreement, or any other matter that may properly be delegated to the arbitrator to have decided. (*See* Section IV.C., infra.) Instead, whether phrased as an issue of consent, waiver, or estoppel, by making the choice to invoke the Agreement to demand arbitration, Plaintiff "missed the chance to … deny that a valid agreement to arbitrate existed" *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019) (alteration marks removed).

### A. This Court Is Not Obligated to Follow the Arbitrator's Decision and May Evaluate Waiver Anew.

RBI previously raised the issue of waiver in the arbitration and fully acknowledges that the arbitrator found no waiver. But therein lies the fundamental problem with Plaintiff's bizarre choice to initiate arbitration in the first place—if there was no agreement to arbitrate, then the arbitrator's decision is not binding. This is because the issue of waiver itself relates to the formation of an agreement. As such, this Court may independently evaluate the issue of waiver as it relates to the issue of formation of an agreement to arbitrate.

As importantly, RBI did not raise the issue of estoppel before the arbitrator, so that challenge is now properly before the Court and provides independent grounds for finding that an agreement to arbitrate exists.

### B. By Invoking the Agreement to Initiate Arbitration, Plaintiff Consented to Arbitration Under the Agreement.

By voluntarily initiating arbitration proceedings, a plaintiff may waive the right to challenge the authority of the arbitrator. *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("Nghiem's voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator."). In *Nghiem*, the plaintiff signed an employment contract that did not contain an arbitration clause, but later signed an acknowledgment of receipt of an employee handbook that contained an arbitration provision. *Id.* at 1439. The plaintiff initiated arbitration proceedings and, after losing in arbitration, argued that he was not bound by the arbitration provision. *Id.*

The Ninth Circuit disagreed, holding that the plaintiff had waived the right to challenge arbitrability at the time he initiated the arbitration proceedings. *Id.* at 1440. Thus, regardless of whether the arbitration provision applied—i.e., regardless of whether there was "a prior legal obligation to submit the dispute"—a party initiating arbitration necessarily consents to arbitration. *Id.* (citation omitted).

RBI anticipates that Plaintiff will try to distinguish *Nghiem* on the basis that the plaintiff in *Nghiem* waited until after he lost to dispute the existence of an arbitration agreement, whereas Plaintiff here tried to challenge the existence of an arbitration agreement "out of the gate." But that does not matter. As the Northern District of California held in rejecting a similar argument:

> *Nghiem* can only be distinguished from the present action in a single respect: [Plaintiff]'s arbitration claims had not proceeded past the earliest stages. Whereas plaintiff *Nghiem* had already reached closing briefs by the time he filed suit in an alternate forum, the parties in the instant case have not begun any arguments on the merits. Indeed, their proceedings in arbitration never completed the earliest stage of determining governing rules and assessing conflicts of interest. ***Under the Nghiem reasoning, however, such a difference is immaterial: it is the initiation of arbitration***, not the termination of it, ***which renders the arbitration process binding on the parties***.

*Roderick v. Mazzetti & Assocs.*, 2004 U.S. Dist. LEXIS 22911, *14–15 (N.D. Cal. Nov. 9, 2004) (emphasis added); *see also Stewart v. Blue Cross/Blue Shield*, 381 Fed. Appx. 904, 905 (9th Cir. 2003) ("As the party who initially requested arbitration, [the plaintiff] has waived the right to challenge the enforceability of the arbitration."); *Garcia v. Amazon*, 2021 U.S. Dist. LEXIS 134403 at *10 (C.D. Cal. May 25, 2021) ("But *Nghiem*, *Stewart*, and *Roderick* appear to say that *voluntary initiation of arbitration is enough to support a finding waiver*, and each is consistent with fundamental principles of waiver."); *see also PolyOne Corp.*, 937 F.3d at 697 (reading *Nghiem* to hold that "a party waives its ability to challenge an arbitration agreement when it demands arbitration").

