Stephanie Sheridan (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL PEMBERTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC,<br><br>Defendants. | Case No. 3:25-cv-03647-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 6, 2025<br>Time: 9:30 a.m.<br>Location: San Francisco Courthouse, Courtroom D<br><br>Complaint Filed: April 25, 2025 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 6, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Judge Joseph C. Spero, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom D, 15th Floor, Defendants, Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (collectively "RBI"), will and hereby do move the Court for an order dismissing with prejudice the Class Action Complaint filed by Plaintiff Daniel Pemberton ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), because:

1) Plaintiff fails to allege that he suffered any cognizable harm and therefore lacks standing to sue;
2) Counts III and IV are barred by the statute of limitations;
3) Plaintiff fails to allege a breach of privacy sufficient to sustain Count I and Count II;
4) Count III fails because Plaintiff does not plausibly allege intentional or willful conduct and does not plausibly allege that the contents of any communications were intercepted;
5) Count IV fails because the allegations are not within the scope of Cal. Penal Code § 638.51.
6) Count V fails because Plaintiff does not allege sufficient facts and has suffered no harm;
7) Count VI fails because Plaintiff has not met the standards for an affirmative fraud-based claim;
8) Count VII fails as neither intentional interference nor cognizable trespass are alleged.

Thus, this motion should be granted with prejudice.

This Motion is based on this Notice; the Memorandum of Points and Authorities; the records and files in this case; other matters of which the Court takes judicial notice; and such other written or oral argument as may be presented at or before the time the Court takes this Motion under submission.

Dated: June 7, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

**CONTENTS**

I. INTRODUCTION ..... 1
II. FACTS ..... 3
A. The Website ..... 3
B. Plaintiff's Alleged Visit to the Website ..... 4
C. The Arbitration ..... 4
D. Plaintiff's Claims ..... 5
III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING ..... 5
A. Legal Standard for Rule 12(b)(1) ..... 5
B. Plaintiff Fails to Plausibly Allege Concrete Harm ..... 6
IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS ..... 9
A. Rule 12(b)(6) Standard ..... 9
B. Plaintiff's CIPA Claims (Counts III and IV) Are Time-Barred ..... 10
i. The Statute of Limitations Was Not Tolled by the Arbitration ..... 10
ii. Equitable Tolling Does Not Apply ..... 12
C. The Invasion of Privacy and Intrusion Upon Seclusion Claims (Counts I and II) Fail ..... 14
D. Plaintiff's Section 631 CIPA Claim (Count III) Fails ..... 15
i. Plaintiff Does Not Plausibly Allege Intentional or Willful Conduct ..... 15
ii. Plaintiff Does Not Plausibly Allege Interception of Contents of Communications ..... 17
E. Plaintiff's CIPA Section 638.51 Claim (Count IV) Fails ..... 18
F. Plaintiff's Claim for Fraud, Deceit, and Misrepresentation (Count V) Fails ..... 20
G. Plaintiff's Claim for Unjust Enrichment (Count VI) Fails ..... 21
H. Plaintiff's Claim for Trespass to Chattels (Count VII) Fails ..... 22
V. CONCLUSION ..... 23

**TABLE OF AUTHORITIES**


9 U.S.C. § 3 .......... 12

*Aimprosoft v. Waterlee Productions, Inc.*, 2023 Cal. Super. LEXIS 103961 (Los Angeles Sup., Dec. 15, 2023) .......... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 11, 20

*Aviles v. Liveramp, Inc.*, 2025 WL 487196 (Los Angeles Super., Jan. 28, 2025) .......... 24

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 26, 27

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 28

*Becker v. Comm'r*, 2011 U.S. Dist. LEXIS 80375 (C.D. Cal. May 2, 2011) .......... 15

*Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991) .......... 10

*Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962 (9th Cir. 2024) .......... 28

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 11

Cal. Pen. Code § 630, *et seq.* .......... 2

Cal. Pen. Code § 631(a) .......... 19

Cal. Pen. Code § 638.5(a) .......... 22

Cal. Pen. Code § 638.50(b) .......... 22, 24

Cal. Penal Code § 638.52(d)(1), (3) .......... 22, 23

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755 (2022) .......... 28

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) .......... 24

*Cody v. Ring LLC*, 2025 WL 240763 (N.D. Cal. Jan. 16, 2025) .......... 19

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) .......... 15

*Doe v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 1, 29

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) .......... 20

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 26

*Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007) .......... 25

*Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) .......... 18

*Fonseca v. USG Ins. Servs.*, 467 Fed. Appx. 260 (5th Cir. 2012) .......... 12, 13

*Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ....................27
*Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................11
*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014)....................15
*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................21
*Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011) ....................14
*Griffith v. Tiktok, Inc.*, 697 F. Supp. 3d 963 (C.D. Cal. 2023) ....................26
*Hammerling v. Google LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022) ....................17, 18
*Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400 (9th 1990)....................13, 16
*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................8
*Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057 (N.D. Cal. 2009) ....................25
*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ....................5
*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ....................15
*Henson v. Turn, Inc.*, 2018 U.S. Dist. LEXIS 212249 (N.D. Cal. Dec. 17, 2018) ....................29
*Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024)....................26
*Hughes v. Apple, Inc.*, 2024 U.S. Dist. LEXIS 209321 (N.D. Cal. Nov. 18, 2024) ....................27
*I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................7
Restatement (Second) of Torts....................7, 8
*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................9
*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (ND. Cal. 2020)....................28
*In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014)....................18
*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (E.D. Cal. 2012) ....................17
*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................17, 18
*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ....................18, 21
*Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003)....................28
*International Union of Electrical v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)....................13
*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975) ....................13
*Kaiser v. Wells Fargo Clearing Servs., LLC*, 2025 U.S. Dist. LEXIS 2502 (D. Nev. Jan. 6,

2025) .......... 12
*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 21
*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......... 25
*Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) .......... 7, 8, 9, 24, 27
*LaCourt v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .......... 9
*Limon v. Circle K Stores Inc.*, 84 Cal. App. 5th 671 (2022) .......... 10
*Mikulsky v. Bloomingdale's LLC*, 2024 U.S. Dist. LEXIS 112975 (S.D. Cal. May 14, 2024) .......... 21
*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 7
*Mohebbi v. Khazen*, 50 F. Supp. 3d 1234 (N.D. Cal. 2014) .......... 25
*Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199 (2024), *review denied* (Jan. 29, 2025) .......... 10
*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (2008) .......... 26
*Robinson Helicopter Co., Inc.*, 34 Cal.4th 979 (2004) .......... 25
*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025) .......... 27
*Saint Francis Memorial Hosp. v. State Dept. of Public Health*, 9 Cal. 5th 710 (2020) .......... 14, 16
*Scott v. Perkinelmer Health Sciences, Inc.*, 2024 U.S. Dist. LEXIS 227142 (N.D. Cal. Dec. 16, 2024) .......... 11
*Smith v. Maryland*, 442 U.S. 735 (1979) .......... 23
*Smith v. Spizzirri*, 601 U.S. 472 (2024) .......... 14
*Smith v. YETI Coolers, LLC*, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .......... 19
*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) .......... 6
*St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 21
Stats. 2015, Ch. 204 .......... 22
*Tavernetti v. Sup. Ct.*, 22 Cal.3d 187 (1978) .......... 19

*Torres v. Best Choice Products, Inc.*, 2024 Cal. Super. LEXIS 43108 (Orange Super. Oct. 25, 2024) .......... 17, 19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 6, 7

*United States use of Wrecking Corp. v. Edward R. Marden Corp.*, 406 F.2d 525 (1st Cir. 1969) .......... 12, 13

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) .......... 8, 18, 23, 24

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) .......... 23

*Vecchio v. Amazon.com, Inc.*, 2012 U.S. Dist. LEXIS 76536 (W.D. Wash. June 1, 2012) .......... 29

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 25

*Washington v. Anderson*, 252 F. App'x 177 (9th Cir. 2007) .......... 14

*Welborn v. IRS*, 218 F. Supp. 3d 64 (D.D.C. 2016) .......... 9

*Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 19

*Xu v. Reuters News & Media Inc.*, 2025 U.S. Dist. LEXIS 26013 (S.D.N.Y. Feb. 13, 2025) .......... 28

*Yunker v. Pandora Media, Inc.*, No2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......... 10

*Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882 (8th Cir. 2015) .......... 12, 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Mistaking quantity for quality, Plaintiff's Complaint spans 57 pages and nearly 200 paragraphs of repetitive allegations. As Judge Chhabria put it in dismissing a similar claim:

> In this case, the plaintiffs appear to have chosen a strategy often used in securities fraud cases: If you make the complaint incredibly long … maybe a court will be more inclined to think the claims are pled with sufficient plausibility and specificity. That's usually a bad strategy, and it was a bad strategy here.

*Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024).

The basic facts of this case are simple. Defendants, Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (collectively "RBI"), are Canadian holding companies that do not conduct business in the United States. The Defendants are indirect affiliates of Burger King Company LLC ("BKC"), which is the owner of the Burger King brand and the franchisor of the Burger King restaurant format and operating system in the United States. BKC, not the Defendants, own and operate the Burger King website located at www.bk.com (the "Website").[1] Like most websites, the Website uses cookies—small text files placed on the user's device—for a variety of purposes, including for data analytics and providing targeted online ads to website visitors. The Website discloses this practice through a "Cookie Banner" that is immediately shown to visitors upon coming to the Website, provides a more detailed explanation in its Privacy Policy, and allows visitors to turn off or "opt out" of targeted advertising.

Plaintiff alleges that he visited the Website and opted out of targeted advertising, but that the opt out function described above did not work properly. If that is true, any reasonable person would conclude that there was a technical issue with the opt-out functionality, particularly given the lengths the Website goes to to disclose its practices and create such a Cookie Banner in the first place. Plaintiff instead has chosen to accuse RBI of "outright lies" and boldly assert, with no factual support, that RBI "intentionally" created a defective Cookie Banner that did not honor opt out requests. (Compl. ¶ 2.) Based on this, Plaintiff

[1] RBI denies that it is the proper defendant to this action and asserts that the proper defendant in interest is BKC. In this Motion, RBI merely assumes, *arguendo*, the truth of Plaintiff's allegations, as it must at the Rule 12(b)(6) stage, regarding RBI's alleged control over the Website. RBI reserves all rights on the merits with respect to it being an improper defendant.

alleges claims for unlawful wiretapping and use of a pen register in violation of the California Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ("CIPA"), as well as common law claims for invasion of privacy, intrusion upon seclusion, fraud, deceit, and misrepresentation, unjust enrichment, and trespass to chattels.

Immediately prior to filing this Motion, RBI filed a Motion to Compel Arbitration, and in the Alternative, for Limited Discovery Prior to Resolving the Motion to Compel Arbitration ("Motion to Compel Arbitration"). For the reasons set forth in that Motion, the Court should first compel arbitration of Plaintiff's dispute, and this Motion to Dismiss is brought solely in the alternative. If the Court denies RBI's Motion to Compel Arbitration such that this Motion to Dismiss becomes ripe, the Court should dismiss Plaintiff's Complaint for the following reasons.

*First*, Plaintiff cannot establish standing under Article III of the U.S. Constitution because he did not suffer a concrete injury. Plaintiff has no reasonable expectation of privacy in his IP address or other identified information, nor does he allege that he ever provided RBI with information in which he has a cognizable privacy interest.

*Second*, Plaintiff's CIPA claims are time barred as the statute of limitations has expired and was not tolled when he previously filed a demand for arbitration of these claims. Tacitly recognizing this, Plaintiff tries to preemptively invoke equitable tolling. But equitable tolling does not apply. Plaintiff did not act reasonably by filing a demand for arbitration in what he actively contended was the *wrong forum for his dispute* and litigating an issue that was facially for a Court to decide, and RBI was prejudiced by wasting eight (8) months and incurring attorneys' and arbitration fees for Plaintiff's pointless endeavor.

*Third*, Plaintiff's invasion of privacy and intrusion upon seclusion claims fail as Plaintiff fails to plausibly allege intentional conduct, a reasonable expectation of privacy, and "highly offensive" conduct.

*Fourth*, Plaintiff's wiretapping CIPA claim fails as Plaintiff fails to allege any intentional or willful misconduct, and he fails to plausibly allege that the contents of any communications were intercepted.

*Fifth*, Plaintiff's pen register CIPA claim fails as the statute only applies to telephones, Plaintiff has no expectation of privacy in his IP address or other record information, and his allegations as to how website cookies are a "pen register" do not make logical sense when applied to the technology in this case.

*Sixth*, Plaintiff's claim for fraud fails because he does not meet the heightened standard for pleading

fraud with particularity, does not plausibly allege intentionally fraudulent or deceitful conduct, and does not allege any compensable out-of-pocket damage.

*Seventh*, Plaintiff's claim for unjust enrichment fails as Plaintiff does not allege an inadequate remedy at law or an unjust benefit from the information RBI allegedly procured.

*Finally*, Plaintiff's claim for trespass to chattels fails as Plaintiff does not plausibly allege an intentional trespass, and he does not plausibly allege that his computer was damaged or its performance substantively impaired.

Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## II. FACTS

### A. The Website

"Like most websites," the Website uses cookies—a small text file sent by a website server to a user's web browser and stored locally on the user's device—to collect users' information for advertising and analytics purposes. (Compl. ¶¶ 2, 22, 26.)

The Website also uses third party cookies. (*Id.* ¶ 2.) Depending on how they are configured, third party cookies can capture information such as the user's browser and IP address, browsing activity and interactions (e.g., where a user clicks on a website, pages viewed, etc.), and user-input information (e.g., searches, payment information, etc.). (*See id.* ¶¶ 25–26.) Plaintiff alleges "third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data," ultimately though the use of "targeted advertisements" to the user (*See id.* ¶ 26.)

As Plaintiff acknowledges, the Website's Privacy Policy extensively discloses its use of third-party cookies, including how the technology works, what is collected, what is shared with third parties, and how that information is used. (*Id.* ¶¶ 29–33.) Further, when users visit the Website, the Website immediately displays a "Cookie Banner," which discloses that the Website uses cookies:



(*Id.* ¶ 1.) Upon clicking "Cookie Settings," the Cookie Banner allows users to "toggle off" (i.e., opt-out) of third-party cookies and advertising. (*Id.* ¶¶ 35–37.)

### B. Plaintiff's Alleged Visit to the Website

In March of 2023, Plaintiff visited the Website. (Compl. ¶ 84.) "When Plaintiff visited the Website, the Website immediately presented him with" the Website's Cookie Banner. (*Id.* ¶ 85.) Plaintiff alleges that he clicked "Cookie Settings," and then toggled off "Sell or Share My Personal Information" with respect to Targeted Advertising (*Id.* ¶ 86; *see also id.* ¶ 36.)

However, Plaintiff alleges that the Cookie Banner did not function properly and continued to transmit data after he opted-out of third party cookies. (*E.g.*, *id.*, ¶¶ 2–3, 38–44.) Plaintiff alleges that the cookies continued to collect his "(i) browsing history, (ii) visit history, (iii) website interactions, (iv) user input data, (v) demographic information, (vi) interests and preferences, (vii) shopping behaviors, (viii) device information, (ix) referring URLs, (x) session information, (xi) user identifiers, and (xii) geolocation data." (*Id.* ¶ 49; *see also id.* ¶¶ 3, 27, 38, 40, 43, 67, 74, 78, 110, 112, 115, 121, 124, 140, 142, 165, 174 (repeating same allegations in slightly different format).)

Conspicuously, Plaintiff does not allege that he ever provided any "user input data" or "demographic information," whether by running a search on the site, placing an order, or inputting his name or billing details. Thus, at most, the cookies captured non-sensitive, pseudonymous information such as his IP address, device or browser information, and how he "interacted" with the Website, such as pages viewed or links clicked. (*See id.* ¶¶ 50–58, 63–66, 70–71, 74–77.)

### C. The Arbitration

Despite visiting the Website in March of 2023, Plaintiff claims that he did not discover that his alleged opt-out was not honored "until on or around October 20, 2023 when he learned of Defendants' [alleged] privacy violations from his counsel." (Compl. ¶ 92.)[2]

The Terms of Service ("TOS") on the Website contain an arbitration provision. (*Id.* ¶ 94.) Plaintiff

[2] A curious and "cart before the horse" allegation is that, apparently in October of 2023, Plaintiff had *already* engaged counsel *before* he "discovered" RBI's allegedly unlawful conduct, and upon happenstance they ended up discussing Plaintiff's supposed visit to the Website seven (7) months earlier. Equally curious is how Plaintiff's counsel was able to advise Plaintiff of the alleged "privacy violations" stemming from Plaintiff's visit seven (7) months after the fact.

asserts that he did not assent to the TOS (including the arbitration provision included therein). (*Id.* ¶ 96.) Yet, on November 13, 2023, Plaintiff filed a demand for arbitration with the American Arbitration Association, oddly *invoking* the arbitration agreement contained in the TOS as the basis for that arbitration in order to seek a determination that there was *no* arbitration agreement in the first place. (*Id.* ¶ 95.) On July 9, 2024, the arbitrator issued an order properly concluding that only a court has the authority to decide whether an arbitration agreement exists. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

After the arbitrator issued his order, Plaintiff sat and did nothing for nearly ten (10) months, ultimately filing his Complaint on April 25, 2025.

### D. Plaintiff's Claims

Plaintiff accuses RBI of "outright lies" in representing that Website visitors can opt out of third-party advertising, assumes the alleged failure of the Cookie Banner to process his opt-out request to be "intentional" instead of a technical configuration error, and asserts various iterations of this same premise. (Compl. ¶¶ 2, 98; *see also id.* ¶¶ 5, 83, 88, 90–91, 161–63, 167–70.)

Based on these allegations, Plaintiff alleges seven claims for: invasion of privacy ("Count I"), intrusion upon seclusion ("Count II"), wiretapping in violation of CIPA Section 631 ("Count III"), unlawful use of a pen register in violation of CIPA Section 638.51 ("Count IV"), common law fraud, deceit, and/or misrepresentation ("Count V"), unjust enrichment ("Count VI"), and trespass to chattels ("Count VII"). (Compl. ¶¶ 107–86.)[3]

## III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING

### A. Legal Standard for Rule 12(b)(1)

Article III of the U.S. Constitution limits federal jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. To establish Article III standing, Plaintiff must show that he has, inter alia, "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v.*

[3] While Plaintiff labels his claim for trespass to chattels as his "eighth cause of action" (Compl. pg. 55), this appears to be a typo as the preceding claim was Count VI (*Id.*, pg. 54).

*Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted). "[A]n injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original).

Further, in a putative class action such as this one, Plaintiff must show that he "*personally* ha[s] been injured, not that injury has been suffered by other, unidentified members of the class" he seeks to represent. *Spokeo*, 578 U.S. at 338 n.6.

### B. Plaintiff Fails to Plausibly Allege Concrete Harm

A plaintiff must establish standing, meaning he suffered an "injury in fact"—"an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. A "concrete injury" is not abstract and must "actually exist." *Id.* at 340. Tangible injuries arise from "physical harms and monetary harms." *TransUnion*, 594 U.S. at 424–426. Intangible harm only is sufficiently concrete if the asserted harm has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 424.

**Information allegedly collected:** Plaintiff's Complaint casts a wide net by defining a multitude of activity that *may* be collected through cookies as "Private Communications," which generally falls into three categories: (1) browsing activity (e.g., pages viewed, linked clicked, etc.); (2) purported identifiers (IP address, device identifiers, and geolocation); and (3) user-input information (e.g., searches, name, etc.). (Compl. ¶ 25.)[4] But none of these bear a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 424.

Typical "recognized harms" for invasion of privacy must result in public disclosure of private facts and intrusion upon seclusion. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022). Public

[4] While Plaintiff lists a dozen different categories, many of the "categories" are redundant or substantively overlap. For example, "Browsing History," which Plaintiff defines to include webpages viewed and "navigation patterns," is functionally the same as "Visit History" and "Website Interactions," and "Session Information" is just date and time details of the above. *See id.* Likewise, categories like "Device Information" and "User Identifiers" are functionally the same. And some categories do not actually list any information allegedly collected, but instead speak of "inferences" RBI supposedly can make based on information collected, but an "inference" RBI supposedly makes is facially not a data point actually collected.

disclosure of private facts occurs when "[o]ne gives publicity to a matter concerning the private life of another" if the matter publicized "(1) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D. With respect to intrusion upon seclusion, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id.* § 652B. To have standing, the harm caused by both torts must be "highly offensive to a reasonable person." *See id.*

In website "wiretapping" and similar cases, courts routinely hold plaintiffs lack Article III standing where, as here, the plaintiffs fail to identify the personal information they entered on a defendant's website or whether the defendant actually collected the plaintiff's personal information. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023). In *Mikulsky*, the plaintiff alleged a website used "session replay" technology to "track and analyze website user interactions," capturing "mouse movements" and user generated information entered into form fields, the URLs of webpages visited, and other electronic communications. *Id.* at 860. In holding that the plaintiff lacked standing, the court reasoned that the plaintiff's failure to specify what "personal information" she inputted on the website was fatal to demonstrating an injury-in-fact because her conclusory allegations did not allow the court to determine whether the information bore "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *See id.* at 864–65.

Judge Kim recently reached the same conclusion in *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025), which likewise involved allegedly unlawful online tracking. Absent any allegations of any user-input data *in fact* being input and intercepted, the plaintiffs generally complained that their IP address and device identifiers were intercepted. In dismissing the complaint for lack of standing, Judge Kim started with the well-established proposition that there is simply no reasonable expectation of privacy in IP addresses (and thus no harm from their collection or disclosure) because *any* device that connects to the internet necessarily provides its IP address to all websites visited. *Id.* at *7, *citing United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of

privacy in … the IP addresses of the websites they visit")[5]; *see also, e.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest in IP addresses."). Without such facts, Plaintiff lacks harm that is "highly offensive to a reasonable person" as required.

Further, as to searches or user-provided information, simply put, *Plaintiff does not allege that he made any searches* on the Website or provided information such as his name, address, etc. on any forms. Thus, Plaintiff fails to identify any specific personal information that he disclosed that implicates a protectable privacy interest.[6]

**Diminution in Value:** Plaintiff also contends that the information collected is "valuable" and alleges harm "in the form of diminution of the value of his" allegedly private information. (Compl. ¶¶ 79–83, 165.) But, in addition to the fact that the allegedly intercepted data was not private in the first place, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value," particularly when a plaintiff has not alleged that he intended to sell that information or that someone else would have purchased it. *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015) ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information."); *see also Politico LLC*, 2025 U.S. Dist. LEXIS 92788 at *13–15; *In re Facebook, Inc., Cons. Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (declining to find standing on basis of loss of value of personal information); *LaCourt v. Specific Media, Inc.*, 2011

[5] As Plaintiff's claim of being able to determine "geolocation" is likewise predicated on using IP address, (Compl. ¶ 25), there is likewise no privacy interest for the same reason. Even then, however, IP address can only allow a general approximate location to be inferred, and "it is only truly reliable when predicting the *country* in which an IP address is located." *Hard Drive Prods. v. Doe*, 2012 U.S. Dist. LEXIS 200451, *11 (N.D. Cal. March 30, 2023) (emphasis in original). And even if an IP address could specify an individual's location (it cannot), a defendant is not liable for "[publishing] facts about the plaintiff's life that are matters of public record." RESTATEMENT (SECOND) OF TORTS § 652D, *Comment b*; *see also Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *7 (E.D. Pa. Nov. 25, 2024) (dismissing CIPA claim for lack of standing and explaining that "common law privacy torts necessarily require the information disclosed to be private and personal information").

[6] To be clear, even when a website user searches or otherwise provides information to a website, courts will still not find a concrete injury absent something sensitive or private about the information, or some other circumstance demonstrating a protectable privacy interest. *See Mikulsky*, 682 F. Supp. 3d at 864–65 (discussing cases). However, that distinction is irrelevant here as Plaintiff does not allege that he provided any information to RBI on the Website in the first place.

WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (holding plaintiffs lack standing related to cookie installation because plaintiffs failed to allege they were foreclosed from selling the data, ascribed value to it, or were "deprived" of economic value); *Yunker v. Pandora Media, Inc.*, No2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (same).

**Trespass:** Finally, Plaintiff alleges harm from the cookies themselves through "[r]eduction of storage, disk space, and performance" of Plaintiff's computer. (Compl. ¶ 186.) But, as detailed later in Section IV.H., *infra.*, Plaintiff lacks facts supporting these claims, as is required to establish standing. *See Yunker*, 2013 WL 1282980, at *5 (dismissed for lack of factual supporting allegations of "diminution in the performance of an electronic device").

Because Plaintiff does not have standing to sue in California state court, the proper action this Court should take is to dismiss the case with prejudice rather than without prejudice.[7] Because Plaintiff has failed to establish standing under both federal and state law, this Court should dismiss Plaintiff's Complaint in its entirety.

## IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS

### A. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Establishing the plausibility of a complaint's allegations is a two-step process. *See id.* at 678–79. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, a court should "assume the[ ] veracity" of "well pleaded factual allegations"

[7] In cases where "remand to state court would be futile," a district court may dismiss a case entirely. *Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991). Here, dismissal without prejudice for refiling in state court would be futile, as Plaintiff could not establish standing under California state law. California courts are not bound by the "case or controversy" requirement of Article III of the U.S. Constitution; rather, they are guided by "prudential considerations." *Limon v. Circle K Stores Inc.*, 84 Cal. App. 5th 671, 690, (2022). "One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude[.]" *Id.* California's "beneficial interest" test is the functional equivalent of the federal "injury in fact" test, which "requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 208 (2024), *review denied* (Jan. 29, 2025). As such, in California state court, a plaintiff must still allege that he suffered a concrete injury to sue. *Id.*

and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal citations omitted).

Further, "the Court need not accept as true any allegations contradicted by matters properly subject to judicial notice … or that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

### B. Plaintiff's CIPA Claims (Counts III and IV) Are Time-Barred

#### *i. The Statute of Limitations Was Not Tolled by the Arbitration*

"Under the CIPA, the applicable statute of limitations is one year." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021). Plaintiff alleges that he visited the Website in March of 2023, meaning that the statute of limitations expired in March of 2024. (Compl. ¶ 92.) Plaintiff, however, claims that he did not learn of the alleged privacy violations until October 20, 2023. (Compl. ¶ 92.) For purposes of this Motion only, even assuming that delayed discovery rule applied, the statute of limitations began to run on October 20, 2023, and therefore expired by October 20, 2024, at the latest. *See, e.g.*, *Scott v. Perkinelmer Health Sciences, Inc.*, 2024 U.S. Dist. LEXIS 227142 (N.D. Cal. Dec. 16, 2024) ("As a reminder, the discovery rule merely delays a claim's accrual until the moment when a plaintiff is on inquiry notice."). Plaintiff apparently assumes his act of filing a demand for arbitration with the AAA tolled the statute of limitations for filing in this Court. Plaintiff is wrong.

The Circuits to have addressed the issue are in unison: a "demand for arbitration does not toll the statute of limitations." *Fonseca v. USG Ins. Servs.*, 467 Fed. Appx. 260, 261 (5th Cir. 2012); *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 889 (8th Cir. 2015) ("We conclude that pursuit of arbitration did not toll the federal statute of limitations."); *United States use of Wrecking Corp. v. Edward R. Marden Corp.*, 406 F.2d 525 (1st Cir. 1969) ("This argument overlooks the means traditionally relied upon to avoid any such inconsistency -- the bringing of suit within the limitations period, followed by a stay of such proceedings pending the results of arbitration."). District courts within the Ninth Circuit have likewise reached the same conclusion. *See, e.g., Kaiser v. Wells Fargo Clearing Servs., LLC*, 2025 U.S. Dist. LEXIS 2502, *13-16 (D. Nev. Jan. 6, 2025) (noting that there is no "support [for] the proposition that pursuing

arbitration somehow extends the statute of limitations to file" a subsequent lawsuit).

"A plaintiff who pursues arbitration is not required to await the outcome to bring an action in court, and there is an accepted procedure for pursuing arbitration and a lawsuit simultaneously." *Zarecor*, 801 F.3d at 889. Specifically, a plaintiff should "file suit within the statute of limitations and then seek a stay of the action pending arbitration." *Id.*; *see* 9 U.S.C. § 3 (providing that a court may stay a lawsuit pending referral to arbitration). "Such a course would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed." *Fonseca*, 467 F. App'x at 261; *Wrecking Corp.*, 406 F.2d at 889 ("It is in the sense of requiring a stay, not of eliminating the requirement that suit be brought within a year, that procedural priority is given to arbitration.").

This result comports with Supreme Court and Ninth Circuit precedent in analogous contexts. *See, e.g.*, *International Union of Electrical v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976) (holding that the statutory period for filing a claim with the EEOC was not tolled during the pendency of arbitration); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461–62 (1975) (holding that a plaintiff's filing of a charge with the EEOC did not toll the statute of limitations for bringing civil litigation). In reaching these conclusions, the Supreme Court noted that "it is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing" a plaintiff to file his claim in court before the completion of the alternative proceedings. *Myers, Inc.*, 429 U.S. at 239, *quoting Johnson*, 421 U.S. at 465. But as the Supreme Court concluded, and as the courts in *Fonseca*, *Zarecor*, and *Wrecking Corp*. likewise held, the proper recourse is simply for the plaintiff to "ask the court to stay proceedings" until completion of the alternative proceedings. *Myers, Inc.*, 429 U.S. at 239.

Based on this guidance, in *Harris v. Alumax Mill Products, Inc.*, the Ninth Circuit has likewise held that the filing of workers' compensation did not toll the statute of limitations for filing a lawsuit, noting that Supreme Court precedent is "clear" that the pursuit of alternative proceedings does not toll the statute of limitations period. 897 F.2d 400, 404 (9th 1990); *see also Washington v. Anderson*, 252 F. App'x 177, 178 (9th Cir. 2007) ("[P]articipation in a grievance procedure does not toll the filing period.").

Most recently, the Supreme Court again revisited procedural issues regarding arbitration in *Smith v. Spizzirri*, 601 U.S. 472 (2024). In *Smith*, the Court resolved the split in authority as to whether a case

pending in federal court should be stayed, versus dismissed, pending arbitration, and unanimously held that cases must be stayed pending arbitration. *Id.* at 479. Critically, in reaching this conclusion the Supreme Court reasoned that, if the case was dismissed instead of stayed, and the arbitration failed for some reason, the parties would not have a "return ticket" to federal court if the statute of limitations expired in the interim. *Id.* at 477, 477 n.3, *citing Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 770 (8th Cir. 2011) (noting that if a case is dismissed rather than stayed during arbitration, "the statute of limitations may run and bar them from refiling complaints in state or federal court").

Even assuming Plaintiff did not discover his claims until October 20, 2023, Plaintiff's arbitration demand did not toll the statute of limitations, which expired at the latest on October 20, 2024.

***ii. Equitable Tolling Does Not Apply***

Perhaps in anticipation of this reality, Plaintiff preemptively alleges that the statute of limitations should be equitably tolled by the arbitration. (Compl. ¶ 98.) A litigant seeking to invoke equitable tolling must demonstrate: (1) timely notice; (2) lack of prejudice to the defendant; *and* (3) reasonable and good faith conduct on the part of the plaintiff. *Saint Francis Memorial Hosp. v. State Dept. of Public Health*, 9 Cal. 5th 710, 724 (2020). RBI does not dispute it had timely notice. However, the other two requirements for equitable estoppel are absent.

Whether a plaintiff engaged in reasonable and good faith conduct encompasses "two distinct requirements: A plaintiff's conduct must be objectively reasonable *and* subjectively in good faith." *Id.* at 729 (emphasis added). "[F]or equitable tolling to apply to the plaintiff's timely filing in the wrong court, the decision to file in the improper court ***must have been reasonable***." *Becker v. Comm'r*, 2011 U.S. Dist. LEXIS 80375, *9–10 (C.D. Cal. May 2, 2011) (emphasis added). Plaintiff's act of filing a demand for arbitration when he disputed the existence of an arbitration agreement was not reasonable in two respects.

To start, there was simply no reasonable basis to believe that the arbitrator had authority to decide whether an arbitration agreement existed in the first place. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024) ("[T]he question is whether the parties agreed to send the given dispute to arbitration—and, per usual, *that* question must be answered by a court.") (emphasis in original); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines

whether a valid arbitration agreement exists."); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("Where the arbitrability of a dispute is contested, we must decide whether the parties are contesting the existence or the scope of an arbitration agreement. If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply."). Plaintiff cannot claim he acted in an objectively reasonable manner by filing a demand for arbitration seeking to have the existence of an arbitration agreement decided. As the above cases make clear, the arbitrator did not have such authority, nor was there any reasonable basis to think he did.

Plaintiff's lack of objective reasonableness is further demonstrated by the fact that, if he contends that there was no arbitration agreement in the first place, any reasonable person in his position would simply file in court *where he believes the matter properly should be*. It would then be up to RBI to move to compel arbitration and for this Court to find an arbitration agreement (or lack thereof). Alternatively, as outlined earlier, Plaintiff could have filed and then moved to stay proceedings pending arbitration. *See, e.g.*, *Zarecor*, 801 F.3d at 889. Plaintiff's act of *invoking* an arbitration agreement seeking a determination that there was *no* arbitration agreement is not "sensible in light of the circumstances," and runs contrary to all known authority regarding an arbitrator's authority to decide the issue of contract formation in the first place. *See Saint Francis Memorial Hosp.*, 9 Cal. 5th at 724.[8]

Finally, RBI was prejudiced. RBI's position that the arbitration agreement is enforceable in no way "required" Plaintiff to file in arbitration, let alone stopped him from filing a lawsuit and leaving it up to RBI to try and compel arbitration. *See Harris*, 897 F.2d at 404. RBI incurred prejudice though the time and expense of spending eight (8) months in arbitration arguing over an issue that was facially for the Court to decide in the first place. *Cf. Aimprosoft v. Waterlee Productions, Inc.*, 2023 Cal. Super. LEXIS 103961, *5 (Los Angeles Sup., Dec. 15, 2023) ("It cannot be seriously disputed that Petitioner would be prejudiced if the Court were to rule on the merits of the motion to vacate, as Petitioner has already incurred considerable

[8] RBI focuses its analysis solely on the objective reasonableness given the difficulties of proving subjective intent. However, the same reasoning applies with respect to subjective reasonableness. Plaintiff is not proceeding *pro se* but is represented by self-proclaimed "highly competent and experienced class action attorneys." (Compl. ¶ 105.) This is not a situation where Plaintiff made an "honest mistake" by filing in the wrong forum. *See id.* at 729. Rather, Plaintiff intentionally and purposefully filed in what he *actively asserts* was an improper forum for the dispute. Under the circumstances, there is no excuse why he did not file a complaint at the outset in the only forum which he contends is proper: this Court.

time and expense to obtain the arbitration award.”).

Indeed, on the day Plaintiff filed his demand for arbitration, Plaintiff flaunts that he immediately took the position that there was no arbitration agreement and that he wanted “to pursue these claims in court.” (Compl. ¶ 96.) Nothing prevented Plaintiff from filing timely in federal court, and he has no excuse for his failure to do so. Plaintiff cannot avail himself of equitable tolling, and his CIPA claims are barred by the statute of limitations.

### C. The Invasion of Privacy and Intrusion Upon Seclusion Claims (Counts I and II) Fail

“Although pled as two separate claims, courts often evaluate California constitutional claims for invasion of privacy and California common-law claims for intrusion upon seclusion together, asking ‘(1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive.’” *Torres v. Best Choice Products, Inc.*, 2024 Cal. Super. LEXIS 43108, *9 (Orange Super. Oct. 25, 2024), *quoting Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1088 (N.D. Cal. 2022). This sets a “high bar” meant to exclude *de minimis* intrusions that do “not even … require an explanation or justification by the defendant.” *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037–38 (N.D. Cal. 2014).

Here, Plaintiff alleges that cookies tracked his “browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data.” (Compl. ¶¶ 112, 121.)

However, “persuasive federal authority holds that ‘data collection and disclosure to third parties that is ‘routine commercial behavior’ is not a ‘highly offensive’ intrusion of privacy.” *Torres*, 2024 Cal. Super. LEXIS 43108 at *9. Rather, this information is involved in everyday internet communications. *See, e.g., In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (E.D. Cal. 2012) (dismissing privacy claims based on disclosures of unique device identifier number, personal data, and geolocation information as not rising to a “serious invasion”); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (“‘[R]outine commercial behavior’ does not rise to ‘egregious breach of social norms’”); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (holding that capturing users’ “personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information,

declared preferences and other information" was not highly offensive); *see also Hammerling*, 615 F. Supp. 3d at 1090–91 (unique search terms, documents viewed, basic identification information, or geolocation information on a motion to dismiss); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 (granting motion to dismiss and noting "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy.").

For that matter, Plaintiff does not allege that he performed any searches on the Website, let alone provided any personal or demographic information (such as name, billing information, email, etc.). Thus, at most, the information captured with respect to Plaintiff would be information such as his IP address, browsing information, and other routine information such as pages viewed or links clicked. There is no reasonable expectation of privacy in such information that is routinely collected by websites across the internet. *See, e.g.*, *Forrester*, 512 F.3d at 503 (plaintiffs do not have a privacy expectation over IP addresses); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (no reasonable expectation of privacy in the URL of a website or in basic identification information).

"'Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure does not constitute an egregious breach of social norms. Plaintiff's privacy and seclusion claims fail for insufficient pleading of highly offensive conduct." *Torres*, 2024 Cal. Super. LEXIS 43108 at *10 (citation omitted).

### D. Plaintiff's Section 631 CIPA Claim (Count III) Fails

#### *i. Plaintiff Does Not Plausibly Allege Intentional or Willful Conduct*

Plaintiff fails to state a claim under Section 631 of CIPA. CIPA is an eavesdropping-related privacy statute. "The Supreme Court of California has distilled [CIPA] down to 'three distinct and mutually independent patterns of conduct: [1] ***intentional*** wiretapping, [2] ***willfully*** attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.'" *Williams v. What If Holdings, LLC*, 2022 WL 17869275 at *2 (N.D. Cal. Dec. 22, 2022) (*quoting Tavernetti v. Sup. Ct.*, 22 Cal.3d 187, 192 (1978)) (emphasis added). A person can also violate CIPA by aiding and abetting a third party in any of the three. *See* Cal. Pen. Code § 631(a).

RBI cannot be liable under any other part of Section 631, because "[p]arties to a conversation cannot eavesdrop on their own conversation." *Williams*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). Thus, to bring a claim for aiding and abetting, Plaintiff "must sufficiently plead a violation by [third parties] of one of Section 631(a)'s first three clauses." *Cody v. Ring LLC*, 2025 WL 240763, at *4 (N.D. Cal. Jan. 16, 2025). Moreover, "§ 631(a)'s fourth clause does require some level of knowledge and intent," and "[a]t the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (granting motion to dismiss where plaintiff made only conclusory allegations that "do not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed Adyen to engage in conduct that violated the wiretapping statute".)

Here, Plaintiff does not plausibly allege that RBI intended to aid and abet any of the alleged third parties in tapping Plaintiff's communications. To the contrary, Plaintiff actively acknowledges that the Website informed users of the Website's use of cookies and similar technology and provided users with the ability to opt-out of third-party advertising. (Compl. ¶¶ 1, 29–33, 35–37.) Ultimately, Plaintiff's allegation is simply that the opt-out feature was not properly working.

Plaintiff concludes that RBI's conduct was "intentional" and accuses it of "outright lies" in providing an opt-out mechanism for third party advertising that was allegedly inoperative. (*E.g.*, Compl. ¶¶ 2, 185.) But Plaintiff does not allege any *facts* that raise the plausible inference that this was due to RBI's intentional or willful misconduct.

"When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014), *quoting Iqbal*, 556 U.S. at 682. Here, as the Website immediately disclosed the use of third-party cookies, provided a detailed explanation in its Privacy Policy, and provided users with the ability to opt of third-party advertising, the "obvious alternative explanation" is that there was an unintentional configuration error with the Website's Cookie Banner and opt-out functionality. Plaintiff's allegations that RBI acted "intentionally" are speculation "merely consistent with defendant's liability, [and] stops short

of the line between *possibility* and *plausibility*." *See Iqbal*, 556 U.S. at 678 (emphasis added). "[G]iven more likely explanations," Plaintiff does not plausibly allege intentional or willful conduct, even assuming all factual allegations are true. *See id.* at 681.

***ii. Plaintiff Does Not Plausibly Allege Interception of Contents of Communications***

To state a claim under Section 631, Plaintiff must plausibly allege not just that a "communication" was intercepted, but that "contents" of a communication were intercepted. Cal. Pen. Code § 631(a). The "contents" of a communication means "the substance, purport or meaning of [the] communication"—i.e., the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106.

Courts have consistently held that information such as IP addresses, device identifiers, and browsing behavior (e.g., links clicked or pages viewed) are not "contents" of a communication but rather non-actionable "record" information under CIPA (and analogous statutes). *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944–45 n.9 (N.D. Cal. 2023) (noting that "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" are non-actionable "record information"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (finding that "IP addresses, locations, browser types, and operating systems," as well as "geolocation data are not content" but records regarding transmission); *accord Mikulsky v. Bloomingdale's LLC*, 2024 U.S. Dist. LEXIS 112975, *6–8 (S.D. Cal. May 14, 2024) (same).

Courts have recognized that certain data entered into forms may constitute contents of a communication, as well as "search terms which would reveal the content a user searched for" if the URL reveals the search terms. *See Katz-Lacabe*, 668 F. Supp. 3d at 945; *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, *11 (N.D. Cal. Oct. 1, 2024).

Here, Plaintiff alleges that the third-party cookies are capable of capturing "information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information." (Compl. ¶ 25.) But Plaintiff does not allege that he took any action ***other than browsing*** through the Website, and he does not allege that he ever input any

information in any form fields, made any searches, or provided any demographic or payment information. (*See id.* ¶¶ 85–91.) Thus, Plaintiff does not plausibly allege that the contents of any communications were intercepted, and he fails to state a claim upon which relief may be granted under CIPA Section 631.

**E. Plaintiff's CIPA Section 638.51 Claim (Count IV) Fails**

CIPA prohibits a person from "install[ling] or us[ing] a pen register or trap and trace device without first obtaining a court order . . . ." Cal. Pen. Code § 638.5(a). A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiff alleges that the third-party cookies are "pen registers" because they captured "IP address and user-agent information," which he contends are "routing addressing, or signaling information." (Compl. ¶ 153.) Plaintiff is wrong.

To start, Section 638.51 only applies to telephones. In 2015, the California Legislature enacted Section 638.51 to allow California law enforcement agencies to obtain authorization to install pen register or trap and trace devices without running afoul of state law. *See* Stats. 2015, Ch. 204, Sec. 2 ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code") ("A.B. 929"). The plain language of California's pen register statutes limits their application to telephones. Among other requirements, a court order authorizing the use of a pen register or trap and trace device must specify the identity of the person "in whose name . . . ***the telephone line*** to which the pen register or trap and trace device is to be attached," and the number and location of the "***telephone line***" to which the pen register or trap and trace device would be attached. Cal. Penal Code § 638.52(d)(1), (3) (emphasis added). Section 638.52, enacted as part of A.B. 929, also provides that information acquired pursuant to a pen register may only disclose location information "to the extent that the location may be determined ***from the telephone number***." Cal. Penal Code § 638.52(c) (emphasis added). Thus, the plain language of A.B. 929 confirms it applies only to telephone numbers, not software that captures an IP address.

This conclusion is also supported by the legislative history. A.B. 929 does not mention IP addresses or imply IP addresses are within its purview. *See* Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015). Instead, A.B. 929 was intended

to "clarify that any location information obtained by a pen register … is limited to the information that can be determined ***from the telephone number***." *Id.* (emphasis added). The legislative history does not suggest the bill was intended to apply to websites or the collection of IP addresses or "user-agent information."

As A.B. 929 was enacted in 2015, there can be no plausible argument that the Legislature was unaware of IP addresses or internet communications when it passed the law. Plaintiff's invocation of CIPA's preamble language regarding "new devices and techniques" is irrelevant. (Compl. ¶ 150.) If the California legislature intended to apply the pen register sections of CIPA to the internet or anything beyond telephone, it would have simply done so and would not have used exclusively *telephone-specific* language.

Plaintiff's allegations also do not make logical sense when applied to the technology in this case. Pen registers are physically installed to track calls received or sent by a telephone number. *Smith v. Maryland*, 442 U.S. 735, 745 (1979) (explaining a pen register is "a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *Forrester*, 512 F.3d at 509 (a pen register is a "device that records numbers dialed from a phone line"); *see also United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112–13 (9th Cir. 2005). In other words, a device installed on a telephone is not a "pen register" because it records the number of the telephone on which it is installed; rather, a pen register or trap and trace device records the telephone numbers of calls made *to* or *from* the telephone on which it is installed.

"The problem with [Plaintiff's] argument is that it is normal for websites to track the IP addresses of their visitors." *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Los Angeles Super., Jan. 28, 2025). Indeed, because every device connected to the internet necessarily has an IP address, and necessarily must provide it to a website to connect to the website, an internet user simply has no expectation of privacy in that information. *E.g.*, *Politico LLC*, 2025 U.S. Dist. LEXIS 92788 at *7; *Forrester*, 512 F.3d at 510.

Finally, Plaintiff's theory of liability under CIPA § 638.51 is inconsistent with his Section 631 wiretapping allegations and cannot be maintained. A pen register is a device that records and decodes "dialing, routing, addressing, or signaling information" but expressly *excludes* from its scope "the contents of a communication." Cal. Penal Code § 638.50(b). Yet, as noted in the preceding section, Plaintiff argues that an IP address, which he claims can reveal geographic locations, as well as information such as his

browser type, are "communications" that were intercepted. (Compl. ¶¶ 20, 25.) Plaintiffs cannot have it both ways: either he alleges that the communications intercepted have "contents" under § 631(a) or he alleges that no "contents" are intercepted by the statutory definition of a pen register.

Either way, CIPA "did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024). Because Plaintiff has not demonstrated that the device he used qualifies and entitles him to state a claim, it must be dismissed.

### F. Plaintiff's Claim for Fraud, Deceit, and Misrepresentation (Count V) Fails

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Federal Rule of Civil Procedure 9(b) requires that the elements of fraud be alleged "with particularity" accompanied by the "who, what, when, where, and how" of the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Thus, Plaintiff must plead specific facts demonstrating that RBI "***knew*** the statements were false when they made them." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1080 (N.D. Cal. 2009) (emphasis added).

Here, Plaintiff alleges that RBI's misrepresentations were "outright lies" and that RBI "actively concealed" that the Cookie Banner allegedly did not honor opt out requests. (Compl. ¶¶ 2, 163.) However, Plaintiff does not allege any specific facts that this is supposedly the case, and therefore, his conclusory allegations of fraud are insufficient to meet the heightened pleading standards for fraud as a matter of law. *See Robinson Helicopter Co., Inc.*, 34 Cal.4th 979, 993 (2004); *see also Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1256 (N.D. Cal. 2014) (Plaintiff cannot "ask[] the Court [to] piece together which misrepresentations he alleges pertain to each of his fraud causes of action"). Just as Plaintiff's wiretapping claim suggests only—at best—a mistake in the Cookie Banner's configuration (*see* Section IV.D.1, *supra.*), so too here the allegations do not support an inference of knowledge of falsity or intent to deceive.

For that matter, Plaintiff does not plausibly allege any actual damages. "[A] defrauded party is ordinarily limited to recovering out-of-pocket damages." *See Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007). Plaintiff alleges that the data collected has value, and that because

the Cookie Banner did not function properly, he "provided more personal data than [he] would have otherwise." (Compl. ¶ 168.)

But even assuming that is true, Plaintiff has not alleged that he has suffered an out-of-pocket loss or actual damage. *See Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876, *27–28 (N.D. Cal. July 1, 2024) ("Plaintiffs do not, however, allege facts explaining how Defendants' collection and use of their information reduces the value of that information, and an explanation as to how does not appear so obvious that the Court may simply infer one."); *see also Griffith v. Tiktok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury.").

Accordingly, Plaintiff's Count V should be dismissed.

**G. Plaintiff's Claim for Unjust Enrichment (Count VI) Fails**

The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008). "Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting cases). "In the absence of clear guidance from California courts, the Ninth Circuit 'has construed the common law to allow an unjust enrichment cause of action through quasi-contract.'" *B.K. v. Desert Care Network*, 2024 WL 1343305, at *11 (C.D. Cal. Feb. 1, 2024). Plaintiff's claim fails for at least three reasons.

To start, because Plaintiff has "failed to meet the heightened pleading standard for any affirmative fraud-based claims," he has likewise "failed to establish the requisite relationship under which omission-based claims could be brought" for the same reasons. *Id.*

Next, "[b]ecause the remedy for unjust enrichment is restitution, the plaintiffs must show that they lack an adequate remedy at law." *Hughes v. Apple, Inc.*, 2024 U.S. Dist. LEXIS 209321, *16 (N.D. Cal. Nov. 18, 2024). Plaintiff concludes he "would have no adequate legal remedy." (*See* Compl. ¶ 181.) But he never explains how or why that is the case. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025

U.S. Dist. LEXIS 83660, *39–40 (C.D. Cal. Feb. 27, 2025) (dismissing unjust enrichment claim based on similar allegations of online data capturing owing to failure to plausibly allege an inadequate remedy at law); *see also Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, *21–22 (C.D. Cal. Jan. 30, 2025) (same).

Finally, the information allegedly collected "is so commonly shared across the internet that it cannot reasonably be considered private," and thus it cannot be considered unjust if a defendant retains such data. *See Politico LLC*, 2025 U.S. Dist. LEXIS 92788 at *14. As importantly, Plaintiff does not allege that RBI ever sold his information. Instead, he alleges that RBI uses cookies for "performing targeted advertising," meaning that RBI's advertisements may be shown to Plaintiff when he visited other websites. (Compl. ¶¶ 4, 32.) Even if this were true, Plaintiff does not allege how this was "at his expense" as is necessary to state a claim of unjust enrichment, let alone how RBI obtained an unjust benefit from it. *See e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (ND. Cal. 2020) (dismissing unjust enrichment claim based on alleged interception of personal information for "personalized advertising" when there was no allegation as to how the defendant allegedly "profited from the information"); *Xu v. Reuters News & Media Inc.*, 2025 U.S. Dist. LEXIS 26013 (S.D.N.Y. Feb. 13, 2025) (dismissing CIPA claim when the plaintiff did not identify how he was affected by alleged targeted advertising, much less "harmed by any such advertising"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) ("While Plaintiffs allege that 'a complete health care record sells for $250 on average,' the Complaint does not include facts specific to unjust enrichment of Defendant resulting from Plaintiffs' information.").

**H. Plaintiff's Claim for Trespass to Chattels (Count VII) Fails**

Trespass to chattels requires intentional interference with the possession of personal property. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024). As with Plaintiff's other claims, he fails to plausibly allege an *intentional* interference. (*See* Section IV.D.1, *supra*.)

As importantly, trespass to chattels in the context of "electronic contact with computer systems" is not cognizable if the alleged trespass "neither damages the recipient computer system nor impairs its functioning." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762–63 (2022), *quoting Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003). Plaintiff does not allege either.

Plaintiff's entire trespass claim is predicated on the allegation that RBI "caused cookies to be stored" on his computer, claiming it led to "[r]eduction of storage, disk space, and performance of Plaintiff's … computing device[]." (Compl. ¶¶ 183, 186.) Yet, as Plaintiff acknowledges, cookies are nothing more than "small text files" on a device. (*Id.* ¶ 22.) Such *de minimis* conduct is insufficient to state a claim, as "there is no allegation that the placement of the cookies had any noticeable effect on the performance of the devices." *Henson v. Turn, Inc.*, 2018 U.S. Dist. LEXIS 212249, *11–12 (N.D. Cal. Dec. 17, 2018) (granting motion to dismiss). Rather, "[i]t is a matter of common understanding that cookies are minute in size and thus incapable of noticeably affecting the performance of modern computers." *Vecchio v. Amazon.com, Inc.*, 2012 U.S. Dist. LEXIS 76536, *15 (W.D. Wash. June 1, 2012); *see also Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) ("[T]he plaintiffs allege that the placement of cookies on their devices 'reduces storage, disk space, and performance' but they offer no factual support for these allegations. … But nothing about … the existence of cookies physically impairs the functioning of the plaintiffs' computing devices."). Plaintiff's Count VII should be dismissed.

## V. CONCLUSION

For the reasons above, RBI's Motion to Dismiss should be granted.

Dated: June 7, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC