**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DANIEL PEMBERTON, an individual, on behalf of himself, the general public, and those similarly situated,

Plaintiff,

v.

RESTAURANT BRANDS INTERNATIONAL, INC. AND RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC,

Defendants.

Case No. 3:25-cv-03647-JCS

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hon. Jacqueline Scott Corley

Hearing Date: August 6, 2025
Hearing Time: 9:30 a.m.
Courtroom: San Francisco Courthouse, Courtroom D

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. RBI Falsey Told Plaintiff and Other Users That They Could Reject Cookies on the Website. ..... 2

B. RBI Intentionally Designed the Website and the Website's Cookie Banners. ..... 5

C. RBI Intentionally Aided the Third Parties' Wrongful Collection of Plaintiff's and Class Members' Data, By Which Both RBI and the Third Parties Profited. ..... 6

III. ARGUMENT ..... 7

A. Plaintiff Pleads a Concrete Injury-in-fact, Demonstrating Article III Standing. ..... 7

B. Plaintiff's CIPA Claims (Counts III and IV) Are Timely ..... 10

C. RBI's 12(b)(6) Arguments Fail. ..... 11

1. Plaintiff has adequately pled privacy and intrusion upon seclusion claims ..... 11

2. Plaintiff states a wiretapping claim under the penal code ..... 13

3. Plaintiff properly pleads a "pen register" claim under section 638.51. ..... 15

D. Plaintiff's Fraud and Misrepresentation Claims Satisfy Rule 9(b). ..... 18

E. Plaintiff's Unjust Enrichment Claim Is Properly Pled ..... 19

F. Plaintiff Sufficiently Pleads Trespass to Chattels. ..... 20

G. Plaintiff Requests Leave to Amend If Necessary. ..... 21

IV. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

***Cases***

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)....................... 24

*Abselet v. Hudson Labor Sols., Inc.*, 804 F. App'x 448 (9th Cir. 2020) .................................................................................. 12

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ....................... 22

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022)................................................................................................................. 22

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .................................................................................. 23

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ............................................................... 18

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ......................................................................................... 11

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ....................................................................................... 22

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ....................................................................................... 27

*Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024)........ 16, 17

*Doe v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................................ 26

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .............................................................................. 25

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ......................................................................................... 7

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) ..................................................................................... 11

*Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ......................................................................................................................... 25

*Fleck & Assocs., Inc. v. City of Phoenix*,
471 F.3d 1100 (9th Cir. 2006) ........ 27

*Fonseca v. USG Ins. Servs.*,
467 Fed. Appx. 260 (5th Cir. 2012) ........ 11

*Frigard v. United States*,
862 F.2d 201 (9th Cir. 1988) ........ 27

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) ........ 18

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 20

*Gunter v. Myers*,
No. 23-35124, 2024 U.S. App. LEXIS 7762 (9th Cir. Apr. 2, 2024) ........ 27

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 13

*Harris v. Alumax Mill Products, Inc.*,
897 F.2d 400 (9th Cir. 1990) ........ 12

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 14

*Henson v. Turn, Inc.*,
No. C 15-01497 JSW, 2018 U.S. Dist. LEXIS 212249 (N.D. Cal. Dec. 17, 2018) ........ 26

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ........ 15

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 15, 24

*In re GlenFed, Inc. Secs. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ........ 22

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) ........ 8

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 25

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 26

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003) ........ 25

*International Union of Electrical v. Robbins & Myers, Inc.*,
429 U.S. 229 (1976) ........ 11

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 9, 10, 18

*Johnson v. Railway Express Agency, Inc.*,
421 U.S. 454 (1975) ........ 12

*Kaiser v. Wells Fargo Clearing Servs., LLC*,
2025 U.S. Dist. LEXIS 2502 (D. Nev. Jan. 6, 2025) ........ 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 24

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928(N.D. Cal. 2023) ........ 14

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) ........ 10

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) ........ 17

*Mata v. Zillow Grp., Inc.*,
No. 24-cv-01095-DMS-VET, 2024 U.S. Dist. LEXIS 229061 (S.D. Cal. Dec. 18, 2024) ........ 12

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 10

*Mirmalek v. L.A. Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........ 19, 20, 21

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 20

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ........ 22

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 15

*Revitch v. New Moosejaw, LLC,*
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .................. 15, 17

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........................ 16, 23

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021)..................... 14, 15

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................................ 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........................................................................................... 26

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......................... 24

*Shah v. Fandom, Inc.*,
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024)...................................................... 20, 21

*Shahnaz Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal Feb. 12, 2025) ................. 17

*Silver v. Stripe, Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ................................................................. 14

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ............................................................................................ 7

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024)................. 17, 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................ 2, 7

*United States use of Wrecking Corp. v. Edward R. Marden Corp.*,
406 F.2d 525 (1st Cir. 1969)............................................................................................. 11

*Vecchio v. Amazon.com, Inc.*,
No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536 (W.D. Wash. June 1, 2012) ............................ 26

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .............................................................................. 16

*Zarecor v. Morgan Keegan & Co.*,
801 F.3d 882 (8th Cir. 2015) ............................................................................................ 11

***Statutes***

Cal. Penal Code § 631(a) ................................................................................................. 13

Cal. Penal Code § 638.50(b) .......... 15

Cal. Penal Code § 638.51 .......... 15, 17

Cal. Penal Code § 638.51(a) .......... 15

***Rules***

Fed. R. Civ. P. 12(b)(6) .......... 2

## I. INTRODUCTION

In the age of the internet, data is the new oil. As companies develop increasingly invasive and integrated means of extracting and aggregating consumer data, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendants Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (collectively "RBI" or "Defendants") promised to visitors of their websites was an outright lie. When Plaintiff accessed RBI's www.bk.com Website, he was presented with a cookie consent banner that promised users the ability to opt out of the sale and sharing of their information, including through the use of cookies—small text files that, when attached to a users' browser or device, enable third parties to track users and collect their personal data and private communications.




Little did Plaintiff know, however, that clicking "Cookie Settings" and subsequently opting out of the sale and sharing of his information meant nothing. In truth, RBI's Website unlawfully and intentionally allowed third parties to place non-essential tracking cookies on the devices of Plaintiff and every other visitor to its website, before, and ***even after*** Plaintiff and many users explicitly declined third-party tracking cookies. As a result, RBI enabled third parties to track and record Plaintiff's and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their consent. Class Action Complaint, ECF 1 ("CAC") ¶ 3.

Plaintiff brought the instant action seeking to hold RBI accountable for this outrageous invasion of privacy and to stop RBI from engaging in this unlawful conduct. RBI now moves to dismiss, claiming that Plaintiff lacks standing, has brought time barred claims, and has not adequately alleged his claims. *See, generally* Motion to Dismiss, ECF 12 ("Motion"). The gravamen of RBI's

arguments is that Plaintiff suffered no harm or damages, and that RBI's conduct was simply typical commercial behavior. RBI may believe that this line of attack is its best hope of avoiding liability, but it is simply wrong. There was nothing typical about RBI's wrongful acts.

First, Plaintiff has Article III standing because he pleads a concrete injury—an invasion of privacy. Common law has long recognized invasions of privacy as cognizable injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, the tracking cookies, which allowed third parties to discern copious personal information from Plaintiff, (CAC ¶ 112), establishes a concrete injury sufficient to show Plaintiff's Article III standing.

Second, Plaintiff's CIPA claims are not time barred because they are subject to California's liberal doctrine of equitable tolling, which focuses on notice and prejudice. RBI has been on notice of Plaintiff's claims since November 2023, and the parties have discussed the claims, and arbitrated certain threshold matters concerning the claims, in the interim. Defendants cannot identify any prejudice to their defenses to Plaintiff's CIPA claims as a result of Plaintiff's attempt, through arbitration, to resolve a dispute as to where Plaintiff's claims should be litigated. And their accusation that Plaintiff asked for an arbitrability ruling in bad faith makes no sense. Under California law, after Plaintiff put Defendants on clear notice of his claims, the statute of limitations was tolled pending the parties' efforts to resolve that gateway arbitrability dispute.

Finally, RBI's scattershot 12(b)(6) arguments mostly ignore the well pleaded facts—that RBI told Plaintiff he could reject cookies, that RBI lied and permitted those cookies anyway, and that, as a result, Plaintiff's private communications were transmitted to third parties. These central facts describe a pervasive, highly offensive invasion of all users' privacy implemented using misrepresentations that meant to lull users into a false sense of privacy.

In sum, RBI's arguments are based not on the facts alleged in the Complaint nor the law applicable to this case—but on RBI's selective reading of both. The Court should deny RBI's motion in its entirety.

## II. FACTUAL BACKGROUND

### A. RBI Falsey Told Plaintiff and Other Users That They Could Reject Cookies on the Website.

Like many companies, RBI designed its website www.bk.com (the "Website") to include

resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. CAC ¶ 2. RBI, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Websites without being tracked, followed, and targeted by third party data brokers or advertisers. *Id.*

When consumers visit the Website, RBI displays to them a pop-up cookie consent banner. *Id.* ¶ 1. RBI's cookie banner states that the Website uses cookies but expressly give users the option to click "Cooke Settings" and control how they are tracked and how their personal data is used. *Id.*




As seen above, the cookie banner states "[t]his website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also share information about your use of our site with our social media, advertising, and analytics partners." *Id.* ¶ 34. The banner then provided users the opportunity to click "Cookie Settings" or "Accept Cookies." *Id.*

Website users who click on the "Cookie Settings" button are presented with the cookie consent preferences window depicted in the screenshot below. The window represented to users that they could "move the toggle below to the [left/right] to opt out of [targeted advertising] activities on this digital property consistent with applicable law. *Id.* ¶ 35




The representation that users could opt out of cookies was false. Instead, even when users clicked the toggle to opt out of the sale/sharing of their personal information and opt out of all non-essential cookies, RBI nevertheless permitted third parties to place on Plaintiff's and Class members' devices and browsers the very cookies they had declined. *Id.* ¶ 39–40. Once placed, these cookies allowed Plaintiff's and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below—including for purposes RBI itself described in its Privacy Policy. *Id.* ¶ 31–33

Even after users clicked the toggle to opt out of the sale/sharing of their personal information and opt out of all non-essential cookies, RBI surreptitiously enabled an enormous number of third

parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), Microsoft Corporation (Microsoft Clarity), Snap Inc. (SnapChat), The Trade Desk, Inc., and AdTheorent, Inc. (the "Third Parties")—to place cookies on users' devices and browsers. *Id*. ¶ 2.

The cookies RBI wrongfully permitted the Third Parties to place on Plaintiff's device and browser—despite Plaintiff's express rejection and despite RBI's express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiff's behaviors and communications, including his browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id*. ¶¶ 3, 25, 39.

In particular, Plaintiff accessed and browsed the Website in March 2023. *Id*. ¶ 84, 106. Even before the pop-up cookie banner appeared on his screen, RBI programmed the Website to enable the Third Parties to place cookies and tracking technologies on his device and transmit Plaintiff's data to Third Parties without Plaintiff's knowledge. *Id*. ¶ 88. Then, after Plaintiff toggled off "Sell or Share My Personal Information," he browsed the Website in reliance on the promises and representations RBI made in the cookie consent banner. *Id*. ¶ 87. Despite Plaintiff's clear declination of cookies, RBI continued to permit the placement of cookies and the transmission of his data to the Third Parties. *Id*. This allowed the Third Parties to track and collect Plaintiff's Private Communications and data as he browsed the Website. *Id*.; *see also id*. ¶¶ 46–78 (describing user data and communications transmitted by the third party cookies RBI permitted to be placed when users browsed the Website).

**B. RBI Intentionally Designed the Website and the Website's Cookie Banners.**

RBI voluntarily—i.e. intentionally—integrated "third-party resources" from the Third Parties into the Website's programming. *Id*. ¶ 21. RBI chose to install or integrate the Website with resources from the Third Parties that, among other things, use cookies. *Id*. ¶ 28. Thus, when Plaintiff and other Class members visited the Website, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to RBI and the Third Parties. *Id*. RBI intentionally incorporated into the Website the software code that caused placement of the cookies. *Id*. RBI controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies

are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiff accessed the Website, the Website—which, again, RBI developed, maintains, and controls—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiff's devices and browsers. *Id*. ¶ 22.

The Website allows visitors to browse Burger King products and locations. As they interact with the Websites (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to RBI. *Id*. ¶ 27. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id*. ¶ 25. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶ 24.

### C. RBI Intentionally Aided the Third Parties' Wrongful Collection of Plaintiff's and Class Members' Data, By Which Both RBI and the Third Parties Profited.

RBI's use of the third-party resources on the Website is done pursuant to agreements between RBI and the Third Parties. *Id.* ¶ 21. RBI intentionally designed the Website with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiff's activity on the Website, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id*. ¶ 4.

Third-party cookies are used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id*. ¶ 26. Ultimately, third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id*.

RBI's cookie consent banner described how RBI uses and sells personal information: "We may

use personal information to support "targeted advertising," "selling," or "sharing" of personal information, as defined by applicable privacy laws, which may result in third parties receiving your personal information" *Id.* ¶ 29.

Further, RBI's Privacy Policy describes how RBI uses cookies for its benefit: "Targeting cookies are used to understand user behavior across our websites. These cookies are also used to show ads that are more relevant to your interests. We may share this information with advertising platforms to help us display the most relevant messages to you. These cookies may also store information on user behavior obtained their browsing habits, which allows us to develop a specific profile and display advertisements appropriate to your profile." *Id.* ¶ 30.

RAC's Privacy Policy also reveals that the Third Parties use cookies to track users across the internet: "Third-Party Companies that Provide Advertising. Some of the advertising on our Services may be provided by third parties, such as our advertisers. These companies may collect or receive certain information about your use of the Services, including through the use of cookies, beacons, and similar technologies, and this information may be combined with information collected across different websites and online services in order to deliver ads that are more relevant to you, both on and off our Services." *Id.* ¶ 31.

## III. ARGUMENT

### A. Plaintiff Pleads a Concrete Injury-in-fact, Demonstrating Article III Standing.

Invasions of privacy have long been recognized at common-law as concrete injuries sufficient to support a lawsuit. *TransUnion*, 594 U.S. at 425; *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has held specifically that violations of CIPA suffice to confer Article III standing. *In re Facebook Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Plaintiff alleges that RBI invaded his privacy—causing him a concrete injury—when RBI intentionally permitted the Third Parties to place cookies on Plaintiff's browser and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. CAC ¶ 112; *see also id*. ¶¶ 3, 39–41, 121, 140, 154, 165. This is a concrete injury sufficient to show Plaintiff's Article III standing. *See Facebook Tracking*, 956 F.3d at 599 (holding that Facebook's tracking and collection of personal information on an individual's likes, dislikes, interests, and habits, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives, conferred standing); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, *tracks* a person's internet browser activity without authorization."). Indeed, the Third Circuit has noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d at 325 (cited favorably by the Ninth Circuit in *Facebook Tracking*). Here, where RBI presented Plaintiff with a mere illusion of control over his information and then allowed the Third Parties to collect that information anyway, standing is manifest. RBI's argument to the contrary ignores the well-pleaded allegations in the Complaint and demands specificity beyond what is necessary at the pleading stage.

Indeed, RBI's own Privacy Policy outlines the data captured and transmitted by the cookies RBI permitted the Third Parties to place on Plaintiff's and Class members' browsers and devices. *See, e.g.*, *id*. ¶ 31 (disclosing that third parties "may collect or receive certain information about your use of the Services, . . . and this information may be combined with information collected across different websites and online services in order to deliver ads that are more relevant to you, both on and off our Services"); ¶ 33 ("We may disclose your Personal Information by allowing certain third parties to

collect Personal Information via automated technologies on our websites . . . ."); ¶ 33 ("We may sell or share for cross-context behavioral advertising purposes . . . the following categories of Personal Information about you to the following categories of third parties: Identifiers/Contact Information, sold to/shared with social media platforms; Commercial Information, sold to/shared with social media platforms, data analytics providers and business partners; Internet/Electronic Network Activity, sold to/shared with social media platforms, data analytics providers, online advertising platforms, and business partners; Geolocation Data, sold to/shared with data analytics providers and business partners; Inferences, sold to/shared with social media platforms, data analytics providers and business partners."). Plaintiff also alleges how this data is traceable to an individual user. *See, e.g.*, *id.* ¶ 51 ("The "cid" cookie above refers to "Client ID." It contains a unique identifier for the user's browser and device, that enables Google to link the user to their interactions with the website"); ¶ 65 ("The c_user cookie shown above causes Facebook to identify a specific user when they are logged in to their account. The c_user cookie stores a user's unique ID, which is associated with their Facebook profile."); ¶ 71 ("Clarity even permits the use of specific 'Clarity user ID[s]' which permits Clarity to track users across their devices, and identify when the same user visits multiple times to the website."); These allegations are more than sufficient to allege standing. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (finding sufficient specificity where plaintiffs alleged that Disney agreed to allow a third party to intercept "information about the webpages they viewed and searches they conducted," which showed that the contents of plaintiffs' communications, not just "record information" about those communications, was at issue); *see also id.* at 950–52 (allegations that the personal information collected was not anonymized were sufficient to support standing).

The cases RBI cites in support of its standing argument are distinguishable. *See* Mot. at 6–7. In those other cases, the plaintiffs failed to identify the type of information at issue or identified only non-private information. *See*, *e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (plaintiff failed to identify the type of personal information at issue); *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 92788, at *7–8 (N.D. Cal. May 13, 2025) (the only information identified was plaintiffs' IP addresses, in which they had no privacy interest). Here, Plaintiff alleges that RBI permits the Third Parties to collect and transmit Private Communications, such as likes, interests, and habits

and connects them over multiple visits (CAC ¶¶ 24–25 ) and that the data sent to the Third Parties is not anonymized and may be used to track Plaintiff across the internet (CAC ¶¶ 59, 68, 71, 74, 76–77) even after he expressly rejected the tracking. These allegations satisfy the standard established by the Ninth Circuit in *Facebook Tracking*. Accordingly, Plaintiff has standing.

**B. Plaintiff's CIPA Claims (Counts III and IV) Are Timely.**

RBI incorrectly argues that Plaintiff was required to file his lawsuit by October 20, 2024 to avoid CIPA's one-year statute of limitations, given his October 2023 discovery of RBI's misconduct. Mot. at 10–14. But, contrary to what RBI argues, the limitations period was equitably tolled by the arbitration proceeding.

First, *California* law determines whether the limitations period for Plaintiff's CIPA was tolled. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (noting "we borrow our rules for equitable tolling of the period from the forum state, California" and that tolling rules are "liberally applied"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) (explaining "[w]here a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions," and thus "[t]he district court was required to consider and apply the California equitable tolling doctrine").

RBI cites several federal cases which state that an arbitration does not toll a statute of limitations, but none of those cases apply California's equitable tolling doctrine and thus are inapposite. *See Fonseca v. USG Ins. Servs.*, 467 Fed. Appx. 260, 261 (5th Cir. 2012) (applying Texas law); *Zarecor v. Morgan Keegan & Co*., 801 F.3d 882, 889 (8th Cir. 2015) (applying Arkansas law); *United States use of Wrecking Corp. v. Edward R. Marden Corp.*, 406 F.2d 525 (1st Cir. 1969) (considering preclusive effects of one federal statute on another); *Kaiser v. Wells Fargo Clearing Servs., LLC*, 2025 U.S. Dist. LEXIS 2502, *13–16 (D. Nev. Jan. 6, 2025) (analyzing federal EEOC claim); *International Union of Electrical v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976) (analyzing federal EEOC claim); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461–62 (1975) (same); *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 404 (9th Cir. 1990) (analyzing federal cause of action).

Second, as RBI acknowledges, the limitations period for Plaintiff's CIPA claims is equitably tolled under California law if there is: "(i) timely notice; (ii) lack of prejudice to the defendant; and

(iii) reasonable and good faith conduct by the plaintiff." *Abselet v. Hudson Labor Sols., Inc.*, 804 F. App'x 448, 450 (9th Cir. 2020). Although under Ninth Circuit precedent, the "test for equitable tolling is 'fact-intensive' and 'more appropriately applied at the summary judgment or trial stage of litigation.'" (*Mata v. Zillow Grp., Inc.*, No. 24-cv-01095-DMS-VET, 2024 U.S. Dist. LEXIS 229061, at *20 (S.D. Cal. Dec. 18, 2024) (citations omitted), each of these elements is satisfied here. *See* CAC. ¶¶ 92–98. RBI does not dispute that it received timely notice of Plaintiff's claims. Mot. at 12. RBI's contention that it was prejudiced by the arbitration cannot be taken seriously: RBI originally preferred to proceed in arbitration; the only issues addressed in the arbitration were gateway issues of waiver and contract formation; and RBI has identified no adverse effect of the arbitration on its defenses to Plaintiff's CIPA claims. Finally, as discussed above, parties may submit any issue to arbitration if they mutually agree to do so. Based on his understanding that RBI was willing to submit arbitrability issues to an arbitrator, Plaintiff sought in good faith to resolve the parties' arbitrability dispute in an arbitration proceeding (not, as RBI insinuates, to litigate the merits of his claims or obtain merits discovery). RBI, which generally tries to force all claims against it into arbitration (and thus avoid class actions and, to a large degree, consumer protections), cannot credibly argue that it was inherently unfair or suspicious for Plaintiff to use RBI's preferred dispute resolution forum to try to resolve a narrow gateway issue that had to be resolved before reaching the merits of Plaintiff's claims.

Because all three elements of California's equitable tolling doctrine are satisfied here, Plaintiff's CIPA claims are not time-barred.

**C. RBI's 12(b)(6) Arguments Fail.**

**1. Plaintiff has adequately pled privacy and intrusion upon seclusion claims.**

Claims for common law invasion of privacy and intrusion upon seclusion consist of two key elements: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *Facebook Tracking*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009).

Here, Plaintiff had a reasonable expectation of privacy in his private communications on the Websites because RBI represented to him that his browsing activity and Private Communications would remain private if he elected to decline cookies. *Facebook Tracking*, 956 F.3d at 603–04 (a

reasonable expectation of privacy can arise if users decline consent to tracking, if a defendant makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (plaintiffs "plausibly alleged a reasonable expectation of privacy because Google allegedly collected potentially sensitive data while users might not expect that Google was tracking them"). RBI tricked Plaintiff and Class members into believing that their browsing would be private through misrepresentation and deceit—violating social norms. RBI's suggestion that Plaintiff and Class members had no reasonable expectation of privacy when RBI itself told them to expect privacy asks this Court to believe that lies and deceit do not violate social norms. This Court should reject such a cynical position.

RBI's privacy violations were also "highly offensive." RBI argues that it simply engaged in "routine commercial behavior." Mot. at 14. But there is nothing routine about blatantly lying to consumers and lulling them into a false sense of security. RBI also ignores that Plaintiff gave RBI explicit notice and instructions that he did not consent to tracking cookies. CAC ¶¶ 34–40, 85–90. Multiple recent district court decisions have recognized that the tracking and amassing of online data without consent is "highly offensive." *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez* 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy). Here, more than just failing to obtain Plaintiff's consent, RBI affirmatively represented that Plaintiff could protect his privacy by declining cookies. Plaintiff and those similarly situated took RBI up on its promise. But RBI lied. There is nothing routine about it.

"Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the

degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Facebook Tracking*, 956 F.3d at 606 (citation omitted). Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Facebook Tracking*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("[t]he offensiveness inquiry is fact-specific"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Here, the jury is entitled to consider all the circumstances surrounding RBI's conduct, including the fact that RBI lied about not tracking visitors, to determine whether RBI's invasion of privacy was highly offensive.

**2. Plaintiff states a wiretapping claim under the penal code.**

Plaintiff alleges a wiretapping claim under the fourth prong of Section 631(a) which prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).

Here, Plaintiff alleges that RBI has aided the Third Parties in their CIPA violations. RBI's arguments to the contrary are spurious.

First, Plaintiff has adequately alleged intent. Decisions from this Circuit consistently hold that the intent element is satisfied by pleading that Defendant intentionally (i.e., not accidentally) "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) (noting "it was the [D]efendant's website on which the [third party] operated."). And, regardless of specific intent, courts routinely find plaintiffs' privacy allegations sufficient when plaintiff alleges that Defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. Here, it is even more egregious because RBI expressly promised that it would protect users from eavesdropping and interception of the content of their communications, but then actively and intentionally facilitated the violations.

The intent requirement in the analogous Wiretap Act is also instructive. "The Ninth Circuit has rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal Feb. 12, 2025). RBI relies on *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal. Oct. 21, 2024), to support its interpretation of CIPA's intent requirement. *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable for aiding a third-party payment processor to "incorporate[] customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" in violation of the statute. *Id.* at *1. The Court concluded that the plaintiff failed to allege that the defendant was "acting with the third party in order to have the third party perform acts that violate the statute." *Id*. at *12. In other words, the Court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the

statute); it intended only to enable the third party to process payments for its Website. Here, RBI integrated the Third Parties' software that placed and transmitted cookies into its Website to obtain user data for advertising and analytics functions. CAC ¶ 21. RBI did not disable this software or prevent the Third Parties from obtaining user data even after representing to Plaintiff and Class members that they could opt out of the sale/sharing of their personal information and opt out of all cookies, except those that were strictly necessary cookies. *Id.* ¶¶ 34–42. RBI cannot claim that it did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since it installed the Third Party code on its Website to do exactly that.

As to RBI's second argument (that Plaintiff has not alleged the contents of his communications were intercepted), courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g., Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"); *James*, 701 F. Supp. 3d at 956 (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (acknowledging that, "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"). Here, Plaintiff has alleged that the contents of his communications (including browsing history, visit history, website interactions, user input data, interests, and preferences, in combination with other data that is used to identify and track users across websites and over a long period of time) were collected through wrongfully placed cookies on the Website after he expressly rejected tracking. CAC ¶¶ 3, 25, 44–45, 46–78 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

**3. Plaintiff properly pleads a "pen register" claim under section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information

transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff adequately pleads each element of this definition by alleging that the Third Parties' cookies and the corresponding software code RBI installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Website. CAC ¶¶ 153–54.

In its Motion, RBI argues that CIPA Section 638.51 "only applies to telephones." Mot. at 18. But courts in this District and other districts have repeatedly rejected that argument as contrary to the statute's plain language. *See, e.g., Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). This is because "the California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there . . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id.*

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiff alleges that the Third Party cookies and the corresponding software code installed by Defendants on the Website are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with CAC ¶ 153 (explaining how "cookies and the corresponding software code"—which are pen registers—were placed on Plaintiff's and Class members' browsers and devices, and/or [] used to transmit Plaintiff's and Class members' IP address and user-agent information). Thus, Plaintiff has a viable claim under CIPA Section 638.51.

RBI also argues that because certain Third Party cookies also tracked contents of communications, Plaintiff cannot also plead that the Third Party cookies operated at pen registers under Section 638.51. *See* Mot. at 19–20. Not so. A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." And this is precisely what Plaintiff has alleged. *See* CAC ¶ 155 ("Some of the information collected by the Third Parties' cookies and the corresponding software, including IP addresses and user-agent information, does not constitute the content of Plaintiff's and the Class's electronic communications with the Website."). RBI provides nothing to support the proposition that simply because a device can function both as a wiretap (i.e. a device that intercepts communications) and a pen register (i.e. a device that captures address and user-agent information but not communications) that the device is not a pen register. Indeed, it would do poor service to the broad language of the statute to preclude liability simply because a device is sophisticated enough to do both. Plaintiff clearly pleads that the Third Parties' cookies and the corresponding software code installed by RBI on its Website are each "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiff. CAC ¶ 153. Moreover, the Complaint alleges that the Third Parties attached several different cookies to Plaintiff's device and browser, which collected different data sets. *See e.g.,* CAC ¶¶ 56–58 (describing a google cookie that transmits a user's IP address). Thus, as alleged, some cookies transmit contents of communications while others transmit user information and IP addresses (i.e. not contents). This is sufficient.

**D. Plaintiff's Fraud and Misrepresentation Claims Satisfy Rule 9(b)**.

"The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). "In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.).

Despite RBI's conclusory assertion to the contrary, Plaintiff has pleaded "the who, what, when, where, and how" of RBI's fraud. Plaintiff alleges that RBI (the who), fraudulently stated that users could elect to manage their "Cookie Settings" and opt out of all non-necessary cookies (the what), during the class period (when), on the Website (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, CAC ¶¶ 1–3, 34, 39–41, 84–90 (alleging fraud); ¶¶ 21–25, 27–28 (alleging intentional conduct); ¶¶ 87, 89 (alleging reliance); ¶¶ 90–91 (alleging injury). Plaintiff further alleges that the statement that he could toggling off the "Sell or Share My Personal Information" cookies was false and misleading because RBI had in fact already permitted the Third Parties to place cookies on Plaintiff's browser and continued to do so even after Plaintiff toggling off the "Sell or Share My Personal Information" CAC ¶¶ 87, 89. Plaintiff further alleges that he relied on the misrepresentations to his detriment (*id*. ¶¶ 87, 89) and that RBI acted intentionally and with knowledge (which may be alleged generally) (*id*. ¶¶ 21–25, 27–28).

Finally, RBI argues that Plaintiff has not "suffered any actual damage." Mot. at 20–21. That argument fails. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting class certification when

damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also Facebook Tracking*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

**E. Plaintiff's Unjust Enrichment Claim Is Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiff may bring an unjust enrichment claim because he alleges that RBI benefited from using his Private Communications and that otherwise his remedies at law are inadequate. CAC ¶¶ 26, 31–33 (describing ways in which RBI benefited from the use of cookies); ¶ 181 (alleging no adequate remedy at law). Indeed, if Plaintiff is unable to pursue his other claims, he would have not adequate legal remedy. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

RBI also argues that the information it caused to be collected "'is so commonly shared across the internet that it cannot reasonably be considered private,' and thus it cannot be considered unjust . . ." Mot. at 22. That is a bold and incredible claim for RBI to make, given that its own cookie settings pop-up prominently acknowledged users' interest in privacy and promised users that they could protect such information. In any event, this is the same argument RBI makes with respect to damages, and fails for the same reasons set forth above. Moreover, Plaintiff has described the benefits

unjustly conferred to RBI and Third Parties. CAC ¶¶ 26, 31–33 (describing ways in which RBI benefited from the use of cookies).

### F. Plaintiff Sufficiently Pleads Trespass to Chattels.

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, at *12 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "establish a significant reduction in service constituting an interference with the *intended functioning* of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emphasis added).

Here, Plaintiff easily pleads each element by alleging that RBI intentionally, and contrary to Plaintiff's express rejections, allowed the Third Parties to put cookies on their devices and browsers. CAC ¶¶ 21–25, 27–28 (describing intentional conduct), ¶¶ 37–45, 79–90 (describing placement of cookies despite express rejection). RBI argues that Plaintiff has not alleged "significant" interference with their devices. Mot. at 23. But RBI's unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiff's and other Class members computing devices. CAC ¶ 186. This includes reducing the intended function of the system—i.e. Plaintiff's ability to use his device and browser without being tracked by the Third Parties. Such breaches of privacy are sufficient to support the injury element of a claim for trespass to chattels. *See Facebook Tracking*, 956 F.3d at 601; *see also In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices").

The cases RBI cites do not address this type of claim and are thus distinguishable. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (no allegations of impaired intended

function); *Henson v. Turn, Inc.*, No. C 15-01497 JSW, 2018 U.S. Dist. LEXIS 212249, at *12 (N.D. Cal. Dec. 17, 2018) (same); *Vecchio v. Amazon.com, Inc.*, No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536, at *15 (W.D. Wash. June 1, 2012) (same).

**G. Plaintiff Requests Leave to Amend If Necessary.**

If the Complaint is dismissed, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). RBI argues that amendment would be futile because Plaintiff lacks standing to pursue his claims in federal court, but Plaintiff has suffered a concrete injury-in-fact as addressed above. In any event, any dismissal should not be with prejudice. *See Gunter v. Myers*, No. 23-35124, 2024 U.S. App. LEXIS 7762, at *3 (9th Cir. Apr. 2, 2024) (holding that it was error for a district court to dismiss claims with prejudice for lack of standing); *see also Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (dismissals for lack of subject matter jurisdiction should ordinarily be dismissed without prejudice); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) (dismissal for lack of standing is a dismissal for lack of subject matter jurisdiction). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, RBI's motion to dismiss must be denied.

Dated: July 8, 2025

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*