Stephanie Sheridan (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com

Attorney for Defendants
RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL PEMBERTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC,<br><br>Defendants. | Case No. 3:25-cv-03647-JSC<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION, AND IN THE ALTERNATIVE, FOR LIMITED DISCOVERY PRIOR TO RESOLVING THE MOTION TO COMPEL**<br><br>Date: September 4, 2025<br>Time: 10:00 a.m.<br>Location: San Francisco Courthouse, Courtroom 8<br><br>Complaint Filed: April 25, 2025 |

## TABLE OF CONTENTS


I. LITIGATION OF PLAINTIFF'S UNDERLYING CLAIM SHOULD BE STAYED PENDING RESOLUTION OF WHETHER THERE IS AN AGREEMENT TO ARBITRATE ..... 1

II. THIS CASE SHOULD PROCEED IN THE FORUM WHERE PLAINTIFF ORIGINALLY FILED IT: ARBITRATION ..... 1

A. By Filing In Arbitration, Plaintiff Waived His Right To Bring His Claims In Court Rather Than Arbitration ..... 1

B. Because Plaintiff Represented To The AAA That There Was An Agreement To Arbitrate, He Is Estopped From Claiming No Agreement Existed ..... 3

III. IN THE ALTERNATIVE, THE COURT SHOULD PERMIT LIMITED DISCOVERY ON THE ISSUE OF CONTRACT FORMATION PRIOR TO RULING ON THE MOTION TO COMPEL ARBITRATION ..... 3

IV. CONCLUSION ..... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Daniels v. S. F. Unified Sch. Dist.*, No. C 98-4068 TEH, 2001 U.S. Dist. LEXIS 3186 (N.D. Cal. Mar. 19, 2001) .................................... 3

*Hornor, Townsend & Kent, Inc. v. Hamilton*, No. 1:01-CV-2979-JEC, 2003 U.S. Dist. LEXIS 25967 (N.D. Ga. Sept. 29, 2003) .............................. 1

*Linder v. Golden Gate Bridge*, No. 4:14-cv-03861-SC, 2015 U.S. Dist. LEXIS 101275 (N.D. Cal. Aug. 3, 2015) .............................. 1

*Openshaw v. FedEx Ground Package Sys.*, 731 F. Supp. 2d 987 (C.D. Cal. 2010) ........................................................................................ 2

*PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692 (6th Cir. 2019) ................................................................................................ 2

*Viz Media LLC v. Steven M Spector PC*, No. 07-cv-00660-MJJ, 2007 U.S. Dist. LEXIS 29442 (N.D. Cal. April 10, 2007) .............................. 2

## I. <u>LITIGATION OF PLAINTIFF'S UNDERLYING CLAIM SHOULD BE STAYED PENDING RESOLUTION OF WHETHER THERE IS AN AGREEMENT TO ARBITRATE</u>

As a preliminary matter, this Court should stay litigation of Plaintiff's underlying claim pending resolution of Defendants' Motion to Compel Arbitration and determination as to whether there is an agreement to arbitrate. *See* Mot., pg. 8. Plaintiff's Opposition neither responds nor objects to this relief. Thus, Defendants' Motion to stay the underlying litigation should be granted. *See Linder v. Golden Gate Bridge*, No. 4:14-cv-03861-SC, 2015 U.S. Dist. LEXIS 101275, *11 (N.D. Cal. Aug. 3, 2015) (holding that failure to respond to an argument constitutes waiver on that issue).

## II. <u>THIS CASE SHOULD PROCEED IN THE FORUM WHERE PLAINTIFF ORIGINALLY FILED IT: ARBITRATION</u>

Plaintiff filed this case in arbitration, told the AAA that an agreement to arbitrate existed, and forced Defendants Restaurant Brands International Inc. and Restaurant Brands International US Services LLC (hereinafter "Defendants" or "RBI") to pay arbitration fees. The Court should reject Plaintiff's gamesmanship—which had no possibility of promoting "efficiency," as Plaintiff now contends (Opp., pg. 11)—and force Plaintiff to pursue his claims in arbitration, where he originally filed them.

### A. By Filing In Arbitration, Plaintiff Waived His Right To Bring His Claims In Court Rather Than Arbitration

Plaintiff argues that RBI is now estopped from arguing that Plaintiff waived his right to challenge the arbitrability of his claims because Defendants raised the waiver issue with the Arbitrator and "lost." *Id.*, pp. 9–13. Defendants are not so estopped, and a finding otherwise would perversely reward Plaintiff for invoking an arbitration agreement for the sole purpose of arguing that same agreement does not exist. While Plaintiff points to *AAA* rules saying an arbitrator has authority to decide the existence of an agreement (*Id.*, pg. 10), he does not—and cannot—substantively challenge the ample Supreme Court (and Ninth Circuit) precedent foreclosing that exact position. *See, e.g.,* Mot., pp. 11–12 (citing cases).

A determination that there is no agreement to arbitrate "is equivalent to a decision that the arbitrator lacks subject matter jurisdiction to hear the case." *Hornor, Townsend & Kent, Inc. v. Hamilton*, No. 1:01-

CV-2979-JEC, 2003 U.S. Dist. LEXIS 25967, *25 (N.D. Ga. Sept. 29, 2003). But when a court lacks subject matter jurisdiction, a subsequent court (that does have jurisdiction) is not bound by the orders of the prior court that lacked jurisdiction. *See Viz Media LLC v. Steven M Spector PC*, No. 07-cv-00660-MJJ, 2007 U.S. Dist. LEXIS 29442, *18 (N.D. Cal. April 10, 2007). Thus, if the arbitrator does not have jurisdiction to decide the issue of contract formation—and the arbitrator here held he did not—Defendants are free to raise their challenge with this Court.

Plaintiff, not RBI, made the choice to initiate arbitration. While Plaintiff claims he filed the demand for arbitration for "efficiency" (Opp., pg. 11), this approach had the opposite effect. His demand for arbitration was filed nearly two years ago, and the threshold question of whether a binding agreement exists still has not been resolved. If Plaintiff genuinely believed the arbitration agreement was unenforceable, his claim of "efficiency" makes even less sense. No reasonable person, believing there is ***no*** agreement to arbitrate, would invoke that same agreement to demand arbitration, somehow thinking that doing so would be "efficient."

Plaintiff's cited cases are distinguishable, as they generally involved situations where the ***defendant*** initiated arbitration proceedings and the plaintiff challenged the existence or enforceability of an agreement. *See id*, pg. 11 (citing *Textile Unlimited v. A..BMH and Co.*, 240 F.3d 781, 784 (9th Cir. 2021) (defendant initiated arbitration and plaintiff challenged arbitrability), *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1265–66 (9th Cir. 2006) (same), *Pen. Plan for Pen. Tr. Fund for Op. Eng'rs v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034, 1037 (N.D. Cal. 2013) (same)). In the sole case where the plaintiff initiated arbitration, *Openshaw v. FedEx Ground Package Sys.*, 731 F. Supp. 2d 987 (C.D. Cal. 2010), there was ***no*** disagreement as to the existence of an agreement to arbitrate; the plaintiff solely challenged the enforceability of an agreement that both parties agreed existed (as there was no delegation clause granting the arbitrator authority to resolve that issue).

Ultimately, a party that has "no choice but to arbitrate their claims," such as by being compelled to arbitrate, may preserve the ability to dispute arbitrability. *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019). But the party that "initiated the arbitration" has "missed the chance to … deny that [a valid] agreement to arbitrate existed." *Id.* In sum, by voluntarily initiating the arbitration process

with the AAA and representing to the AAA that an agreement existed, Plaintiff waived his right to now disavow that same agreement. This Court should not permit Plaintiff's procedural gamesmanship.

### B. Because Plaintiff Represented To The AAA That There Was An Agreement To Arbitrate, He Is Estopped From Claiming No Agreement Existed

Independent of waiver, Plaintiff does not dispute that RBI did not raise the issue of estoppel in the arbitration; therefore, RBI is entitled to assert the issue of estoppel here. Plaintiff argues that his submission of the Terms of Service ("TOS") did not constitute "a concession that he had agreed to arbitrate." Opp., pg. 13. Plaintiff's actions speak louder than his words. To initiate arbitration, Plaintiff represented to the AAA that there was an agreement to arbitrate. The AAA would not have opened the matter otherwise. While Plaintiff certainly has preserved his right to challenge the *enforceability* of the agreement, he cannot back out of his representation to the AAA regarding an agreement to arbitrate.

RBI was also prejudiced. After Plaintiff filed a demand with the AAA and submitted the arbitration agreement as a condition to initiating arbitration, not only were arbitration fees imposed by the AAA on RBI, but RBI also incurred additional legal fees in connection therewith. *See Daniels v. S. F. Unified Sch. Dist.*, No. C 98-4068 TEH, 2001 U.S. Dist. LEXIS 3186 (N.D. Cal. Mar. 19, 2001) (holding that "legal fees and wasted time" constitutes prejudice).

No reasonable person, believing in good faith that there is ***no*** agreement to arbitrate in the first place, would voluntarily initiate arbitration based on that same agreement. A reasonable person in Plaintiff's position would have simply filed in federal court and opposed a motion to compel. Having affirmatively represented to the AAA that an agreement to arbitrate existed, as well as having induced RBI to incur substantial time and expense as a result thereof, Plaintiff is estopped from now reversing course and denying the existence of that agreement to escape the consequences.

## III. <u>IN THE ALTERNATIVE, THE COURT SHOULD PERMIT LIMITED DISCOVERY ON THE ISSUE OF CONTRACT FORMATION PRIOR TO RULING ON THE MOTION TO COMPEL ARBITRATION</u>

Plaintiff argues that the TOS is not enforceable because the Burger King website ("Website") did not provide reasonably conspicuous notice of the TOS and arbitration agreement, and that he never took

any action to manifest assent to the terms, such as by checking a box agreeing to be bound by the TOS. *See* Opp., pp. 7–9. This is a red herring. RBI's argument is not that Plaintiff manifested agreement to the TOS by taking any specific action, but that he may have had actual knowledge of the TOS and nonetheless navigated the website to manufacture his claim. *See* Mot., pp. 13–17.

Even in the absence of a manifestation of assent, a website user is bound by the TOS and arbitration agreement if the user has "actual knowledge" of the terms. *See id*., pg. 13 (citing *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1018 (9th Cir. 2024)). As detailed in RBI's Motion, RBI should be entitled to limited discovery on the issue of Plaintiff's actual knowledge, based on the highly suspicious timing of events that led to Plaintiff filing his claim, and the fact that at least one other of Plaintiff's Counsel's clients has been sanctioned in similar litigation for frivolously denying the existence of an arbitration agreement.

Plaintiff submits a declaration in support of his Opposition that he claims evidences his supposed unawareness of the TOS and arbitration agreement. *See* Dkt. 27-4. Plaintiff's wordsmithed declaration carefully avoids the relevant questions. Plaintiff claims that he did not "see" a link on the Website to the TOS, did not "know" he would be "subject to" arbitration, and that it was his "understanding" that his only agreement was that his Website activity would not be tracked. *Id.* But Plaintiff does *not* deny having knowledge of the TOS or arbitration agreement—his statements are carefully crafted to create that impression, but he does not deny actual knowledge.

Plaintiff decries RBI's effort as a "conspiracy theory" and "fishing expedition." Opp., pg. 2. The timeline of events, laid out in RBI's motion, says otherwise. It is too coincidental for a new plaintiff to have "discovered" his alleged privacy claims immediately after Plaintiff's Counsel stopped representing Mr. Weingartner. *See* Mot., pp. 3–8. And Plaintiff still does not explain how he could have retained counsel *before* he supposedly learned of RBI's alleged "privacy violations." Finally, while Plaintiff's Counsel may believe that the arbitrator acted "wrongly" in imposing sanctions on another one of his clients who likewise denied the existence of an arbitration agreement (Opp., pg. 6), it does not change the fact that sanctions were imposed.

Tellingly, Plaintiff does not dispute any of the *facts* put forth by RBI; he instead tries to simply sweep them to the side by dismissing them as a conspiracy theory. But they are not. These facts and the

timeline of events do not add up. To the extent the Court declines to find that Plaintiff is bound to arbitrate based on waiver and/or estoppel, RBI should be entitled to limited discovery on the issue of Plaintiff's actual knowledge before the Court decides whether there is an agreement to arbitrate.

## IV. CONCLUSION

For the foregoing reasons, RBI's Motion should be granted.

Dated: July 15, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants
RESTAURANT BRANDS INTERNATIONAL INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC