Stephanie Sheridan (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com

Attorney for Defendants
RESTAURANT BRANDS INTERNATIONAL INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DANIEL PEMBERTON, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

RESTAURANT BRANDS INTERNATIONAL, INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC,

Defendants.

Case No. 3:25-cv-03647-JSC

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Date: September 4, 2025
Time: 10:00 a.m.
Location: San Francisco Courthouse, Courtroom 8

Complaint Filed: April 25, 2025

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING .......... 1

III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS .......... 4

A. Plaintiff's CIPA Claims (Counts III and IV) Are Time-Barred .......... 4

B. Plaintiff's Invasion of Privacy (Count I) and Intrusion Upon Seclusion (Count II) Claims Fail .......... 6

C. Plaintiff's Section 631 CIPA Claim (Count III) Fails .......... 7

1. Plaintiff Does Not Plausibly Allege That RBI Intentionally Used a Defective Cookie Banner .......... 7

2. Plaintiff Does Not Plausibly Allege that the Contents of Any Communications Were Intercepted .......... 9

D. Plaintiff's CIPA Section 638.51 Claim (Count IV) Fails .......... 10

E. Plaintiff's Claim for Fraud, Deceit, and Misrepresentation (Count V) Fails .......... 11

F. Plaintiff's Claim for Unjust Enrichment (Count VI) Fails .......... 12

G. Plaintiff's Claim for Trespass to Chattels (Count VII) Fails .......... 13

IV. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED .......... 13

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3, 8

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) ... 13

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ... 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 7

*Conohan v. Rad Power Bikes Inc.*,
No. 25-0106, 2025 U.S. Dist. LEXIS 72865 (C.D. Cal. April 3, 2025) ... 4

*Cuadrado v. Tierney 2011 Trust*,
No. 4:22-cv-01623-YGR, 2023 U.S. Dist. LEXIS 59243 (N.D. Cal. April 4, 2023) ... 11

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 U.S. App. LEXIS 31929 (9th Cir. Nov. 22, 2024) ... 2, 3, 4, 10

*Daniels v. S. F. Unified Sch. Dist.*,
No. C 98-4068 TEH, 2001 U.S. Dist. LEXIS 3186 (N.D. Cal. Mar. 19, 2001) ... 5

*Darnaa, LLC v. Google, Inc.*,
No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) ... 5

*Doe v. Amgen, Inc.*,
2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ... 7

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 13

*Ebner v. Fresh, Inc.*,
818 F.3d 799 (9th Cir. 2016) ... 12

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ... 8, 11

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 7

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 .......... 7

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) .......... 6

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 10

*Helm v. Alderwoods Grp.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) .......... 11

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*Jones v. Tonal Sys.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 9

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 7

*Khamooshi v. Politico LLC*,
No. 24-cv-07836-SK, 2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) .......... 2, 3, 10

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-cv-01119-DC-CKD, 2025 U.S. Dist. LEXIS 109123 (E.D. Cal. June 9, 2025) .......... 10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) .......... 11

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) .......... 8

*Mullins v. Premier Nutrition Corp.*,
2018 WL 510139 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 .......... 12

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) .......... 12

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-cv-0402, 2024 U.S. Dist. LEXIS 228992 (S.D. Cal. Dec. 13, 2024) .......... 9

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ........ 8

*Rhynes v. Stryker Corp*.,
2011 WL 2149095 (N.D. Cal. May 31, 2011) ........ 12

*Rodriguez v. Autotrader.Com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 3, 4

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ........ 7

*Shahnaz Zarif v. Hwareh.com, Inc.*,
2025 U.S. Dist. LEXIS 26519 (S.D. Cal Feb. 12, 2025) ........ 8

*Silver v. Stripe, Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ........ 7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 9

*Thissel v. Murphy*,
No. 15-cv-05937-RMW, 2016 U.S. Dist. LEXIS 70825 (N.D. Cal. May 31, 2016) ........ 13

*Thomas v. Papa John's Int'l, Inc.*,
No. 24-3557, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) ........ 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 2

*Vecchio v. Amazon.com, Inc.*,
No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536 (W.D. Wash. June 1, 2012) ........ 13

*Walsh v. Nevada Dep't of Human Resources*,
471 F.3d 1033 (9th Cir. 2006) ........ 4

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) ........ 1

*Yetter v. Ford Motor Company*,
428 F.Supp.3d 210 (N.D. Cal. 2019) ........ 5

**California Cases**

*Aviles v. LiveRamp, Inc.*,
2025 Cal. Super. LEXIS 776 (Los Angeles Super., Jan. 28, 2025) ........ 10

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) ........ 10

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .......... 12

*Saint Francis Memorial Hosp. v. State Dept. of Public Health*,
9 Cal. 5th 710 (2020) .......... 4

**California Statutes**

California Penal Code
§ 631 .......... 9
§ 638.50 .......... 10, 11

**Other Authorities**

Federal Rules of Civil Procedure Rule 9 .......... 11

## I. INTRODUCTION

Plaintiff's Opposition suffers from two fundamental flaws that permeate his entire response. First, Plaintiff fails to identify facts to support his claim that Defendants Restaurant Brands International Inc. and Restaurant Brands International Services LLC (hereafter "Defendants" or "RBI") shared any sensitive information or otherwise injured him—thus preventing Plaintiff from having Article III standing, and from stating any claim.

Second, Plaintiff's resolve in labeling ordinary website interactions as "Private Communications," does not magically transform those interactions into an actionable claim. Plaintiff does not—and cannot—plausibly allege any actual or concrete injury solely from visiting and browsing the Burger King website at www.bk.com (the "Website").

Plaintiff's "intentionality" argument likewise misses the mark. While Plaintiff argues that Defendants "intentionally" used third-party cookies on the Website, that is not the relevant inquiry in this case. Instead, Plaintiff must plausibly allege that Defendants intentionally deployed a defective Cookie Banner to circumvent Website users' opt-out preferences—the mere intentional use of cookies is not enough.

For these reasons, and the additional reasons detailed below with respect to each of Plaintiff's claims, Plaintiff lacks Article III standing, his claims fail individually, and his Complaint should be dismissed.

## II. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiff bears the burden of proving that he has suffered a concrete injury-in-fact to establish standing. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). Conclusory allegations of injury are not sufficient. *See id.* Plaintiff must also show that he *personally* has been injured, and not simply that the injury may have been suffered by other unidentified members of the putative class. *See id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)). In his Opposition, Plaintiff advances three arguments; each one fails.

First, Plaintiff argues that "[i]nvasions of privacy have long been recognized at common-law as concrete injuries sufficient to support a lawsuit" and that "the Ninth Circuit has held specifically that

violations of CIPA suffice to confer Article III standing." Opp., pg. 7 (citing *In re Facebook Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020)). In other words, Plaintiff contends that an alleged violation of CIPA *per se* gives rise to standing.

As an initial matter, CIPA is just one of Plaintiff's six claims—Plaintiff's "per se violation" theory would not impact the other five. Regardless, the Ninth Circuit has ***never*** held that an alleged violation of CIPA *per se* gives rise to a concrete injury-in-fact. Quite the opposite: the Ninth Circuit ***has*** affirmed the dismissal of a CIPA claim in a similar internet-tracking case because the plaintiff did not adequately allege an actual and concrete injury. *See Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 U.S. App. LEXIS 31929, *1 (9th Cir. Nov. 22, 2024) (affirming dismissal of CIPA claim because the plaintiff "has not pleaded a concrete injury that confers Article III standing"). More generally, the entire premise of modern Article III jurisprudence is that the mere existence of a statutory violation does not, by itself, give rise to a concrete injury sufficient to confer Article III standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).

Next, Plaintiff argues that the Website's "own Privacy Policy outlines the data captured and transmitted by the cookies" and that the data collected "is traceable to an individual user." Opp., pp. 8–9. This argument puts the cart before the horse, because even if the data collected were "traceable to an individual user," it fails to address the threshold issue of whether Plaintiff has a cognizable privacy interest in that data in the first place. For example, in the very next paragraph of his Opposition, Plaintiff seems to concede that individuals have "no privacy interest" in their IP addresses. *Id.*, pg. 9 (citing *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025)). Thus, even where a website's privacy policy states that IP addresses are captured and transmitted by cookies, and even if those IP addresses were "traceable to an individual user," that is still insufficient to confer Article III standing.

Finally, Plaintiff claims that the cases relied on by RBI "failed to identify the type of information at issue or identified only non-private information," such as IP addresses. *Id.*, pp. 9–10. But his characterization is wrong. For example, Plaintiff tries to distinguish *Khamooshi* by claiming that "the only information identified was plaintiffs' IP addresses." *Id.*, pg. 9. To the contrary, the plaintiff in *Khamooshi*

alleged that the defendant intercepted "browser and device data, IP address, and 'other identifying information'," which mirrors Plaintiff's allegations here. *See* 2025 U.S. Dist. LEXIS 92788 at *3.

Nor can Plaintiff manufacture a claim by labeling the information at issue as "Private Communications." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). As noted in RBI's Motion, the information allegedly intercepted in this case falls into three general categories: (1) browsing activity (pages viewed, links clicked, etc.); (2) purported identifiers (IP address, device identifiers, and geolocation); and (3) user-input information (e.g., searches, etc.). *See* Mot., pg. 6, (citing Compl. ¶ 25). Browsing information and purported identifiers are not "personal information"; therefore, the collection and alleged transmission thereof is not highly offensive and does not constitute a concrete injury. *See id*., pp. 6–8 (discussing cases). Plaintiff makes no effort to address this issue and nearly concedes it by attempting to distinguish this case from others because they involved only "non-private information," even though the "non-private information" in those cases was the same ***browsing activity*** and ***purported identifiers*** as alleged here. Opp., pg. 9.

While the third category of information at issue—user-input information (e.g., searches entered on a website)—*may* give rise to concrete injury, Plaintiff fails to allege the facts needed to state a claim. That is, even where user-input information is at issue, "[n]ot all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.Com, Inc.*, 762 F. Supp. 3d 921, 926-27 (C.D. Cal. 2025) (citations omitted). Here, ***Plaintiff does not allege that he made any searches on the Website*** or provided anything that could remotely qualify as sensitive information. Plaintiff simply ignores this key factual distinction.[1]

Indeed, the Ninth Circuit affirmed a lack of Article III standing on this precise basis in *Daghaly*:

> Daghaly makes general allegations about how Bloomingdales.com intercepts website visitors' communications and monitors their actions, including the types of information Bloomingdales.com collects and the mechanisms of collection. She also alleges that the information collected is transmitted to third parties. But Daghaly's allegations about her

[1] Plaintiff also argues that "courts have consistently refused to require plaintiffs to plead the exact communications they had with websites." Opp., pg. 15. That argument is addressed *infra*. However, to the extent it overlaps with the issue of Article III standing, Defendants emphasize that their challenge is not based on Plaintiff's failure to plead "exact communications" but rather ***any*** communications.

> own interactions with the Bloomingdales.com website are sparse. She alleges only that she "visited" and "accessed" the website. She states that she was 'subjected to the interception of her Website Communications,' but she does not allege that she herself actually made any communications that could have been intercepted once she had accessed the website. ***She does not assert, for example, that she made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it***.

2024 U.S. App. LEXIS 31929 at *2–3 (emphasis added).[2] Here, as in *Daghaly*, Plaintiff alleges only that he "visited the Website to browse information about Burger King products and location." Compl. ¶ 84. He does not allege that he conducted searches or provided the Website with information of any kind, let alone information that was sensitive or personal in nature. *See Rodriguez*, 762 F. Supp. 3d at 926–27. The few categories of information that could have been collected from these rote interactions—webpages visited, IP address, etc.—are not "personal information" and their collection and alleged transmission is not highly offensive. *See Mot.*, pp. 6–8 (discussing cases). In turn, Plaintiff has not suffered a concrete injury.

Because Plaintiff has failed to establish standing, this Court should dismiss Plaintiff's Complaint in its entirety.[3]

## III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON THE MERITS

### A. Plaintiff's CIPA Claims (Counts III and IV) Are Time-Barred

Plaintiff does not dispute the general proposition that the filing of an arbitration demand does *not* toll the statute of limitations. *Compare* Mot., pp. 10–12, *with* Opp., pp. 10–11. Instead, Plaintiff argues that the limitations period was equitably tolled.

To invoke equitable tolling, Plaintiff must allege that he acted in an objectively reasonable manner by filing a demand for arbitration ***and*** that Defendants incurred no prejudice. *See Saint Francis Memorial*

[2] One court has attempted to distinguish *Daghaly* based on the Ninth Circuit's comment that the plaintiff's allegations were "sparse." *Conohan v. Rad Power Bikes Inc.*, No. 25-0106, 2025 U.S. Dist. LEXIS 72865, *15 (C.D. Cal. April 3, 2025). But the *Daghaly* plaintiff, like Plaintiff here, alleged that the website recorded, *inter alia*, browsing activity, purported device identifiers, user-input information, and "every action a user takes on the website," including financial information. *See Daghaly v. Bloomingdales.com, LLC*, No. 3:23-cv-00129, Dkt. 1, ¶¶ 1–2, 21–27, 44–48, 54, 58, 63–66 (S.D. Cal. June 6, 2023). What was "sparse" in *Daghaly*—any meaningful interaction with the website sufficient to confer standing—is the same thing that is sparse here with respect to Plaintiff. What was "sparse" in *Daghaly* was not the plaintiff's allegations of injury, but the plaintiff's failure to identify any meaningful interaction with the website that resulted in the submission of sensitive information.

[3] RBI also moved to dismiss for lack of standing on Plaintiff's diminution of value theory of injury. *See* Mot., pp. 8–9. Plaintiff's Opposition does not address this issue. As such, RBI assumes Plaintiff is abandoning this theory of injury and will not address the matter further. *See Walsh v. Nevada Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding the plaintiff "effectively abandoned" her claim by failing to address argument raised in motion to dismiss).

*Hosp. v. State Dept. of Public Health*, 9 Cal. 5th 710, 724 (2020). Here, Plaintiff fails under both prongs—either one of which is a sufficient basis to dismiss his CIPA claims.

Nothing about Plaintiff's conduct was objectively reasonable. No reasonable person, believing that there was ***no*** arbitration agreement in the first place, would invoke an arbitration clause and commence an arbitration solely to argue that there is no binding agreement to arbitrate. Plaintiff's strategy is akin to challenging a forum selection clause by voluntarily filing in the disputed forum and then seeking a decision that the court lacks jurisdiction to hear the matter. It makes no sense. Under the circumstances present here, a reasonable person would file in court—*where he believes the matter properly should be*. While Plaintiff is generally correct that "parties may submit any issue to arbitration if they mutually agree to do so" (Opp. pg. 11), he cannot identify where or when Defendants agreed to arbitrate the threshold issue of contract formation.[4]

Plaintiff also ignores the fact that, after the arbitrator issued his order, Plaintiff waited nearly ten (10) months before filing this action (*see* Mot., pg. 5), over two years after he allegedly visited the website. Equitable tolling is applicable where a plaintiff misses the statute of limitations deadline by days or weeks; it is not intended to let a plaintiff sit on a case for upwards of a year before refiling. *See, e.g.*, *Yetter v. Ford Motor Company*, 428 F.Supp.3d 210, 230 (N.D. Cal. 2019) (collecting cases); *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL 6540452, *5 (N.D. Cal. Nov. 2, 2016) (finding a 10-month delay between the original action and filing the second action unreasonable and declining to apply equitable estoppel).

Plaintiff dismisses any possible prejudice to RBI by asserting that it "cannot be taken seriously" because it believes the case should be decided in arbitration. Opp., pg. 11. What RBI contends is irrelevant. It incurred prejudice though the wasted time, effort, and expense of spending eight months in arbitration arguing over an issue that was facially for this Court to decide in the first place (in addition to the arbitration fees incurred). *Cf. Daniels v. S. F. Unified Sch. Dist.*, No. C 98-4068 TEH, 2001 U.S. Dist. LEXIS 3186 (N.D. Cal. Mar. 19, 2001) ("legal fees and wasted time" constitutes prejudice).

---

[4] In fact, the delegation clause here carves out the arbitrability decision: "Any question about whether a Dispute is subject to arbitration, including any Dispute about the interpretation, applicability, meaning or enforceability of any provision of the Terms (except for whether or not the agreement to arbitrate was validly formed) will be decided by the arbitrator, not a court." Dkt. 11.1, Exh. D.

Because Plaintiff cannot avail himself of equitable tolling, his CIPA claims are barred by the statute of limitations.

**B. Plaintiff's Invasion of Privacy (Count I) and Intrusion Upon Seclusion (Count II) Claims Fail**

Plaintiff does not dispute that to bring a common law privacy claim, he must plausibly allege: (1) a reasonable expectation of privacy; and (2) that the alleged intrusion was "highly offensive." Opp., pg. 11; *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1088 (N.D. Cal. 2022). Plaintiff fails on both counts.

Plaintiff first argues that he had a reasonable expectation of privacy because "RBI represented to him" that he could opt-out of third-party tracking and that the representation was false. Opp., pp. 11–12. But that is not enough. Plaintiff must have a reasonable expectation of privacy in the underlying data, independent of any alleged misrepresentation. A privacy violation cannot be founded on information that is not private in the first place solely because Plaintiff believed it would not be disclosed.

Plaintiff alleges that cookies tracked his "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." (Compl. ¶¶ 112, 121). But Plaintiff offers no rebuttal to Defendants' cases finding no reasonable expectation of privacy in this information, other than a readily distinguishable case that undermines his argument: *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022). *Compare* Mot., pp. 14–15 (collecting cases), *with* Opp., pp. 11–12. In *Hammerling*, the court recognized that there was no reasonable expectation of privacy "[1] when the data collection is within users' common-sense expectation or [2] when the information is not sensitive." *Id.* at 1089 (emphasis added). The court ultimately concluded that there was a reasonable expectation of privacy not because the users "might not expect" the data to be collected, but because it involved "sensitive data," including religious affiliations and "sexual preferences and proclivities." *Id.* at 1078, 1089.

Even if Plaintiff could plead a reasonable expectation of privacy (which he cannot—a deficiency that in itself dooms his common law privacy claims), he also fails to plausibly allege that the privacy intrusion was "highly offensive." While Plaintiff lists a number of cases where the invasion of privacy was deemed offensive (*see* Opp. at pg. 12), those cases are readily distinguishable in that all involved actual

highly offensive conduct. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) ("[S]ensitive health and personal safety information"); *Silver v. Stripe, Inc.*, 2021 U.S. Dist. LEXIS 141090, at *4 (N.D. Cal. 2021) ("[S]ensitive financial information"); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157 (tracking "comprehensive location data" including information from "dormant apps"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *27–28 (N.D. Cal. May 21, 2021) (collecting data from other applications); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 596–97 (N.D. Cal. 2021) (tracking geolocation after application turned off).

Plaintiff's reliance on *Facebook Tracking* is similarly misplaced. *See* Opp., pg. 13. Specifically, *Facebook Tracking* and related cases involved situations where "some of the alleged data collected was sensitive, such as information about a user's visits to sensitive websites." *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 629 (N.D. Cal. 2021). None of these circumstances exist or are pled here, nor could they be given the nature of a website involving Burger King food products.

Indeed, the Ninth Circuit recently affirmed dismissal of a virtually identical internet-tracking claim against Papa John's Pizza that likewise involved "interception" of the same categories of information Plaintiff complains of here, concluding that the plaintiff "failed to plead a 'highly offensive' violation." *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 U.S. App. LEXIS 15039, *3–4 (9th Cir. June 18, 2025). This Court should reach the same conclusion.

### C. Plaintiff's Section 631 CIPA Claim (Count III) Fails

#### *1. Plaintiff Does Not Plausibly Allege That RBI Intentionally Used a Defective Cookie Banner*

Plaintiff concedes that his CIPA claim requires a showing of intent. The Parties disagree, however, in terms of what, exactly, he needs to claim that RBI intended.

Plaintiff claims that the intent requirement is satisfied by pleading that RBI "intentionally (i.e., not accidentally)" used third party cookies on its website. *See* Opp. at pg. 14.

However, most of Plaintiff's cited cases did not consider the question of intentionality, and most dismissed the plaintiffs' claims. *See, e.g., Doe v. Amgen, Inc.*, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024) (denying motion for reconsideration of order dismissing CIPA claim based on party

exception); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *5–9 (N.D. Cal. Oct. 23, 2019) (the CIPA party exception was inapplicable because the alleged interception was done by a third party); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, 2024 U.S. Dist. LEXIS 213565, at *22–23 (C.D. Cal. Sep. 3, 2024) (granting motion to dismiss for failure to adequately allege aiding and abetting).

Plaintiff's strongest (or at least, least inapposite) case, *Shahnaz Zarif*, concerned distinguishable claims: there the plaintiff alleged that the defendant failed to adequately disclose the ***existence*** of third-party trackers in the first place—***not*** that the opt-put provisions of a cookie banner functioned improperly. *See Shahnaz Zarif v. Hwareh.com, Inc.*, 2025 U.S. Dist. LEXIS 26519, at *3–4 (S.D. Cal Feb. 12, 2025). That is, in the absence of ***any*** disclosure, it may well be reasonable to infer at the pleading stage that the defendant "acted deliberately" by employing—but not disclosing—third party tracking on its website. *See id.* at *21. The same reasoning would not apply here, given the undisputed fact the Website conspicuously displayed a Cookie Banner disclosing the use of third-party cookies and further detailed its use of the technology in its Privacy Policy. *See* Opp. at pp. 3–4, 6–7. Thus, the issue in this case is ***not*** whether RBI "intentionally" used third-party cookies on the Website without disclosing them, but whether Plaintiff plausibly alleges that RBI intentionally used a defective Cookie Banner so it could continue to track Plaintiff ***after*** he opted out of third-party tracking.

Plaintiff does not allege any ***facts*** that raise the plausible inference that RBI's allegedly defective Cookie Banner was an intentional and willful act. Plaintiff's Opposition ignores this issue completely. *See* Opp., pp. 14–15. As the Website immediately disclosed the use of third-party cookies, provided a detailed explanation in its Privacy Policy, and provided users with the ability to opt out of third-party advertising, the "obvious alternative explanation" is that there was an unintentional configuration error with the Website's Cookie Banner and opt-out functionality. *See Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Plaintiff's allegations that RBI acted "intentionally" in having an allegedly defective Cookie Banner is speculation "merely consistent with defendant's liability [and] stops short of the line between *possibility* and *plausibility*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

### 2. *Plaintiff Does Not Plausibly Allege that the Contents of Any Communications Were Intercepted*

Plaintiff must plausibly allege not just that a "communication" was intercepted, but that "contents" of the communication were intercepted. Cal. Pen. Code § 631(a). Plaintiff does not dispute that "record information" showing only that a communication occurred, without the contents thereof, is insufficient. *See* Opp., pg. 15. His conclusory assertion that RBI shared "contents" (*see id.*)—without any explanation, rationale, or case in support—is insufficient to state a claim.

Plaintiff argues that "courts have consistently refused to require plaintiffs to plead the exact communications they had with websites." Opp., pg. 15 (citing *Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023)). This misstates RBI's argument. The basis for RBI's motion is ***not*** that Plaintiff has not identified the "exact" content that was intercepted, but that Plaintiff does not plausibly allege the interception of ***any*** content. Thus, while the Court in *Byars* was able to infer that contents were intercepted—because that case involved the interception of chat ***conversations***—the same inference cannot be made here, where Plaintiff merely claims to have "visited the Website to browse information about Burger King products and locations." Compl. ¶ 84; Cf. *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, *11 (N.D. Cal. Oct. 1, 2024) (holding, based on the specific facts at issue, that contents were intercepted). "The specifics of the shared information are necessary for the Court to determine whether Plaintiff has sufficiently asserted a claim for purposes of the present motion to dismiss." *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-0402, 2024 U.S. Dist. LEXIS 228992, *13 (S.D. Cal. Dec. 13, 2024).

Moreover, even *Byars* (and cases following it) recognized that a plaintiff must still, at a minimum, plausibly allege that the information intercepted was not "record information." *Byars v. Tire*, 654 F. Supp. 3d at 1027; *Jones v. Tonal Sys.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) ("Plaintiff must at a minimum demonstrate 'that the contents were not record information, such as her name and address'."). As discussed *supra* with respect to standing, courts uniformly find that the first two categories of information allegedly collected—browsing activity and purported device identifiers—are non-actionable record information under Section 631. *See* Mot., pg. 17; *Jones*, 751 F. Supp. 3d at 1037 (holding that IP addresses, locations,

browser types, mouse clicks, and pages viewed were non-actionable record information).

Finally, Plaintiff cannot plausibly allege that the "contents" of any search were intercepted, because he does not claim to have ever made a search. *Daghaly v. Bloomingdales.com, LLC*, 2024 U.S. App. LEXIS 31929 at *2–3; *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 U.S. Dist. LEXIS 109123, at *11–12 (E.D. Cal. June 9, 2025) (discussing case law regarding content and record information and that user-generated searches *may* constitute "content," but granting motion to dismiss because plaintiff failed to allege she conducted any searches).

**D. Plaintiff's CIPA Section 638.51 Claim (Count IV) Fails**

Plaintiff bases his pen register claim solely on purported identifiers (IP address, device identifiers, and geolocation). *See* Mot., pg. 6, (citing Compl. ¶ 25). Specifically, Plaintiff alleges that the third-party cookies on the Website capture "dialing routing, addressing, or signaling information" through "IP address and user-agent information" (i.e., the browser and operating system). Compl. ¶¶ 153, 57 n.11.

While Plaintiff recites language from the statutory definition of a "pen register"— a device or process that "records or decodes dialing, routing, addressing, or signaling information by an instrument or facility from which a wire or electronic communication is transmitted" (Cal. Pen. Code § 638.50(b))—Plaintiff's claim still fails because the Internet is not a pen register device. "The problem with [Plaintiff's] argument is that it is normal for websites to track the IP addresses of their visitors." *Aviles v. LiveRamp, Inc.*, 2025 Cal. Super. LEXIS 776, *6 (Los Angeles Super., Jan. 28, 2025). Indeed, Section 638.51 is aimed at telephonic call-tracing devices—not IP addresses, which are necessary to make the Internet function. *See* California Bill Analysis, A.B. 929 Assem., 4/21/2015; *see also, Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024) ("What makes the internet possible – devices communicating with each other – is the communication of the device's protocol").

As detailed in RBI's Motion, there is no expectation of privacy in that information. *See* Mot., pp. 7–8, 19; *see also, e.g.*, *Politico LLC*, 2025 U.S. Dist. LEXIS 92788 at *7 (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in … the IP addresses of the websites they visit"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest in IP addresses.").

This is precisely why attempting to transplant the pen register statute onto internet-tracking technologies does not work. As Judge Wise explained last month while dismissing a Section 638.51 claim:

> Though neither party discusses the distinction between information ***about*** a communication versus information ***within*** a communication, it crystalizes the futility of Plaintiff's suit … . If Defendant only collects information regarding the "metadata" of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then … § 638.50 does not apply.

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473, 2025 U.S. Dist. LEXIS 120002, *10 (N.D. Cal. June 24, 2025).[5] For all these reasons, Plaintiff's Count IV should be dismissed.

**E. Plaintiff's Claim for Fraud, Deceit, and Misrepresentation (Count V) Fails**

Plaintiff alleges that RBI's misrepresentations were "outright lies" and that RBI "actively concealed" that the Cookie Banner allegedly did not honor opt out requests. (Compl. ¶¶ 2, 163.) But Plaintiff does not allege any specific facts in support.

However, Plaintiff ***must*** allege sufficient facts to create a plausible inference that RBI "knew the statements were false when [he] made them." *Helm v. Alderwoods Grp., Inc*., 696 F. Supp. 2d 1057, 1080 (N.D. Cal. 2009). Plaintiff did not and instead rests on the errant premise that intent "may be alleged generally." Opp., pg. 18. Just as Plaintiff's wiretapping claim suggests only—at best—a mistake as to the Cookie Banner's configuration, so too here the allegations do not support an inference of knowledge of falsity or intent to deceive.

Plaintiff's response—made in a parenthetical no less—is that intent "may be alleged generally" under Federal Rules of Civil Procedure Rule 9(b). Opp., pg. 18. But "although the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal*'s pleading standards ***must still be applied*** to test complaints that contain claims of fraud." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014) (emphasis added); *Cuadrado v. Tierney 2011 Trust*, No. 4:22-cv-01623-YGR, 2023 U.S. Dist. LEXIS 59243, *6 n.4 (N.D. Cal. April 4, 2023) ("Rule 9(b)

[5] *Kishani* involved a trap and trap device claim instead of a pen register claim under Section 638.51, but the only substantive distinction between them is that a pen register records the "outgoing" information on the device on which it is installed versus a trap and trace device, which records the "incoming" information. *See* Cal. Pen. Code § 638.50(b), (c). This distinction does not alter the analysis here.

permits fraudulent intent to be alleged generally, although such allegations must still comply with the pleading standards set forth in *Twombly*/*Iqbal*.")

Plaintiff does not meaningfully respond to RBI's argument that he does not claim to have suffered out of pocket losses, as required to plead actual damages. *See* Mot. at 20–21. His two cited cases are irrelevant. *See* Opp., pg. 18–19 (citing *Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 4, 2024) (ruling on a *Daubert* motion in a non-fraud case regarding expert's calculation of actual damages); *Facebook Tracking*, 956 F.3d at 598 (dealing with measurable profit that Facebook had gained by selling users' data directly to advertisers)).

Accordingly, Plaintiff's Count V should be dismissed.

**F. Plaintiff's Claim for Unjust Enrichment (Count VI) Fails**

Plaintiff asserts, without further explanation, that California recognizes a standalone unjust-enrichment cause of action. *See* Opp., pp. 19–20. With few exceptions, it does not. "Unjust enrichment is not a cause of action, [ ] or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotation marks omitted). "It is synonymous with restitution." *Id.* Where, as here, a plaintiffs' underlying causes of action fail, a "claim for unjust enrichment cannot stand alone as an independent claim for relief." *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citing *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 911 (2008); *see also Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489, 975 (9th Cir. 2009); *Ebner v. Fresh, Inc.,* 818 F.3d 799, 808 (9th Cir. 2016) (same). Nor does Plaintiff allege facts to suggest ***how*** RBI was unjustly enriched at his expense.

Finally, Plaintiff's "argument that [he] will have no adequate remedy at law if [his] other claims fail is unavailing. Where the claims pleaded by a plaintiff may entitle [him] to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp*., 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011); *see also Mullins v. Premier Nutrition Corp*., 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 ("the relevant test is whether adequate damages remedy is available, not … whether she will be successful in that pursuit.").

**G. Plaintiff's Claim for Trespass to Chattels (Count VII) Fails**

Plaintiff agrees that trespass to chattels requires intentional interference with the possession of personal property. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024); Opp., pg. 20. As with Plaintiff's other claims, he fails to plausibly allege an ***intentional*** interference.

Plaintiff also does not allege any cognizable damage. He contends that "RBI's unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiff's" computing device. Opp., pg. 20. However, he does not dispute that a *de minimis* intrusion does not give rise to a trespass to chattels claim when there is no noticeable impact on the device's performance. Instead, as *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (cited in Opp., pg. 20) recognizes, there be a "significant reduction" with the intended functioning of the system. *See also* Mot., pp. 17–18. Plaintiff has not and cannot allege any such "significant reduction" caused by the cookies at issue here, which are merely "small text files" on a device. Compl. ¶ 22.

Plaintiff mischaracterizes the cases cited by RBI on this point. *See* Opp., pg. 20. In each case, the plaintiffs *did* allege impaired functioning; the courts simply rejected the conclusory allegations as implausible. *See, e.g., Vecchio v. Amazon.com, Inc.*, No. C11-366RSL, 2012 U.S. Dist. LEXIS 76536, *28 (W.D. Wash. June 1, 2012) ("[N]ot a single Plaintiff has alleged that he or she even noticed any diminution in the performance of their computers, relying instead on generalities."); *see also Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) ("[T]he plaintiffs allege that the placement of cookies on their devices 'reduces storage, disk space, and performance' but they offer no factual support for these allegations. … But nothing about … the existence of cookies physically impairs the functioning of the plaintiffs' computing devices."). The same is true here. Plaintiff's Count VII should be dismissed.

**IV. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED**

The Court should reject Plaintiff's procedurally improper request for leave to amend. *See, e.g.*, *Thissel v. Murphy*, No. 15-cv-05937-RMW, 2016 U.S. Dist. LEXIS 70825, *18–19 (N.D. Cal. May 31, 2016). Plaintiff gives no indication that he could possible state a claim based on the facts presented here. Leave to amend would be futile. Whether based on lack of standing under Article III or on the merits, dismissal should be with prejudice. *See* Mot., pg. 9 n.7 (discussing that dismissal may be with prejudice

when re-filing in state court would be futile).

## V. CONCLUSION

For the foregoing reasons, RBI's Motion to Dismiss should be granted.

Dated: July 15, 2025

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorney for Defendants
RESTAURANT BRANDS INTERNATIONAL INC. and RESTAURANT BRANDS INTERNATIONAL US SERVICES LLC