United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    DANIEL PEMBERTON, individually, and          Case No.  25-cv-03647-JSC
     on behalf of all others similarly situated,

8                  Plaintiff,                      **ORDER RE: MOTION TO DISMISS**

9           v.                                     Re: Dkt. No. 12

10   RESTAURANT BRANDS
     INTERNATIONAL, INC. and
11   RESTAURANT BRANDS
     INTERNATIONAL US SERVICES LLC,
12
                   Defendants.
13

14

15          Plaintiff seeks to represent a class of people who browsed the Burger King website while

16   in California "after opting out of the sale/sharing of their personal information in the [website's]

17   cookies consent preferences window."  (Dkt. No. 1 ¶ 99.)[1]  He alleges Defendants, who own and

18   operate the Burger King website, violated his privacy because after he "opt[ed] out of the

19   sale/sharing of [his] personal information and opt[ed] out of all cookies, except those that were

20   strictly necessary, including targeting cookies and performance cookies, Defendants nonetheless

21   continued to cause [] Third Parties' cookies to be placed on users' devices and/or transmitted to []

22   Third Parties' along with user data."  (*Id.* ¶¶ 27, 40.)[2]  Specifically, Plaintiff sues Defendants for

23   (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of the California

24   Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (4) use of a pen register in violation of

25   CIPA, Cal. Penal Code § 638.51; (5) common law fraud, deceit, and/or misrepresentation; (6)

26   _____

     [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
27   ECF-generated page numbers at the top of the documents.
     [2] Plaintiff defines "Third Parties" as Google LLC (DoubleClick and Google Analytics), Meta
28   Platforms, Inc. (Facebook), Microsoft Corporation (Microsoft Clarity), Snap Inc. (SnapChat), The
     Trade Desk, Inc., and AdTheorent, Inc. (Dkt. No. 1 ¶ 2.)

1    unjust enrichment; and (7) trespass to chattels.  (*Id.* ¶¶ 107-186.)

2         Now pending before the Court is Defendants' motion to dismiss.  (Dkt. No. 12.)  Having

3    carefully considered the parties' submissions, the Court concludes oral argument is not required,

4    *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART Defendants'

5    motion to dismiss.  Plaintiff's allegations Defendants deprived him of control over his personal

6    information constitute a sufficiently concrete injury for Article III standing, and Plaintiff has

7    plausibly alleged claims for invasion of privacy, intrusion upon seclusion, fraud, and unjust

8    enrichment.  However, Plaintiff's CIPA claims are time-barred because he has not shown he is

9    entitled to equitable tolling, and he has not adequately alleged damages to state a trespass to

10   chattels claim.

11                                        **BACKGROUND**

12   **I.      COMPLAINT ALLEGATIONS**

13        Around March 2023, Plaintiff, a California resident, visited the Burger King website "to

14   browse information about Burger King products and locations."  (Dkt. No. 1 ¶¶ 6, 84.)  The

15   website "immediately" presented a popup cookie consent banner ("Cookie Banner"), which stated:

16   "This website uses cookies to enhance user experience and to analyze performance and traffic on

17   our website.  We also share information about your use of our site with our social media,

18   advertising, and analytics partners."  (*Id.* ¶ 85.)  The Cookie Banner offered Plaintiff the options

19   "Accept Cookies" or "Cookie Settings," and "[c]onsistent with his typical practice in rejecting or

20   otherwise declining the placement or use of cookies and tracking technologies," Plaintiff clicked

21   the "Cookie Settings" button.  (*Id.* ¶¶ 85-86.)  The website then displayed a "cookie consent

22   preferences window" ("Cookie Window"), which included a toggle switch and stated: "You may

23   exercise your right to opt out of the sale of personal information by using this toggle switch.  If

24   you opt out we will not be able to offer you personalized ads and will not hand over your personal

25   information to any third parties."  (*Id.* ¶¶ 36, 86.)  Plaintiff moved the toggle switch to opt out, and

26   clicked a "Confirm my Choices" button.  (*Id.* ¶ 86.)  Believing these steps "would allow him to opt

27   out of, decline, and/or reject all non-required cookies and other tracking technologies (inclusive of

28   those cookies that cause the disclosure of user data to third-party social media, advertising, and

United States District Court
Northern District of California

United States District Court
Northern District of California

1    analytics companies for the purposes of providing personalized content, advertising, and analytics

2    services)," Plaintiff continued browsing the website in reliance on Defendants' promises.  (*Id.* ¶¶

3    86, 89.)

4         According to Plaintiff, "Defendants nonetheless continued to cause the placement and/or

5    transmission of cookies along with user data, including those that cause the disclosure of user data

6    to the Third Parties on his device," and therefore "permitted the Third Parties to track and collect

7    Plaintiff's Private Communications as Plaintiff browsed the Website."  (*Id.* ¶ 89.)  Plaintiff

8    alleges:

> [T]he third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, causing them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendants, including the following:
> **Browsing History**: Information about the webpages a Website user visits, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns;
> **Visit History**: Information about the frequency and total number of visits to the Website;
> **Website Interactions**: Data on which links, buttons, or ads on the Websites that a user clicks;
> **User Input Data**: The information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information;
> **Demographic Information**: Inferences about age, gender, and location based on browsing habits and interactions with Website content;
> **Interests and Preferences**: Insights into user interests based on the types of Website content viewed, products searched for, or topics engaged with;
> **Shopping Behavior**: Information about the Website products viewed or added to shopping carts;
> **Device Information**: Details about the Website user's device, such as the type of device (mobile, tablet, desktop), operating system, and browser type;
> **Referring URL**: Information about the website that referred the user to the Website;
> **Session Information**: Details about the user's current Website browsing session, including the exact date and time of the user's session, the session duration and actions taken on the Website during that session;
> **User Identifiers**: A unique ID that is used to recognize and track a specific Website user across different websites over time; and/or
> **Geolocation Data**: General location information based on the Website user's IP address or GPS data, if accessible.

(*Id.* ¶ 25 (defining such information as "Private Communications").)  Plaintiff states if he had

3

1   known "Defendants' representations to Website users that they could opt out of the sale/sharing of

2   his personal information and opt out of all cookies were untrue," he would not have used the

3   Website.  (*Id.* ¶ 90.)  Plaintiff further alleges he "continues to desire to browse content featured on

4   the Website," but will not do so until the website is "programmed to honor users' requests to opt

5   out of the sale/sharing of their personal information and opt out of all non-required cookies and

6   tracking technologies."  (*Id.* ¶ 91.)

7   **II.      PROCEDURAL HISTORY**

8           Around October 20, 2023, Plaintiff learned about Defendants' alleged conduct from his

9   counsel.  (*Id.* ¶ 92.)  In November 2023, Plaintiff's counsel informed Defendants of Plaintiffs'

10  allegations and claims.  (*Id.* ¶ 93.)  Defendants asserted Plaintiff's claims were subject to

11  arbitration through the website's Terms of Service, and Plaintiff's counsel disagreed.  (*Id.* ¶ 94.)

12  On Around November 13, 2023, Plaintiff filed an arbitration demand and asked the arbitrator to

13  determine whether there was an arbitration agreement.  (*Id.* ¶¶ 95-96.)  The arbitrator ruled on July

14  9, 2024 that a court needed to determine whether an arbitration agreement existed, and placed the

15  arbitration on administrative hold pending such determination.  (*Id.* ¶ 97.)

16          On April 25, 2025, Plaintiff, on behalf of a California class, filed a complaint including

17  claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of

18  CIPA; (4) use of a pen register in violation of CIPA; (5) common law fraud, deceit, and/or

19  misrepresentation; (6) unjust enrichment; and (7) trespass to chattels.  (*Id.* ¶¶ 107-186.)

20  Defendants moved to compel arbitration, or in the alternative, to dismiss Plaintiff's claims.  (Dkt.

21  Nos. 11, 12.)  The Court denied Defendants' motion to compel arbitration and now considers their

22  motion to dismiss.  (Dkt. No. 40.)

**DISCUSSION**

23

24  **I.      ARTICLE III STANDING**

25          Article III of the United States Constitution "confines the federal judicial power to the

26  resolution of 'Cases' and 'Controversies.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423

27  (2021).  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal

28  stake' in the case—in other words, standing."  *Id.* (citation omitted).  To establish Article III

United States District Court<br>Northern District of California

1    standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete,

2    particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and

3    (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of*

4    *Wildlife*, 504 U.S. 555, 560-61 (1992)).  A "concrete" injury can include "intangible harms," such

5    as "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id.* at

6    425.  "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a

7    harm traditionally recognized as providing a basis for a lawsuit in American courts."  *Id.* at 417

8    (citation omitted).

9        "[V]iolations of the right to privacy have long been actionable at common law," and the

10   "right to privacy encompasses the individual's control of information concerning his or her

11   person."  *In re Facebook, Inc. Internet Tracking Litigation* ("*Facebook Internet Tracking*"), 956

12   F.3d 589, 598 (9th Cir. 2020) (cleaned up); *see Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th

13   Cir. 2023) (affirming *Facebook Internet Tracking* after *TransUnion LLC*); *In re Google Inc.*

14   *Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and

15   tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or

16   any other third party, tracks a person's internet browser activity without authorization.").

17   Furthermore, statutes like CIPA "codify a substantive right to privacy, the violation of which gives

18   rise to a concrete injury sufficient to confer standing."  *Facebook Internet Tracking*, 956 F.3d at

19   598 (citation omitted).

20       Plaintiff alleges Defendants "permit the Third Parties to use cookies and other tracking

21   technologies to collect, track, and compile users' Private Communications, including their

22   browsing history, visit history, website interactions, user input data, demographic information,

23   interests and preferences, shopping behaviors, device information, referring URLs, session

24   information, user identifiers, and/or geolocation data."  (Dkt. No. 1 ¶ 112.)  Plaintiff specifically

25   alleges Defendants "continued to cause the placement and/or transmission of cookies along with

26   user data . . . to the Third Parties on his device," and so "permitted the Third Parties to track and

27   collect [his] Private Communications as [he] browsed the Website," even after his "clear rejection

28   of the use and/or placement of such cookies and tracking technologies."  (*Id.* ¶ 89.)  Plaintiff

1   therefore alleges Defendants deprived him of control of his personal information regarding his

2   online activity, which is a concrete injury to his right to privacy sufficient for Article III standing.

3   *See Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal.

4   Aug. 29, 2025) (finding standing for nearly identical allegations); *Gabrielli v. Motorola Mobility*

5   *LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6-7 (N.D. Cal. July 14, 2025) (same); *see*

6   *also Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (finding Google's storage

7   of users' browsing data sufficed as concrete harm).

8   　　　　The cases Defendants rely on to argue Plaintiff's alleged injury is insufficient for standing

9   are distinguishable.  For example, in *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal.

10  2023), the court dismissed the plaintiff's claims for lack of standing because she only alleged

11  disclosure of "personal information" without specifying what that information included, so the

12  court could not conclude she "ha[d] a protectable privacy interest in that information." *Id.* at 864-

13  65.  Similarly, in *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025), the court

14  held the plaintiffs lacked standing because they only alleged collection of their IP addresses, in

15  which they lacked a reasonable expectation of privacy.  *Id.* at 1179.  In contrast to both *Mikulsky*

16  and *Khamooshi*, Plaintiff specifically alleges Defendants allowed "Third Parties to track and

17  collect [his] Private Communications," including his browsing history, visit history, website

18  interactions, user input data, demographic information, interests and preferences, shopping

19  behavior, device information, referring URL, session information, user identifiers, and geolocation

20  data, which are categories of information in which Plaintiff has a protectable privacy interest.

21  (Dkt. No. 1 ¶¶ 25, 89.)  *See, e.g.*, *Facebook Internet Tracking*, 956 F.3d at 598-99 (finding

22  protectable privacy interest in browsing history); *Brown*, 685 F. Supp. 3d at 925 (finding standing

23  for collection of browsing data).

24  　　　　Because Plaintiff alleges Defendants deprived him of control of his personal information,

25  which is an injury sufficient to support Article III standing, the Court need not address

26  Defendants' arguments Plaintiff has not shown injury through diminution in the value of his

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  personal information.[3]  So, Plaintiff has sufficiently alleged Article III standing.

2  **II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

3  **A.    Causes of Action I and II: Invasion of Privacy and Intrusion Upon Seclusion**

4  Courts evaluating whether plaintiffs have stated a claim for invasion of privacy or intrusion

5  upon seclusion under California law "consider the claims together and ask whether: (1) there

6  exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook*

7  *Internet Tracking*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287

8  (2009)).  First, to determine whether a reasonable expectation of privacy exists, courts consider

9  "the customs, practices, and circumstances surrounding the data collection, including the amount

10  of data collected, the sensitivity of data collected, the manner of data collection, and the

11  defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069,

12  1088 (N.D. Cal. 2022) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994)).  A

13  reasonable expectation of privacy may exist when a defendant gains "unwanted access to data by

14  electronic or other covert means, in violation of the law or social norms." *Facebook Internet*

15  *Tracking*, 956 F.3d at 601-02 (quotation marks and citation omitted).  Second, when determining

16  whether an invasion is "highly offensive," courts consider "the degree and setting of the

17  intrusion," as well as "the intruder's motives and objectives." *Hernandez*, 47 Cal. 4th at 287.

18  Because both inquiries are highly factual, "[c]ourts are generally hesitant to decide claims of this

19  nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D.

20  Cal. 2022).

21  Plaintiff alleges Defendants allow Third Parties to use cookies to collect his "browsing

22  history, visit history, website interactions, user input data, demographic information, interests and

23  preferences, shopping behaviors, device information, referring URLs, session information, user

24  identifiers, and/or geolocation data." (Dkt. No. 1 ¶¶ 112, 121.)  Plaintiff argues he had a

25  reasonable expectation of privacy in this information because Defendants "represented to him that

26  his browsing activity and Private Communications would remain private if he elected to decline

27

28  [3] Because Plaintiff fails to state a trespass to chattels claim, the Court does not address Defendants' argument Plaintiff does not have standing for this claim. (Dkt. No. 12 at 16.)

United States District Court
Northern District of California

1    cookies," and contends Defendants' "blatantly lying to consumers and lulling them into a false

2    sense of security" made their intrusion highly offensive.  (Dkt. No. 26 at 18-19.)  In *Facebook*

3    *Internet Tracking*, the Ninth Circuit held the plaintiffs plausibly alleged Facebook, by

4    affirmatively stating it would not collect data for logged-out users, "set an expectation that logged-

5    out user data would not be collected, but then collected it anyway," so the plaintiffs had a

6    reasonable expectation of privacy in the collected information.  *See* 956 F.3d at 602; *see also*

7    *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding reasonable

8    expectation of privacy when Google's collection conflicted with statements' reasonable

9    interpretation).  Plaintiff similarly alleges Defendants' Cookie Window stated he, by toggling the

10   switch, would "opt out of the sale of personal information," so that Defendants would "not be able

11   to offer [him] personali[z]ed ads and [would] not hand over [his] personal information to any third

12   parties."  (Dkt. No. 1 ¶¶ 36, 86.)  Given Defendants' affirmative statement, Plaintiff reasonably

13   concluded Defendants would not transmit his information to third parties.  (*Id.* ¶ 86.)  That

14   Defendants, despite their statements, allegedly "continued to cause the placement and/or

15   transmission of cookies" and "permitted the Third Parties to track and collect Plaintiff's Private

16   Communications," plausibly defies social norms.  (*Id.* ¶ 89.)  *See Hammerling*, 615 F. Supp. 3d at

17   1089-90 (holding data collection contradicting reasonable interpretation of defendant's statements

18   "plausibly defies social norms").

19        Rather than rebut Plaintiff's interpretation of their statements, Defendants argue the

20   allegedly collected information is routinely collected, non-sensitive information for which Plaintiff

21   lacked a reasonable expectation of privacy and collection could not be highly offensive.  (Dkt. No.

22   12 at 21-22; Dkt. No. 29 at 12-13.)  But by contending third parties use the allegedly collected

23   information to develop "profiles containing detailed information about a consumer's behavior,

24   preferences, and demographics" and "learn intimate details of their lives," Plaintiff plausibly

25   alleges the information might be sensitive to a reasonable person, which is sufficient to survive a

26   motion to dismiss.  (Dkt. No. 1 ¶ 112.)  *See Facebook Internet Tracking*, 956 F.3d at 603-04

27   (finding reasonable expectation of privacy despite "material questions of fact as to whether a

28   reasonable individual would find the information collected . . . 'sensitive and confidential'"

1    (citation omitted)); *see also Hammerling*, 615 F. Supp. 3d at 1089 (refusing to dismiss when

2    "viewing the allegations in the light most favorable to Plaintiffs, there is at least a question of fact

3    as to whether the information would be sensitive to a reasonable individual").  Accepting

4    Plaintiff's allegations as true, Defendants have not shown Plaintiff lacked a reasonable expectation

5    of privacy in the collected information.

6           It is similarly "premature to dismiss [Plaintiff's] claims based on a determination of how

7    offensive or serious the privacy intrusion is."  *See Motorola Mobility LLC*, 2025 WL 1939957, at

8    *10.  Defendants argue otherwise based on *Thomas v. Papa Johns International, Inc.*, No. 22-CV-

9    2012-DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), but that court dismissed the

10    claims because the allegations of offensiveness were "general and conclusory;" for example, the

11    plaintiff merely alleged "Papa Johns' procurement of Session Replay Providers to surreptitiously

12    and instantaneously record every Website Communication is highly offensive."  *See id.* at *7

13    (cleaned up), *aff'd*, Nos. 24-3557, 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025).  In

14    contrast, Plaintiff specifically alleges Defendants' "represent[ing] that Website users could opt out

15    of the sale/sharing of their personal information and opt out of all non-required cookies" and then

16    proceeding to allow cookie storage and transmittal despite Plaintiff's opt out would be highly

17    offensive.  (Dkt. No. 1 ¶ 124.)  Ultimately, because Defendants do not demonstrate Plaintiff's

18    allegations "show no reasonable expectation of privacy," the Court cannot "adjudicate[] as a

19    matter of law" whether the alleged intrusion is highly offensive.  *Hill*, 7 Cal. 4th at 40.

20           So, accepting his allegations as true, Plaintiff has stated intrusion upon seclusion and

21    invasion of privacy claims.

22           **B.**     **Causes of Action III and IV: CIPA Wiretap and CIPA Pen Register**

23           CIPA has a one-year statute of limitations.  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d

24    110, 134 (N.D. Cal. 2020).  Plaintiff alleges he visited Defendants' website in March 2023 but did

25    not learn of Defendants' alleged conduct until October 20, 2023.  (Dkt. No. 1 ¶¶ 84, 92.)

26    Applying the discovery rule, the statute of limitations expired around October 20, 2024—one year

27    after he learned of his claim.  But, Plaintiff did not file this complaint until April 25, 2025—more

28    than 18 months after he admits he learned of the conduct and six months after the statute of

United States District Court
Northern District of California

1    limitations had run.  (Dkt. No. 1.)  Defendants have thus established that from the face of the

2    complaint, it is apparent the CIPA claim is time-barred.

3         Plaintiff responds his CIPA claim is timely because the arbitration proceeding equitably

4    tolled the statute of limitations from November 13, 2023, when he filed the arbitration demand,

5    until April 25, 2025.  (Dkt. No. 26 at 17.)  Courts reviewing CIPA claims apply California's

6    "liberally applied" equitable tolling doctrine.  *See Cervantes v. City of San Diego*, 5 F.3d 1273,

7    1275 (9th Cir. 1993) (quotation marks and citation omitted).

8            Broadly speaking, the doctrine applies [w]hen an injured person has
             several legal remedies and, reasonably and in good faith, pursues one.
9            Thus, it may apply where one action stands to lessen the harm that is
             the subject of a potential second action; where administrative
10           remedies must be exhausted before a second action can proceed; or
             where a first action, embarked upon in good faith, is found to be
11           defective for some reason.

12   *McDonald v. Antelope Valley Cmty. Coll. Dist*., 45 Cal. 4th 88, 100 (2008) (quotation marks and

13   citations omitted).  "Where applicable, the doctrine will suspend or extend a statute of limitations

14   as necessary to ensure fundamental practicality and fairness."  *Id.* at 99 (quotation marks and

15   citation omitted).

16        A plaintiff seeking to invoke California's equitable tolling doctrine must demonstrate: (1)

17   timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by

18   the plaintiff.  *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724

19   (2020).  To be reasonable and in good faith, "[a] plaintiff's conduct must be objectively reasonable

20   and subjectively in good faith."  *Id.* at 729.  Although "California's fact-intensive test for equitable

21   tolling is more appropriately applied at the summary judgment or trial stage of litigation," courts

22   have decided equitable tolling at the motion to dismiss stage when "some fact, evident from the

23   face of the complaint, supported the conclusion that the plaintiff could not prevail, as a matter of

24   law, on the equitable tolling issue."  *Cervantes*, 5 F.3d at 1276.

25        Plaintiff is not entitled to equitable tolling because no complaint allegations support an

26   inference of reasonable and good faith conduct in waiting nine and a half months—from July 9,

27   2024, when the arbitrator ruled a court needed to determine whether an arbitration agreement

28   existed, until April 25, 2025—to file his complaint in this Court.  *See Long v. Forty Niners*

United States District Court
Northern District of California

10

1    *Football Co., LLC*, 33 Cal. App. 5th 550, 555 (2019), *as modified* (Apr. 8, 2019) ("Where a claim

2    is time-barred on its face, the plaintiff must specifically plead facts that would support equitable

3    tolling").  Although "[t]he third prerequisite of good faith and reasonable conduct . . . is less

4    clearly defined in the cases[,] [] in *Addison v. State of California*, . . . the Supreme Court did stress

5    that the plaintiff filed his second claim a short time after tolling ended."  *McDonald v. Antelope*

6    *Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 n.2 (2008) (citing *Addison v. State of California*, 21

7    Cal. 3d 313, 321 (1978)).  So, a "plaintiff's reasonable promptness in refiling is necessary for

8    relief."  *Kolani v. Gluska*, 64 Cal. App. 4th 402, 411 (1998) ("[T]he leading cases finding an

9    equitable tolling have involved short intervals between dismissal and refiling."); *see also Hatfield*

10   *v. Halifax PLC*, 564 F.3d 1177, 1186 (9th Cir. 2009) (noting plaintiff "filed the district court

11   action on the day that tolling ceased").  Absent further explanation from Plaintiff, his nearly ten-

12   month delay in filing this complaint was unreasonable and defeats application of equitable tolling.

13   *See Darnaa, LLC v. Google, Inc.*, No. 15-CV-03221-RMW, 2016 WL 6540452, at *5 (N.D. Cal.

14   Nov. 2, 2016) (citing cases and finding ten-month delay suggested unreasonable conduct); *see also*

15   *Kolani*, 64 Cal. App. 4th at 411 (finding 78-day delay in refiling unreasonable); *Yetter v. Ford*

16   *Motor Co.*, 428 F. Supp. 3d 210, 230 (N.D. Cal. 2019) (citing cases and finding 16-month delay

17   for claims with three- or four-year statutes of limitations unreasonable).

18        As Plaintiff does not allege facts that plausibly support an inference of good faith and

19   reasonable conduct in waiting nine and half months after the arbitrator's decision to file this

20   complaint, Plaintiff has not alleged equitable tolling on his CIPA claims.  So, Plaintiff's CIPA

21   claims are dismissed with leave to amend to the extent he can allege facts justifying his delay in

22   filing the complaint.

23        **C.    Cause of Action V: Fraud, Deceit, and Misrepresentation**

24        "Under California law, the 'indispensable elements of a fraud claim include a false

25   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"

26   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation omitted).  Pursuant

27   to Federal Rule of Civil Procedure 9(b), the elements of fraud must be alleged "with particularity"

28   and "accompanied by the who, what, when, where, and how of the misconduct charged."  *Kearns*

United States District Court
Northern District of California

11

1    *v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation marks and citation omitted).

2    However, although the factual circumstances of the fraud must be alleged with particularity,

3    "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

4    *See* Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.

5    1994) (en banc) ("[P]laintiffs may aver scienter generally . . . simply by saying that scienter

6    existed."), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of

7    1995, 15 U.S.C. § 78u-4(b)(1), *as recognized in Avakian v. Wells Fargo Bank, N.A.*, 827 Fed.

8    App'x 765, 766 (9th Cir. 2020).  "In California, a defrauded party is ordinarily limited to

9    recovering his 'out-of-pocket' loss."  *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995)

10   (quotation marks and citation omitted).

11   Plaintiff sufficiently alleges the factual circumstances of his fraud claim.  Specifically, he

12   alleges Defendants (who), on their website's Cookie Window (where) in March 2023 (when),

13   represented Plaintiff could use the toggle switch to "opt out of the sale of personal information"

14   (what), but "nonetheless caused cookies" and user data to be transmitted third parties (how).  (Dkt.

15   No. 1 ¶¶ 6, 36, 84, 86, 88, 89.)

16   Defendants argue Plaintiff's allegations do not meet Rule 9(b)'s heightened pleading

17   standard because Plaintiff does not allege facts supporting his allegations Defendants knowingly

18   concealed or lied about the Cookie Window's functioning.  But Plaintiff's allegations Defendants'

19   misrepresentations in the Cookie Banner were "outright lies, designed to lull users into a false

20   sense of security," and "were known exclusively to, and actively concealed by Defendants"

21   because "Defendants knew, or should have known, how the Website functioned" are sufficient.

22   (Dkt. No. 1 ¶¶ 2, 163.)  As allegations about Defendants' intent and knowledge may be alleged

23   generally, Plaintiffs' allegations are sufficient.  *See Motorola Mobility LLC*, 2025 WL 1939957, at

24   *14 (finding similar allegations sufficient when plaintiff alleged defendant knew its statements

25   were false and intentionally misrepresented its policy); *see also Brown v. Natures Path Foods,*

26   *Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *7 (N.D. Cal. Mar. 10, 2022) (holding plaintiff

27   did not need to allege facts showing defendant "knew or was aware of the falsity of [its]

28   statements").

United States District Court
Northern District of California

1    Defendant also argues Plaintiff has not alleged actual or out-of-pocket damages.  Plaintiff

2   alleges damages because Plaintiff's affected personal information "ha[s] value as demonstrated by

3   the use and sale of consumers' browsing activity," and Defendants "gained financially from" their

4   misrepresentation even as the misrepresentation revoked Plaintiff's control over that information

5   and diminished its value.  (Dkt. No. 1 ¶¶ 163, 165, 166, 169.)  Defendants do not cite any case

6   establishing Plaintiff's allegations are insufficient to state a claim for common law fraud, deceit, or

7   misrepresentation.  *See Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at

8   *9 (N.D. Cal. July 1, 2024) (addressing standard to plead loss under state consumer protection

9   statutes); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977-78 (C.D. Cal. 2023) (discussing

10   requirements to plead economic injury under California's Unfair Competition Law); *cf. Facebook*

11   *Internet Tracking*, 956 F.3d at 600-01 (holding similar allegations the defendants profited from

12   unauthorized use of the plaintiffs' "valuable personal information" sufficed as an injury for a fraud

13   claim).

14    So, Plaintiff has stated a claim for fraud.

15    **D.    Cause of Action VI: Unjust Enrichment**

16    The Ninth Circuit and the California Supreme Court have allowed claims for unjust

17   enrichment to proceed as quasi-contract claims seeking restitution.  *See Bruton v. Gerber Prods.*

18   *Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61

19   Cal. 4th 988, 1000 (2015)); *see also City of Oakland v. Oakland Raiders*, 83 Cal App. 5th 458,

20   477 (2022) ("There is no cause of action in California labelled 'unjust enrichment.' . . . But

21   common law principles of restitution require a party to return a benefit when the retention of such

22   benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is

23   'quasi-contract.'" (cleaned up)).  "To allege unjust enrichment as an independent cause of action, a

24   plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's

25   expense."  *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citation

26   omitted).  Furthermore, "[b]ecause the remedy for unjust enrichment is restitution, the plaintiffs

27   must show that they lack an adequate remedy at law."  *Hughes v. Apple, Inc.*, No. 22-CV-07668-

28   VC, 2024 WL 4828072, at *6 (N.D. Cal. Nov. 18, 2024) (citations omitted).

United States District Court
Northern District of California

1      Plaintiff alleges Defendants' "misrepresent[ed] that users could opt out" of cookies and

2   tracking technologies, then transmitted cookies and collected his Private Communications as he

3   browsed the site in reliance on that misrepresentation, and used those cookies "to boost website

4   performance and revenue," including through advertising.  (Dkt. No. 1 ¶¶ 26, 31-33, 174, 175.)

5   As explained above, Plaintiff has sufficiently pled his fraud claim, and also "establish[ed] the

6   requisite relationship" between his fraud and unjust enrichment claims by alleging Defendants

7   "ha[ve] been unjustly conferred a benefit through [] fraud."  *See B.K. v. Desert Care Network*, No.

8   2:23-CV-05021 SPG (PDx), 2024 WL 1343305, at *11 (C.D. Cal. Feb. 1, 2024) (cleaned up)

9   (dismissing plaintiff's unjust enrichment claim for failure to plead fraud with particularity or

10  establish relationship between fraud and unjust enrichment).  And Plaintiff pleading unjust

11  enrichment as an alternative to his legal claims is sufficient at this stage of the pleadings.  (Dkt.

12  No. 1 ¶ 181.)  *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025)

13  ("These allegations are all that is necessary at this stage in the proceedings."); *cf. Saedi v. SPD*

14  *Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *14

15  (C.D. Cal. Feb. 27, 2025) (dismissing for failure to plead adequate remedy at law because the

16  plaintiff did not address argument).  So, Plaintiff plausibly alleges an unjust enrichment claim.

17      Defendants' arguments otherwise are unavailing.  First, relying on *Khamooshi*, Defendants

18  argue the allegedly collected information is "so commonly shared across the internet that it cannot

19  reasonably be considered private," so Defendants' use of that information was not unjust.  *See*

20  *Khamooshi*, 786 F. Supp. 3d at 1183.  But, as explained above, the IP addresses at issue in

21  *Khamooshi* are distinguishable from the broader set of allegedly collected information at issue

22  here.  Similarly, Defendants rely on *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d

23  797 (N.D. Cal. 2020), but the court in that case dismissed the plaintiffs' claims because they did

24  not describe the information the defendants allegedly collected.  *See id.* at 835 ("Should Plaintiffs

25  cure this deficiency, however, the Court believes they could plausibly demonstrate that any profits

26  were unjustly earned by virtue of Defendants' use being allegedly unauthorized.")  Second,

27  Defendants argue Plaintiff fails to allege Defendants' enrichment was at his expense, but "[c]ourts

28  in this District have regularly held that even if plaintiffs have suffered no economic loss from the

14

1    disclosure of their plausibly private information, they are allowed to proceed through the pleadings

2    stage with a claim for unjust enrichment to recover the gains that a defendant realized from its

3    allegedly improper conduct." *Haleon US Inc.*, 2025 WL 2494368, at \*15 (citing *Hadley v.*

4    *Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018); *In re Facebook, Inc. Consumer*

5    *Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019)).

6          So, Plaintiff has stated a claim for unjust enrichment.

7          **E.    Cause of Action VII: Trespass to Chattels**

8          "Under California law, trespass to chattels 'lies where an intentional interference with the

9    possession of personal property has proximately caused injury.'" *In re Apple Inc. Device*

10    *Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (quoting *Thrifty-Tel, Inc. v.*

11    *Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996)); *see also Best Carpet Values, Inc. v. Google LLC*,

12    90 F.4th 962, 968 (9th Cir. 2024) (requiring intentional interference with possession of property).

13    The California Supreme Court has applied the principles underlying the tort to allegations of

14    digital trespass. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003).  Thus, "to prevail on a claim

15    for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant

16    intentionally and without authorization interfered with plaintiff's possessory interest in the

17    computer system; and (2) defendant's unauthorized use proximately resulted in damage to

18    plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000)

19    (citing *Thrify-Tel, Inc.*, 46 Cal. App. 4th at 1566).  A plaintiff may satisfy the damages element by

20    pleading the trespass "impaired the condition, quality, or value of the personal property." *Fields v.*

21    *Wise Media, LLC*, No. C 12-05160 WHA, 2013 WL 5340490, at \*4 (N.D. Cal. Sept. 24,

22    2013) (citing *Hamidi*, 30 Cal. 4th at 1356).

23          Defendants argue Plaintiff has not adequately alleged damage to or impaired functioning of his

24    device.  The Court agrees.  Because "[i]t is a matter of common understanding that cookies are

25    minute in size and thus incapable of noticeably affecting the performance of modern computers,"

26    Plaintiff's claim fails absent an "allegation that the placement of the cookies had any noticeable

27    effect on the performance of the devices." *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW, 2018

28    WL 6605624, at \*4 (N.D. Cal. Dec. 17, 2018) (quotation marks and citations omitted); *see also*

United States District Court
Northern District of California

15

1  *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (dismissing claim without

2  allegations "the existence of cookies physically impairs plaintiffs' computing devices"); *Casillas*

3  *v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762-63 (2022) (explaining claim

4  fails if trespass "neither damages the recipient computer system nor impairs its functioning").

5  Plaintiff's conclusory allegations the third-party cookies permitted by Defendants led to: "a.

6  Nominal damages for trespass; b. Reduction of storage, disk space, and performance of Plaintiff's

7  and other users' computing devices; and c. Loss of value of Plaintiff's and other users' computing

8  devices" are insufficient.  (Dkt. No. 1 ¶ 186.)  The cases Plaintiff cites do not say otherwise.  *See*

9  *Haleon US Inc.*, 2025 WL 2494368, at \*14 (explaining *Facebook Internet Tracking*, 956 F.3d at

10  599 n.4, did not "reach the question of damages particular to plaintiffs' trespass to chattels

11  claim"); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (noting

12  confusion in precedent but finding the plaintiffs' allegations of "measurable impact on the

13  functioning of the systems' memory" sufficient).

14       Because Plaintiff does not allege the cookies affected or impaired his devices, Plaintiff

15  fails to state a trespass to chattels claim.

16                                     **CONCLUSION**

17       For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and

18  DENIED IN PART.  The Court dismisses Plaintiff's CIPA and trespass to chattels claims with

19  leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[The] court should

20  grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the

21  allegation of other facts." (quotation marks and citation omitted)).  The Court otherwise denies

22  Defendants' motion to dismiss.  Plaintiff's deadline to file an amended complaint, if any, is

23  January 8, 2026.  Plaintiff may not add any new claims or defendants without prior leave of court.

24       The Court will hold an initial case management conference on January 28, 2026 at 2:00

25  p.m. via Zoom video.  A joint case management conference statement is due one week in advance.

26       This Order disposes of Docket No. 12.

27  \\

28  \\

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1     **IT IS SO ORDERED.**

2     Dated: November 24, 2025

3

4     _____
      JACQUELINE SCOTT CORLEY

5     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28