United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL PEMBERTON,

Plaintiff,

v.

RESTAURANT BRANDS INTERNATIONAL, INC., et al.,

Defendants.

Case No. 25-cv-03647-JSC

**ORDER TO PLAINTIFF SHOW CAUSE RE: ARTICLE III STANDING**

Plaintiff filed this putative class action against Restaurant Brands International, Inc. alleging it installs third-party trackers on individuals' internet browsers when they visit the Burger King website in violation of various California laws. Defendants previously moved to dismiss the action on the grounds Plaintiff had not alleged facts sufficient to satisfy Article III standing. The Court denied the motion. (Dkt. No. 46.) After the motion was briefed, the Ninth Circuit decided *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025); so, the Court's denial did not consider that decision. In light of *Popa*, the Court's review of Plaintiff's proposed Second Amended Complaint raises concerns regarding Plaintiff's, and the proposed new plaintiffs', standing and thus subject matter jurisdiction.

**DISCUSSION**

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal

stake' in the case—in other words, standing." *Id*. (citations omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Arizona Dep't of Transp*., 683 F.3d 1177, 1184 (9th Cir. 2012) (cleaned up). Because Article III standing is an issue of subject matter jurisdiction, it can be raised any time, including sua sponte by the court. *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). Indeed, courts "have an independent obligation 'to examine jurisdictional issues such as standing [sua sponte].'" *Wilson v. Lynch,* 835 F.3d 1083, 1090 n.2 (9th Cir. 2016).

To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). In a putative class action, at least one named plaintiff must have Article III standing. *See Healy v. Milliman, Inc*., 164 F.4th 701, 706 (9th Cir. 2026). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing he, as the sole named plaintiff, has standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A "concrete" injury can include "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. In *Popa*, the Ninth Circuit addressed Article III standing in a privacy case similar to this action. *Popa v. Microsoft Corp*., 153 F.4th 784 (9th Cir. 2025). There, the plaintiff alleged the defendant's session-replay technology captured her information while she browsed for pet supplies on a pet supply website. The Ninth Circuit affirmed the district court's dismissal for lack of Article III standing because the nature of the collected information was not "embarrassing, invasive, or otherwise private." *Id*. at 786-87, 791. The court held the plaintiff had not established "how the tracking of her interactions ... caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. at 791. The court explained further "the kind of harm and not the degree" is relevant for determining whether an alleged injury-in-fact is concrete enough relative "to a

specific common-law tort" and that the injury must be one "that has traditionally been actionable in our nation's legal system." *Id.* The common law analysis must be particularized to the plaintiff's circumstances and benchmarked to a specific tort." *Id.*

Neither the Proposed Second Amended Complaint ("SAC"), nor any of its earlier versions, plausibly alleges how the tracking of Plaintiff's interactions with the Burger King website caused him "to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. As for both Plaintiff and proposed new plaintiff Dean Flowers, the only personal information allegedly tracked is that they were visiting the website from California. (Dkt. No. 78-2 at ¶¶ 121, 125.) While they allege they "browsed" the Burger King website, nothing specific about what they browsed is alleged. For proposed new plaintiff Nicole Giudotti, the SAC alleges she visited the Burger King website three to four times a year "to browse information about Burger King products and locations. For example, in 2024, [she] visited the Website to learn more information about the triple whopper." (*Id.* ¶ 137.) But this information, assuming it was tracked, is indistinguishable from the pet supplies the plaintiff browsed in *Popa*. *See Popa*, 153 F.4th at 791 (observing "the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").

Plaintiff and proposed new plaintiffs' allegations that they opted out of cookie tracking but Defendants allowed the tracking anyway does not necessarily mean they have suffered a sufficiently concrete injury. In *Ortiz v. Foris Dax, Inc.*, No. 25-CV-08950-EMC, 2026 WL 3002660 (N.D. Cal. Oct. 6, 2026), for example, the plaintiffs alleged the www.crypto.com website used cookies to track their website activity, and did so even though the plaintiffs had expressly "disabled" cookies, similar to what Plaintiff alleges here. The *Ortiz* plaintiffs used the crypto website to research specific cryptocurrencies; so, they alleged the third-party cookies were able to collect information about their "financial interests, financial needs, and investment-related research." *Id.* at *2. Applying *Popa*, the district court held they had not plausibly alleged a concrete injury sufficient to support Article III standing. First, the information allegedly collected

was no more sensitive than that collected in *Popa*. Second, as for the crypto website tracking the plaintiffs after representing it would not do so, the *Ortiz* court explained:

> It is also true that visitors to a site have "a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track." The use of deceit can be a "'plus' factor" elevating otherwise borderline conduct to a "highly offensive" intrusion. However, deceit alone does not convert every instance of routine information collection into a 'highly offensive' invasion. "The key is the sensitivity of the information collected."

*Id.* at *4 (internal citations omitted). Given the lack of sensitivity of the data allegedly collected, the district court dismissed the case for lack of Article III standing. *Id.*

Drawing reasonable inferences from the factual allegations in Plaintiff's favor, the data allegedly tracked here is not even borderline sensitive. The only identified Burger King website activity is proposed new plaintiff Ms. Guidotti browsing Burger King's website for store locations and to look up a whopper triple. So, based on Plaintiff's allegations in the SAC, and under current Ninth Circuit law, the Court is not satisfied that Defendants' failure to disable cookies as promised means Plaintiff suffered a concrete injury sufficient to support federal court jurisdiction.

## CONCLUSION

Accordingly, by November 2, 2026, Plaintiff shall show cause in writing as to the Court's subject matter jurisdiction over this action; and, in particular, how the proposed SAC plausibly alleges at least one named plaintiff has Article III standing. If Defendants wish to respond to Plaintiff's submission, they may do so by November 12, 2026. A ruling there is no Article III standing is not a ruling on the merits; rather, it just means the action will be dismissed without prejudice to Plaintiff pursuing his claim in state court where there is no Article III standing requirement. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Plaintiff's motion to amend shall be held in abeyance until the Court resolves the subject matter jurisdiction issue.

**IT IS SO ORDERED.**

Dated: October 16, 2026

JACQUELINE SCOTT CORLEY
United States District Judge