Indeed, to initiate arbitration in the first place, Plaintiff was *required* to submit a "copy of the contract containing the parties' agreement to arbitrate disputes." (*See* Exhibit C § 7); *see also* AAA Consumer Arbitration Rules, Rule 2 (establishing requirements to start arbitration under an arbitration agreement) and Rule 3 (establishing requirement for a written agreement to arbitrate absent an arbitration agreement).

Plaintiff cannot, in one breath, *represent that there is an agreement to arbitrate* as a basis to start arbitration, and in the next breath instead claim that there was no agreement as a basis to get out of arbitration. This is simply illogical. Plaintiff's tactic is akin to a plaintiff trying to challenge a forum selection clause by voluntarily filing in the disputed forum yet seeking a decision that the court lacks jurisdiction over the plaintiff. By virtue of filing, the plaintiff has consented to jurisdiction—and any theoretical merits to the underlying challenge become irrelevant. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 645-46 (6th Cir. 2006) ("[A] plaintiff consents to personal jurisdiction by virtue of the act of bringing suit in the given forum.").

Ultimately, a party that has "no choice but to arbitrate their claims," such as by being compelled to arbitrate, may preserve the ability to dispute arbitrability. *See PolyOne Corp.*, 937 F.3d at 697. But a party that "*initiated* the arbitration" has "missed the chance to … deny that [a valid] agreement to arbitrate existed." *Id.*

**C. The Delegation Provision Does Not Save Plaintiff**

RBI anticipates that Plaintiff will claim that he initiated arbitration pursuant to the delegation provision in the Agreement. A "delegation provision" is a clause in an arbitration agreement that allows the arbitrator to decide certain threshold issues regarding arbitrability, such as whether a particular dispute is within the scope of an arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Plaintiff's claim is not credible and should be rejected for two simple reasons.

First, while the Agreement contains a delegation provision allowing the arbitrator to decide the interpretation, applicability, meaning, or enforceability of the Agreement, the delegation provision expressly excludes "***whether or not the agreement to arbitrate was validly formed***" from the scope of the arbitrator's authority. (Exhibit D, pg. 7 (emphasis added).) Thus, there is simply no logical basis for Plaintiff to claim he initiated arbitration pursuant to the delegation provision in the first place.

As importantly, it is firmly established that only a court has the authority to decide whether there is an agreement to arbitrate, and that this issue cannot be delegated to an arbitrator. To say that this position is "well established" by Supreme Court and Ninth Circuit precedent is too charitable of an understatement. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024) ("[T]he question is whether the parties agreed to send

the given dispute to arbitration—and, per usual, *that* question must be answered by a court.") (emphasis in original); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021) ("[P]arties cannot delegate issues of formation to the arbitrator."); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (collecting cases for the same proposition).[6]

Plaintiff has no rational basis on which he can claim to have invoked the Agreement's delegation provision to create "cover" for his choice to initiate arbitration. The issue of contract formation is expressly excluded from the scope of the delegation provision in the first place, and even if it were not, any reasonable attorney would recognize that the arbitrator had no such authority, based on replete controlling precedent spanning multiple decades.

Plaintiff's tactic was intentional and should be recognized for what it was: an "improper" use of the arbitration process as part of a larger "pattern of behavior designed to harass and increase costs unjustifiably," and hide his rotating cast of serial litigants from public scrutiny. (RJN Exhibit A, pg. 6.)

**D. Plaintiff is Estopped From Denying the Existence of an Agreement to Arbitrate**

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009) (citation omitted). In the arbitration context, there are two types of equitable estoppel, only one of which is relevant here. *See id.* Specifically, "a nonsignatory may be held to an arbitration clause 'where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id.*, *quoting Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006).

"A nonsignatory knowingly exploits an agreement when it undertakes some affirmative action to benefit from the agreement, and is aware of the agreement from which the benefit is sought." *Eclipse*

[6] *Accord, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F.Supp.3d 911, 921 (N.D. Cal. 2024) ("[C]ontract formation is a threshold issue for the Court to decide."); *Eiess v. USAA Federal Savings Bank*, 404 F.Supp.3d 1240, 1248 (N.D. Cal. 2019) ("The issue of contract formation, however, is not a delegable gateway issue.").

*Consulting, Inc. v. BDO USA, LLP*, 2018 U.S. Dist. LEXIS 220263, *18 (D. Or. Nov. 13, 2018). Simply put, Plaintiff knowingly exploited the Agreement by seeking "to enforce the terms of the agreement" when he chose to initiate arbitration. *See id.* at *19; *see Comer*, 436 F.3d at 1102 (finding that the plaintiff did not knowingly exploit the agreement because he "did not seek to enforce the terms"); *Teleport Mobility, Inc. v. Sywula*, 2021 U.S. Dist. LEXIS 105678, *7 (N.D. Cal. June 4, 2021) (granting motion to compel arbitration).

Thus, whether considered an issue of waiver or estoppel, Plaintiff purposefully and intentionally invoked the Agreement to haul RBI before the AAA, and he sought a benefit in doing so by asking the arbitrator to make a *merits determination* regarding arbitrability. While he can still challenge the arbitrability of the dispute with respect to matters subject to the delegation provision—e.g., such as whether the dispute is within the scope of the Agreement—Plaintiff has "missed the chance to … deny that [a valid] agreement to arbitrate existed." *PolyOne Corp.*, 937 F.3d at 697.

No reasonable person, believing there is no agreement to arbitrate in the first place, would voluntarily initiate arbitration based on that same agreement; any reasonable person in Plaintiff's position would have simply filed in federal court. Plaintiff's and Plaintiff's Counsel's tactic was a patent attempt at gamesmanship as outlined above, and that tactic should not be rewarded.

## IV. IN THE ALTERNATIVE, RBI REQUESTS LIMITED DISCOVERY ON CONTRACT FORMATION PRIOR TO A DETERMINATION OF THE MOTION TO COMPEL

Plaintiff's position is that there is no arbitration agreement because he "did not take any action to manifest his assent to the Terms of Service (such as checking a box or clicking a link) and therefore the arbitration provision was inapplicable to Plaintiff's claims." (Compl. ¶ 94.) But an online agreement is enforceable if *either*: (1) the user has "actual knowledge" of the terms; *or* (2) the website provides reasonably conspicuous notice of the terms, and the consumer takes some action, "such as clicking a button or checking a box," that manifests assent to the terms. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1018 (9th Cir. 2024). Thus, while Plaintiff may not have clicked a button or checked a box acknowledging his agreement to the TOS, he may still be compelled to arbitrate if he had actual knowledge.

But this is inherently a fact-intensive inquiry requiring discovery, as Plaintiff's actual knowledge is information in his "sole possession." *See, e.g.*, *Davis v. County of Riverside*, 2016 U.S. Dist. LEXIS 202025, *13 (C.D. Cal. Aug. 18, 2016); *Penate v. Wyndham Worldwide Operations, Inc.*, 2016 U.S. Dist. LEXIS 89629, *8 (C.D. Cal. July 11, 2016) (concluding that "the parties should conduct discovery before the Court addresses the merits" when necessary information is in the possession of another party).

To this end, "[t]he FAA provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999), quoting 9 U.S.C. § 4. "And the making of the arbitration agreement is in issue if the plaintiff alleges … that the agreement does not exist." *Hibler v. BCI Coca-Cola Bottling Co.*, No. 11-cv-298, 2011 U.S. Dist. LEXIS 103707, *3–4 (S.D. Cal. Sept. 14, 2011) (collecting cases).

In *Erwin v. Citibank, N.A.*, the district court denied a motion to compel arbitration where the plaintiff claimed to have opted out of a revised arbitration agreement, reasoning that the plaintiff's alleged opt-out went "to the very heart of whether an agreement to arbitrate exists." 2017 U.S. Dist. LEXIS 39897, at *11 (S.D. Cal. Mar. 20, 2017). But because there was a genuine dispute of material fact as to whether the plaintiff effectively opted out, the court granted the parties sixty days of limited discovery on that issue before revisiting the motion to compel. *Id.* at *18.

Similarly, in *Knapke v. PeopleConnect, Inc.*, the Ninth Circuit vacated a denial of a motion to compel arbitration where disputed factual questions precluded a ruling on arbitrability—specifically, whether the plaintiff's attorney had authority to agree to an online arbitration provision. 38 F.4th 824 (9th Cir. 2022). The Ninth Circuit vacated the district court's denial of the motion to compel and request for discovery, holding that the defendant "***has a right*** to conduct discovery on these and related arbitrability issues before the district court decides the motion to compel arbitration." *Id.* at 829 (emphasis added).

Likewise, in *Arviso v. Smartpay Leasing, Inc.* the court permitted limited discovery on the threshold issue of contract formation, explaining that "[a]llowing discovery on the formation of the agreement logically follows when considering the Court's limited inquiry on a motion to compel arbitration." 2016 U.S. Dist. LEXIS 27504, at *11, n.2 (N.D. Cal. Mar. 3, 2016).

A party may support a request for discovery by suggesting what evidence it expects to derive and the circumstances that support, or may raise doubt, as to the formation of the agreement. *BCI Coca-Cola Bottling Co.*, 2011 U.S. Dist. LEXIS 103707 at *4. Simply put, RBI fully believes that Plaintiff—if he went to the Website at all—did so with full knowledge of the Agreement and as part of a scheme to manufacture litigation in conjunction with Plaintiff's Counsel after the attorney-client relationship broke down between Mr. Weingartner and Plaintiff's Counsel.

In April of 2023, Plaintiff's Counsel sent a pre-suit demand letter to RBI on behalf of Mr. Weingartner alleging the exact same claims (and using the same screenshots) as Plaintiff. (Exhibit A.) From that point forward through late September of 2023, Defense counsel and Plaintiff's Counsel communicated regarding Mr. Weingartner's claims, including discussions regarding the Website's TOS and arbitration agreement. (Exhibit B.) As of this last communication in September of 2023, all of Plaintiff's Counsel's communications were regarding Mr. Weingartner and there was no mention of Plaintiff. (*Id.*)

In October of 2023, Plaintiff's Counsel apparently stopped representing Mr. Weingartner. The cause is unknown—and likely unknowable owing to attorney-client privilege—but *something* occurred causing the attorney-client relationship to apparently cease. Plaintiff's Counsel dropped Mr. Weingartner as a named plaintiff in another one of his putative class actions, though the effect in that case was negligible as Mr. Weingartner was just one of several named plaintiffs. *See Weingartner, et al. v. Colgate-Palmolive Co.*, No. 3:23-cv-04086, Dkt. No. 17 (N.D. Cal. Oct. 24, 2023) (dismissing Mr. Weingartner as named plaintiff in a putative class action).

But without Mr. Weingartner, what of Plaintiff's Counsel's pursuit of RBI? In a timing of events that is remarkable—or perhaps more accurately, "unbelievable"—right when Plaintiff's Counsel stopped representing Mr. Weingartner, Plaintiff's Counsel "discovered" the perfect replacement in Plaintiff. So perfect, in fact, that: (1) Plaintiff supposedly visited the Website around ***the same time*** Mr. Weingartner did seven (7) months earlier; (2) Plaintiff supposedly took the ***exact same actions*** as Mr. Weingartner did on the Website; and (3) Plaintiff's Counsel could apparently rely on the ***exact same evidence***, as he literally

simply cut and pasted the evidence from Mr. Weingartner's demand letter into Plaintiff's Complaint. (*Compare* Compl. ¶ 41, pg. 18, *with* Exhibit A, pg. 3.)

As conspicuously, while Plaintiff alleges that he visited the Website in March of 2023, he claims that he did not discover his supposed claims until "on or around October 20, 2023 when he learned of Defendants' privacy violations *from his counsel*." (Compl. ¶ 92 (emphasis added).) In other words, Plaintiff was supposedly *already* speaking with Plaintiff's Counsel about his claims *before* he supposedly knew of them in the first place. This alleged chain of events does not make any sense.

The Court should also consider the "broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings" when Plaintiff's Counsel swapped Mr. Weingartner out for Plaintiff in October of 2023. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022). And part of that broader context is not only: (1) Plaintiff's Counsel's penchant to try and weaponize arbitration by filing bizarre "I didn't agree to arbitrate" arbitrations; but also (2) the use of claimants who—when discovery on arbitrability has been permitted—have been found to have engaged in "egregious" misconduct in denying the existence of an arbitration agreement, resulting in the imposition of sanctions. (*See* Section II.D., supra.)

Evidence that RBI wishes to pursue includes written discovery and depositions regarding the following. First, Plaintiff's alleged visit to the Website and any other visits, including browser history, ISP data, and other information showing the dates and times of visits and pages accessed, as well as information regarding what Plaintiff alleges to have done on the Website.

Next, the dates, but not the substance, of communications between Plaintiff's Counsel and Plaintiff, as well as Plaintiff's Counsel and Mr. Weingartner. *See, e.g.*, *Natural-Immunogenics Corp. v. Newport Trial Group*, 2019 U.S. Dist. LEXIS 236809, *6 (C.D. Cal. June 27, 2019) ("Facts underlying the existence of an attorney-client relationship are not privileged."), *citing In re Uehling*, 2013 U.S. Dist. LEXIS 90867, 2013 WL 3283212, at *8 (E.D. Cal. June 27, 2013) (citing authority that "underlying facts of an attorney-client relationship, such as whether a communication took place, the identity of parties who were present, and the date of communication, are not privileged").

If the above reveals—as RBI suspects it will—that Plaintiff's alleged visit to the Website was at a time much later than alleged and at the behest of Plaintiff's Counsel in his efforts to find a "replacement

plaintiff" for Mr. Weingartner, RBI will seek to invoke the crime-fraud exception to attorney-client privilege. *See Navient Sols., LLC v. Law Offices of Jeffrey Lohman*, 2020 U.S. Dist. LEXIS 69846, *13–21 (E.D. Va. April 20, 2020) (holding that crime-fraud exception to attorney-client privilege applied when there was evidence to suggest that the plaintiff's attorneys worked with clients to manufacture litigation).

To be clear, RBI recognizes this last category would be premature at the outset of discovery. However, the initial discovery of non-privileged information may support such a course of conduct with respect to proving actual knowledge. As just one example, if discovery reveals that Plaintiff's visit to the Website occurred *after* he engaged Plaintiff's Counsel, and as Plaintiff's Counsel was aware of the Website's TOS and arbitration agreement, Plaintiff may very well have had actual knowledge of the Agreement but was coached to specifically not click through to the TOS, so he could "truthfully" say he did not see the Agreement.

Plaintiff will obviously disclaim having actual knowledge of the Agreement. Discovery of Plaintiff's browsing information may be sufficient by itself to prove otherwise. But even if not, the timing of events for Plaintiff's Counsel "swap" from Mr. Weingartner to Plaintiff, combined with the fact that Plaintiff's claims are verbatim identical to Mr. Weingartner in terms of timing, substance, *and even evidence*, simply do not add up or make sense and are not plausible. And as Plaintiff's Counsel and his clients have already been found to have engaged in "egregious" misconduct with respect to their denials of arbitrability and alleged visits to defendants' websites, it makes RBI's request to pursue similar discovery even more reasonable based on the specific timeline of events here.

Accordingly, if the Court finds that Plaintiff did not waive and is not estopped from denying the existence of an agreement to arbitrate, the Court should permit discovery limited to the formation an agreement to arbitrate as outlined above.

## V. CONCLUSION

For the reasons above, RBI's Motion should be granted.

Dated: June 6, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC